VINCENT M. COSCINO (BAR NO. 122086)
JEFFREY R. PATTERSON (BAR NO. 126148)
CHARLES L. PERNICKA (BAR NO. 224134)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: vcoscino@allenmatkins.com
        jpatterson@allenmatkins.com
        cpernicka@allenmatkins.com

Special Counsel for Chapter 7 Trustee
James L. Kennedy

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 14-02607-CL7 |
|---|---|
| BURLINGAME CAPITAL PARTNERS II, L.P., a Delaware Limited Partnership, | Chapter 7 |
| Debtor. | **APPLICATION FOR ORDER AUTHORIZING EXAMINATION OF AND REQUIRING PRODUCTION OF DOCUMENTS BY BURLINGAME CAPITAL PARTNERS II, L.P.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| | Dept:    5<br>Judge:   Hon. Christopher B. Latham |

TO THE COURT, DEBTOR, DEBTOR'S COUNSEL, AND ALL OTHER PARTIES IN

INTEREST ENTITLED TO NOTICE:

Chapter 7 Trustee James L. Kennedy ("Trustee") hereby applies for an order pursuant to

Rule 2004 of the Federal Rules of Bankruptcy Procedure authorizing the issuance of subpoenas

requiring: (1) Burlingame Capital Partners II, L.P. ("Debtor") to produce all documents in its

possession, custody, or control identified in the attached Exhibit A; and (2) the designee(s) of

1   Debtor to appear for examination at a date and time to be noticed by Trustee, after the production

2   of documents.  The production and examination will occur at the offices of Allen Matkins Leck

3   Gamble Mallory & Natsis LLP, located at 501 W. Broadway, 15th Floor, San Diego, California

4   92101, or such other place as may be agreed upon between Trustee and Debtor or as provided for

5   by the Federal Rules of Bankruptcy Procedure, at dates no sooner than 28 days after notice of the

6   Court's order hereon.  The examination will be conducted before a duly qualified court reporter

7   utilizing real-time computer transcription, and may also be recorded by video.

8          PLEASE TAKE FURTHER NOTICE that if you object to the examination or production,

9   you must file a motion for protective order setting forth the specific nature and basis of your

10  objection, and serve it on the undersigned attorneys at:

11                    Charles L. Pernicka, Esq.
                     Allen Matkins Leck Gamble Mallory & Natsis LLP
12                    501 W. Broadway, 15th Floor
                     San Diego, California  92101
13                    Telephone (619) 233-1155
                     Facsimile (619) 233-1158
14

15         This application is brought pursuant to Rule 2004 of the Federal Rules of Bankruptcy

16  Procedure and Rule 45 of the Federal Rules of Civil Procedure, and is based on this Application,

17  the attached Memorandum of Points and Authorities, and the accompanying Declaration of

18  Charles L. Pernicka and the exhibits attached thereto.

19

20  Dated:  December 12, 2014                    ALLEN MATKINS LECK GAMBLE
                                                MALLORY & NATSIS LLP
21

22                                              By: _____
23                                                  CHARLES L. PERNICKA
                                                   Special Counsel for Chapter 7 Trustee
24                                                  James L. Kennedy

25

26

27

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Through a series of opaque transactions, aided by potential misrepresentations to at least two other courts, Debtor appears to have transferred its most substantial assets to its principals for only a small fraction of their value in return.  The purpose of this application is to allow Trustee to inquire into the details of those transactions, the property, assets, and liabilities of Debtor, and the financial condition of Debtor.  At the Section 341(a) meeting of creditors previously held in this proceeding, Debtor agreed that it would produce documents and that its representative would appear for examination pursuant to Rule 2004.  With Debtor now ignoring Trustee's repeated inquires about a proposed stipulation, Trustee is forced to seek an order authorizing subpoenas to compel Debtor's production of documents and appearance.

### II.    BACKGROUND

#### A.    **Debtor's Primary Asset Was Transferred To Its Principals While Debtor Received Less Than 5% Of The Purported Sale Price**

Debtor's primary asset was a school, including the real property on which the school is located and the school's personal property and other assets.  The school was purchased in 2009 out of a bankruptcy in the Northern District of California (*In re Kids Connection, Inc.*, Case No. 08-30026).  In support of its motions for purchase of the school, Debtor repeatedly represented to the Bankruptcy Court that the school, including its real and personal property, would be purchased by Debtor or a "wholly owned subsidiary" of Debtor, called KC Funding, LLC.  (See Declaration of Charles L. Pernicka ("Pernicka Dec."), ¶ 2 and Ex. 1 (Collectively, Declaration of Robert D. Judson (principal of Debtor's general partner) filed March 3, 2009; Amended Declaration of Robert D. Judson filed March 4, 2009; Declaration of Robert D. Judson filed April 20, 2009; and Declaration of Janice H. Judson (principal of Debtor's general partner) filed June 26, 2009).)[1]

Debtor has now produced to Trustee a Purchase Agreement, by which Debtor purported to sell the school, including its real and personal property, for $6,621,582.71.  (Pernicka Dec., ¶ 3

---

[1]    Trustee requests that the Court take judicial notice of each of these declarations and their contents, pursuant to Rule 201 of the Federal Rules of Evidence.

and Ex. 2.)  The school was purportedly purchased by Robert and Janice Judson, the principals of Debtor's general partner.  (*Id.*)  However, the Purchase Agreement provides that only $227,000, less than 5% of the total purchase price, was paid to Debtor.  (Pernicka Dec., Ex. 2, ¶ 10.)

Among other things, Trustee seeks to examine Debtor concerning these transactions and the payment of the proceeds of the sale of this asset.

**B.    Debtor Represented To The San Francisco Superior Court That It Had Net Assets In Excess of $1 Million**

In 2012, in exchange for the withdrawal of a motion for a writ of attachment in litigation pending in San Francisco County Superior Court, Debtor agreed to provide financial documentation to the Honorable Alfred Chiantelli (Ret.) demonstrating that it had a net worth of at least $250,000, after including Allen Matkins' claim of $1.9 million as a liability.  (Pernicka Dec., ¶ 4 and Ex. 3.)[2]  On July 23, 2014, the Bankruptcy Court entered an Order authorizing Retired Judge Chiantelli to turn over to Trustee the documents provided to him by Debtor.  (Docket No. 25.)

On July 31, 2014, Judge Chiantelli provided to Trustee the records received by him from Debtor.  These records include a balance sheet demonstrating net assets valued at more than $1 million, after all liabilities of Debtor, including the claim of Allen Matkins.  (Pernicka Dec., ¶ 5 and Ex. 4.)

By letter dated January 10, 2014, Debtor's counsel informed Judge Chiantelli that Debtor had sold none of its assets as of that date (January 10, 2014), and had paid no capital returns or profits to Robert and/or Janice Judson.  (Pernicka Dec., ¶ 6 and Ex. 5.)  Less than three months later, Debtor filed its petition herein, listing assets valued at $416,041, but debts in excess of $2 million.  (Docket No. 1.)

---

[2]  Trustee requests that the Court take judicial notice of the Stipulated Agreement and Order entered on July 9, 2012, in San Francisco County Superior Court Case No. CGC-10-505145, attached to the Pernicka Dec. as Exhibit 3, pursuant to Rule 201 of the Federal Rules of Evidence.

1  Among other things, Trustee seeks to examine Debtor concerning the disposition of the

2  assets listed in the documents provided to Retired Judge Chiantelli.

3  **C.**  **Debtor Agreed To Produce Documents And Appear For Examination, Then**

4  **Ignored All Inquires About A Stipulation**

5  The Section 341(a) creditor's meeting in this proceeding commenced on May 12, 2014, and

6  was concluded on August 12, 2014. (Docket Nos. 7, 16, 17, and 30.) At the continued Section

7  341(a) meeting on August 12, 2014, Debtor agreed that it would produce documents identified in a

8  stipulated list, and that after the production it would then appear for an examination under Rule

9  2004. (Pernicka Dec., ¶ 7 and Ex. 6, p. 37:3-13.)

10  Following the 341(a) meeting, on November 12, 2014, Trustee provided a proposed

11  stipulation for production of documents and appearance to Debtor. (Pernicka Dec., ¶ 8 and Ex. 7.)

12  Debtor did not respond, and on November 17, 2014, Trustee sent another email to Debtor

13  inquiring if Debtor would stipulate. (Pernicka Dec., ¶¶ 8-9 and Ex. 8.) Debtor still did not

14  respond, so on November 20, Trustee's counsel telephoned Debtor's counsel. Debtor's counsel

15  provided no position on the proposed stipulation. (Pernicka Dec., ¶¶ 9-10.) On November 25,

16  Trustee again followed up with another email. (Pernicka Dec., ¶ 11 and Ex. 9.) Again, Debtor did

17  not respond. (Pernicka Dec., ¶ 11.)

18  After agreeing that it would produce documents and appear for a Rule 2004 examination,

19  Debtor's failure to respond to any inquiry regarding a stipulation is a violation of Local Rule 2004-

20  1(a).

21  **III.**  **DEBTOR SHOULD BE REQUIRED TO PRODUCE DOCUMENTS AND APPEAR**

22  **FOR EXAMINATION**

23  This Court has jurisdiction over this application pursuant to 28 U.S.C. sections 157 and

24  1334. Venue is proper in this Court pursuant to 28 U.S.C. section 1409.

25  A Chapter 7 Trustee has a duty to "investigate the financial affairs of the debtor." 11

26  U.S.C. § 704(a)(4). As part of its investigation, the Trustee may require the Debtor to appear for

27  examination. Rule 2004 of the Federal Rules of Bankruptcy Procedure provides, "On motion of

28  any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P.

1  2004(a); see also *In re Continental Forge Co., Inc.*, 73 B.R. 1005, 1007 (W.D. Pa. 1987) (debtors

2  and non-debtor third parties are equally subject to examination under Rule 2004).

3      Rule 2004 states, in part:

4          (b) Scope of Examination.  The examination of an entity under this
           rule or of the debtor . . .  may relate only to the acts, conduct, or
5          property or to the liabilities and financial condition of the debtor, or
           to any matter which may affect the administration of the debtor's
6          estate, or to the debtor's right to a discharge.  . . .

7          (c) Compelling Attendance and Production of Documents.  The
           attendance of an entity for examination and for the production of
8          documents, whether the examination is to be conducted within or
           without the district in which the case is pending, may be compelled
9          as provided in Rule 9016 for the attendance of a witness at a hearing
           or trial. . . .

10

11  Fed. R. Bankr. P. 2004(b) and (c).

        It is well settled that the scope of examination under Rule 2004 is "broad and far reaching."
12
*In re Sunridge Associates*, 202 B.R. 761, 762 (Bankr. E.D. Cal. 1996).  "There need be no pending
13
dispute with defined issues to narrow the scope of the inquiry it permits."  *Id.*
14
           In general, a large latitude of inquiry should be allowed in the
15         examination of persons closely connected with the bankrupt in
           business dealings, or otherwise, for the purpose of discovering assets
16         and unearthing frauds, upon any reasonable surmise that they have
           assets of the debtor.  The intent of the bankrupt law is that only the
17         debtor dealing honestly with his property shall be discharged; and
           that any proper assets of the estate, however concealed, shall be
18         made available to creditors.  The examination for this purpose is of
           necessity to a considerable extent a fishing examination.
19

20  *In re Foerst*, 93 F. 190, 191 (S.D.N.Y. 1899).

21      "The clear intent of Rule 2004 (and its predecessor rules) is to give parties in interest an

22  opportunity to examine individuals having knowledge of the financial affairs of the debtor in order

23  to preserve the rights of creditors."  *In re The GHR Companies, Inc.*, 41 B.R. 655, 660 (Bankr. D.

24  Mass. 1984) (likening an examination under Rule 2004 "to a necessary 'fishing expedition.' ").

25  Such examinations also serve the purpose of providing the court with a "clear picture of the

26  condition and whereabouts of the bankrupt's estate."  *In re Johns-Manville Corp.*, 42 B.R. 362,

27  364 (S.D.N.Y. 1984).  "[T]he inquiry may 'cut a broad swath through the debtor's affairs, those

28  associated with him, and those who might have had business dealings with him.' "  *Id.*

1    Rule 2004 examinations also extend to documents.  See Fed. R. Bankr. P. 2004(c); see also

2 *In re Fin. Corp. of America*, 119 B.R. 728, 733 (C.D. Cal. 1990) (Rule 2004 authorizes the Court

3 to order an examination of any entity and the production of documents relating to the Debtor's

4 estate and financial transactions).

5    The attendance of a person for examination and the production of documentary evidence

6 may be compelled by subpoena pursuant to Federal Rule of Civil Procedure 45, made applicable

7 hereto by Federal Rule of Bankruptcy Procedure 9016.  See Fed. R. Bankr. P. 2004(c) and 9016;

8 Fed. R. Civ. P. 45.

9    Here, as discussed above, the purpose of the requested document production and

10 examination is to enable Trustee to inquire into the transactions by which Debtor contends it

11 divested itself of its assets, including the transfer of assets to its principals, the property, assets,

12 and liabilities of Debtor, and the financial condition of Debtor.  As such, the proposed document

13 production and examination is consistent with Rule 2004.[3]

14 **IV.    CONCLUSION**

15    For the foregoing reasons, Trustee respectfully requests the Court enter an order

16 authorizing the examination of and requiring production of documents by Debtor pursuant to

17 Bankruptcy Rule 2004, and authorizing the issuance of subpoenas to Debtor requiring the

18 production of all documents identified in Exhibit A hereto and the examination of the designee(s)

19 of Debtor at a date following the production of documents.

20

21 Dated:  December 12, 2014                    ALLEN MATKINS LECK GAMBLE
                                               MALLORY & NATSIS LLP
22

23                                             By: _____

24                                                 CHARLES L. PERNICKA
                                                   Special Counsel for Chapter 7 Trustee
25                                                 James L. Kennedy

26

_____

27 [3]  Debtor previously produced to Trustee some limited documents which fall within the
       categories of the documents identified in the attached Exhibit A.  However, Trustee believes
28     that all documents in the listed categories have not been produced.  Trustee does not seek to
       require that Debtor re-produce documents it previously produced to Trustee.

**EXHIBIT A**

**In re BURLINGAME CAPITAL PARTNERS II, L.P. ("Debtor")**

**USBC SOUTHERN DISTRICT OF CALIFORNIA CASE NO. 14-02607-CL7**

**TRUSTEE'S REQUEST FOR DOCUMENTS**

**I.      DEFINITIONS**

"CORPORATE GOVERNANCE RECORDS" includes all DOCUMENTS referring, RELATING and/or pertaining to or evidencing corporate filings with any Secretary of State for each entity, including any articles of incorporation, LLC Agreements, Statements of Information, and any other corporate filings, including bylaws or operating agreements, minutes of board meetings, board resolutions, and owner information, and any amendments to any of the foregoing DOCUMENTS.

"DOCUMENT" or "DOCUMENTS" has the same meaning as in Rule 34 of the Federal Rules of Civil Procedure, including electronically stored information, and Rule 1001 of the Federal Rules of Evidence, and includes any kind of written, typewritten, or printed material whatsoever, any kind of graphic material, and any computer readable media including, but without limitation, papers, agreements, contracts, notes, memoranda, correspondence, e-mails, studies, working papers, letters, telegrams, invoices, personal diaries, journal entries, reports, records, books, forms, indexes, transcriptions and recordings, magnetic tapes, disks and printed cards, data sheets, data processing cards, personal calendars, interoffice memoranda, minutes and records of any meetings, financial statements, financial calculations, estimates, reports of telephone or other oral conversations, appointment books, maps, drawings, charts, graphs, photographs, and all other writings and recordings of every kind, however produced or reproduced, whether signed or unsigned, and whether in computerized databases or other electronic format or whether hard copies thereof.  The term "DOCUMENT" further includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.  If the original of any document is not in your possession, custody or control, a copy of that document

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

1  should be produced.  The term "DOCUMENT" also includes audio files, video files, and web

2  pages, both current and historical.

3        "FINANCIAL RECORDS" refers to all financial information, including financial

4  statements, balance sheets, income statements, bank statements, brokerage statements and

5  statements of line of credit available, statements of cash flow, tax returns, and all documents

6  evidencing, referring, or RELATING TO financial resources and liquidity, capital contributions

7  and financial support.

8        "RELATING TO" or "RELATED TO" means pertaining to, mentioning, commenting on,

9  connected with, discussing, describing, analyzing, explaining, showing, reflecting, referring to,

10  dealing with, comprising, consisting of, containing, resulting from, or recording a particular

11  subject in whole or in part either directly or indirectly or being in any way logically or factually

12  connected with the matter discussed or identified.

13  **II.       DOCUMENTS AND RECORDS TO BE PRODUCED**

14        1.       Any and all agreements between Debtor and any other individual or entity

15  RELATING TO that certain promissory note dated June 25, 2008 in favor of Lawrence Foley,

16  including without limitation any Pledge Agreement or guarantee.

17        2.       That certain promissory note from Alturdyne Power Systems with a value of

18  $300,000 as listed on Attachment to Schedule B(16) of the Amendment filed on April 9, 2014, any

19  and all amendments to or modifications of that promissory note, and any and all DOCUMENTS

20  RELATED TO payments made under that promissory note.

21        3.       Any and all DOCUMENTS RELATED TO correspondence or communications

22  between Debtor and any other individual or entity, including without limitation the borrower

23  under the subject promissory note, concerning that certain promissory note from Alturdyne Power

24  Systems with a value of $300,000 as listed on Attachment to Schedule B(16) of the Amendment

25  filed on April 9, 2014.

26        4.       Any and all DOCUMENTS RELATED TO the basis for and calculation of the

27  "gross up" of $346,588 paid to Robert and Janice Judson by Debtor in connection with that certain

28

promissory note dated March 11, 2010 from Debtor in favor of Robert D. Judson, Jr. and Janice H. Judson.

5.      Any and all DOCUMENTS demonstrating the basis of the payment of $247,705.27 made by Debtor to Burlingame Capital, LLC in or about March 2013.

6.      Any and all DOCUMENTS RELATED TO any and all loans made by Debtor to Python Injection and any and all payments received by Debtor from Python Injection.

7.      Any and all DOCUMENTS RELATED TO any and every acquisition by Debtor of an interest in Python Injection.

8.      Any and all DOCUMENTS RELATED TO any request, call, or need for additional capital or an additional monetary investment in Python Injection, at any time from January 1, 2009 through the present.

9.      Any and all DOCUMENTS RELATED TO  the dissolution of Python Injection, and/or the disbursement of Python Injection's assets upon its dissolution.

10.     Any and all DOCUMENTS RELATED TO the current status of Debtor's investment in Python Injection and any loan made by Debtor to Python Injection.

11.     Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE RECORDS of Python Injection from January 1, 2007 through the present.

12.     Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of Python Injection from January 1, 2009 through the present.

13.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor RELATED TO the acquisition of the property and assets of Kids Connection, Inc.

14.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor RELATED TO investment in KC Funding, LLC and/or the acquisition of an interest in KC Funding, LLC.

15.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor

1 RELATED TO the judgment in favor of Debtor against Kids Connection, Inc., from January 1,

2 2007 through the present.

3     16.    Any and all DOCUMENTS RELATED TO correspondence or communications

4 between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding,

5 LLC RELATED TO the acquisition of the property and assets of Kids Connection, Inc.

6     17.    Any and all DOCUMENTS RELATED TO correspondence or communications

7 between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding,

8 LLC RELATED TO investment in KC Funding, LLC and/or the acquisition of an interest in KC

9 Funding, LLC.

10     18.    Any and all DOCUMENTS RELATED TO correspondence or communications

11 between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding,

12 LLC RELATED TO the judgment in favor of Debtor against Kids Connection, Inc., from January

13 1, 2007 through the present.

14     19.    Any and all DOCUMENTS not otherwise requested RELATED TO

15 correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any

16 partner (limited or general) in Debtor RELATED TO KC Funding, LLC, and/or Kids Connection,

17 Inc.

18     20.    Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE

19 RECORDS of KC Funding, LLC, without limitation as to time.

20     21.    Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of KC

21 Funding, LLC, without limitation as to time.

22     22.    Any and all DOCUMENTS RELATED TO the sale of the assets and/or property

23 owned by KC Funding, LLC to Robert and/or Janice Judson, Turtle Grove Properties, LLC, and/or

24 any other individual or entity, including without limitation RELATED TO the sources and

25 amounts of the payments made for the purchase and the amounts and recipients of all distributions

26 of sale proceeds.

27     23.    Any and all DOCUMENTS RELATED TO correspondence or communications

28 between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding,

1 LLC RELATED TO the sale of the assets and/or property owned by KC Funding, LLC to Robert
2 and/or Janice Judson, Turtle Grove Properties, LLC, and/or any other individual or entity.

3     24.    Any and all DOCUMENTS RELATED TO the monetary value of any and all
4 assets and/or property sold by KC Funding, LLC to Robert and/or Janice Judson, Turtle Grove
5 Properties, LLC, and/or any other individual or entity, without limitation as to time, including
6 without limitation any and all appraisals.

7     25.    Any and all agreements between Debtor and any other individual or entity
8 RELATED TO investment in and/or the capitalization of KC Funding, LLC, without limitation as
9 to time, including any amendment or modification of any such agreement.

10     26.    Any and all DOCUMENTS RELATED TO the disbursement of the $2,510,000
11 paid by Alturdyne to Debtor in or about March 2013, and any and all DOCUMENTS
12 demonstrating Debtor's payment to others of the proceeds of that $2,510,000.

13     27.    Any and all DOCUMENTS RELATED TO the amounts and recipients of any and
14 all payments made by Debtor to any other individual or entity from January 1, 2009 to the present.

15     28.    Any and all DOCUMENTS RELATED TO the amounts and recipients of any and
16 all payments made by Burlingame Capital, LLC to any other individual or entity from January 1,
17 2009 to the present.

18     29.    Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of
19 Debtor, from January 1, 2009 through the present.

20     30.    Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of
21 Burlingame Capital, LLC, from January 1, 2009 through the present.

22     31.    Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE
23 RECORDS of Debtor, from January 1, 2009 through the present.

24     32.    Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE
25 RECORDS of Burlingame Capital, LLC, from January 1, 2009 through the present.

26     33.    Any and all fee agreements, engagement agreements, or other agreements between
27 Debtor and any attorney(s) hired by Debtor to represent it in connection with any matter from
28 January 1, 2007 through the present.

1   34.    Any and all DOCUMENTS RELATED TO correspondence or communications

2   between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor,

3   RELATED TO Debtor's acquisition of an interest in KC Funding, LLC.

4   35.    Any and all DOCUMENTS RELATED TO correspondence or communications

5   between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor,

6   RELATED TO the purchase of the assets and/or property of Kids Connection, Inc. by KC

7   Funding, LLC.

8   36.    Any and all DOCUMENTS RELATED TO correspondence or communications

9   between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor,

10  RELATED TO the sale of the assets and/or property owned by KC Funding, LLC to Robert and/or

11  Janice Judson, Turtle Grove Properties, LLC, and/or any other individual or entity.

12  37.    Any and all DOCUMENTS RELATED TO correspondence or communications

13  between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor,

14  RELATED TO any asset or liability of Debtor, from January 1, 2007 through the present.

15  38.    Any and all DOCUMENTS RELATED TO any and all payments made by or on

16  behalf of Debtor from April 1, 2013 through the present to any and all attorneys retained to

17  represent Debtor in any matter, including without limitation attorney John Howard and/or JW

18  Howard Attorneys, Ltd.

19

20

21

22

23

24

25

26

27

28