VINCENT M. COSCINO (BAR NO. 122086)
JEFFREY R. PATTERSON (BAR NO. 126148)
CHARLES L. PERNICKA (BAR NO. 224134)
ALLEN MATKINS LECK GAMBLE
   MALLORY & NATSIS LLP
501 West Broadway, 15th Floor
San Diego, California 92101-3541
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: vcoscino@allenmatkins.com
         jpatterson@allenmatkins.com
         cpernicka@allenmatkins.com

Special Counsel for Chapter 7 Trustee
James L. Kennedy

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BURLINGAME CAPITAL PARTNERS II, L.P., a Delaware Limited Partnership,<br><br>Debtor. | Case No. 14-02607-CL7<br><br>Chapter 7<br><br>**APPLICATION FOR SECOND ORDER REQUIRING PRODUCTION OF DOCUMENTS AND APPEARANCE FOR EXAMINATION BY BURLINGAME CAPITAL PARTNERS II, L.P.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Dept:    5<br>Judge:   Hon. Christopher B. Latham |

TO THE COURT, DEBTOR, DEBTOR'S COUNSEL, AND ALL OTHER PARTIES IN INTEREST ENTITLED TO NOTICE:

Following Debtor's failure to comply with this Court's first order, Chapter 7 Trustee James L. Kennedy ("Trustee") hereby applies for a second order, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, requiring that Burlingame Capital Partners II, L.P. ("Debtor")

produce documents and appear for examination. More specifically, Trustee applies for an order requiring as follows:

1) Burlingame Capital Partners II, L.P. shall appear, by and through Robert D. Judson, Jr., for examination at the offices of Special Counsel for Trustee, Allen Matkins Leck Gamble Mallory & Natsis LLP, located at 501 W. Broadway, 15th Floor, San Diego, California 92101, on March 18, 2015, at 9:30 a.m., or such other date, time and place as may be agreed upon between Trustee and Debtor. The examination shall be conducted before a duly qualified court reporter utilizing real-time computer transcription, and may also be recorded by video, and shall continue day to day, holidays and weekends excluded, until concluded, or as may otherwise be agreed by Trustee and Debtor. The examination shall concern the documents in the possession, custody and control of Debtor.

2) Burlingame Capital Partners II, L.P. shall produce to Trustee all documents in its possession, custody, or control identified in Exhibit A attached to the Application. The documents shall be produced to Special Counsel for Trustee, Allen Matkins Leck Gamble Mallory & Natsis LLP, at 501 W. Broadway, 15th Floor, San Diego, California 92101, on or before April 1, 2015, or such other date and place as Trustee and Debtor might agree.

3) Burlingame Capital Partners II, L.P. shall appear, by and through Robert D. Judson, Jr., for examination at the offices of Special Counsel for Trustee, Allen Matkins Leck Gamble Mallory & Natsis LLP, located at 501 W. Broadway, 15th Floor, San Diego, California 92101, on April 22, 2015, at 9:30 a.m., or such other date, time and place as may be agreed upon between Trustee and Debtor. The examination shall be conducted before a duly qualified court reporter utilizing real-time computer transcription, and may also be recorded by video, and shall continue day to day, holidays and weekends excluded, until concluded, or as may otherwise be agreed by Trustee and Debtor. The examination shall concern the finances, assets, liabilities, and transactions of Debtor, and any such matters as may be ancillary or connected to the finances, assets, liabilities, and transactions of Debtor.

/ / /

/ / /

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

827906.02/SD                                        -2-

PLEASE TAKE FURTHER NOTICE that if you object to the examination or production, you must file a motion for protective order setting forth the specific nature and basis of your objection, and serve it on the undersigned attorneys at:

> Charles L. Pernicka, Esq.
> Allen Matkins Leck Gamble Mallory & Natsis LLP
> 501 W. Broadway, 15th Floor
> San Diego, California  92101
> Telephone (619) 233-1155
> Facsimile (619) 233-1158

This application is brought pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Southern District Bankruptcy Court Local Rule 9013-3(c), and is based on this Application, the attached Memorandum of Points and Authorities, the accompanying Declaration of Charles L. Pernicka and the exhibits attached thereto, the complete files and records of this bankruptcy proceeding, and any such additional matters as may be presented in connection herewith.

Dated:  March 3, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: _____
CHARLES L. PERNICKA
Special Counsel for Chapter 7 Trustee
James L. Kennedy

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.      INTRODUCTION**

On December 30, 2014, this Court entered an order requiring that Debtor produce certain specified categories of documents, and then appear for examination. (Docket No. 43.) There was no opposition, objection, or motion for a protective order in connection with the application for the order or the entered order. Debtor simply refused to comply with the order.

The order required that Debtor produce documents on or before February 11, 2015, 43 days after it was entered. (Docket No. 43.) Debtor produced no documents. Instead, the day before documents were due, on February 10, Debtor's litigation counsel stated that documents would not be produced as ordered.[1] Instead, he offered a "document dump", at Trustee's expense, of 500 boxes of unspecified documents purportedly located at a storage facility in Florida. Debtor then refused to respond to any of Trustee's many repeated requests for information regarding the contents of the referenced 500 boxes of documents and the quantity and locations of the documents responsive to the categories that were ordered produced.

The order also required that Debtor appear for examination on February 24, 2015, 56 days after it was entered. (Docket No. 43.) Instead, on February 10, Debtor's litigation counsel also stated that Debtor would not appear on February 24 as ordered.

Due to Debtor's improper disregard of this Court's prior order, Trustee now requests a second order. Because Debtor ignored all of Trustee's repeated requests for information about the documents in its possession, Trustee now requests that Debtor, by and through Robert D. Judson, Jr., principal of Debtor's general partner, be required to appear for examination to testify under oath as to the location(s) and quantity of the documents that Debtor was previously ordered to produce (Exhibit A attached to this Application) and that Debtor otherwise possesses. Trustee

---

[1] Debtor's litigation counsel is John W. Howard. While Attorney Howard has not appeared as counsel for Debtor in this bankruptcy proceeding, he did accept appointment as special counsel for Trustee to pursue certain assets, and his employment as special counsel for Trustee was approved by an Order entered on or about November 3, 2014. (Docket No. 35.) Trustee has now filed a notice of abandonment of the claims for which Attorney Howard was appointed as special counsel. (Docket No. 45.)

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

827906.02/SD                                                      -4-

requests that Debtor then be required to produce all responsive documents, and be required to appear for examination about those documents and its finances, assets, and transactions after the documents are produced. Because Debtor was already provided more than ample time to produce documents and appear, Trustee requests that Debtor be ordered to appear within two weeks after the filing of this application for examination about its documents.

## II.    BACKGROUND

### A.    The Application To Compel Production Of Documents And Appearance For Examination

On December 12, 2014, Trustee filed an application for an order authorizing the issuance of subpoenas to Debtor to compel Debtor to produce documents and appear for examination. (Docket No. 39.) As further set forth in that application, the document production and examination would have, among other things: 1) allowed Trustee to obtain information concerning a transaction whereby a school, including the real property on which the school is located and the school's personal property, was transferred to Debtor's principals from an entity that Debtor previously represented to another court was its wholly-owned subsidiary, but with Debtor receiving less than 5% of the purported sale price; and 2) allowed Trustee to obtain information concerning the disposition of Debtor's assets, considering that (a) Debtor previously represented to a court-appointed Referee that it had a net worth of at least $250,000 above and beyond all liabilities, after including Allen Matkins' claim of $1.9 million as a liability and all other liabilities, (b) less than three months before filing its bankruptcy petition Debtor reaffirmed that it had sold no assets and paid no capital returns or profits to its principals (Robert and Janice Judson), but (c) Debtor then filed its petition herein, listing assets valued at $416,041 and debts in excess of $2 million. (Docket No. 39.)

As further set forth in the December 12, 2014 application, Debtor agreed at the continued Section 341(a) creditor's meeting, held on August 12, 2014, that it would appear for examination under Rule 2004. (Docket No. 39.) Debtor then refused to respond to repeated inquiries about a proposed stipulation prepared by Trustee. (*Id.*) As a result, it was necessary to apply for an order.

On December 15, 2014, this Court approved Trustee's application, and entered an Order authorizing the issuance of subpoenas requiring Debtor to produce documents and appear for examination (the "First Order"). (Docket No. 40.) There was no opposition, objection, or motion for a protective order in connection with the application for the First Order or the First Order.

**B.     The Amended Order Required Debtor To Produce Documents And Appear For Examination**

Subsection (d) of Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that a debtor may be required to produce documents and appear for examination without the need for a subpoena. Red. R. Bankr. P. 2004(d). In light of this, on December 29, 2014, Trustee filed an application to amend the First Order, to provide that Debtor was required to produce documents and appear for examination without the need for subpoenas. (Docket No. 42.)

On December 30, 2014, this Court approved the application, and entered an Amended Order ("Amended Order"), requiring Debtor to produce all documents within its possession, custody or control identified in Exhibit A to Trustee's applications (attached again as Exhibit A to this application) on or before February 11, 2015, and to appear for examination on February 24, 2015. (Docket No. 43.)

The Amended Order was served on counsel of record for Debtor over the ECF system, and was also served on Debtor by mail. (Docket Nos. 43-1 and 44.)

As with the First Order, there was no opposition, objection, or motion for a protective order in connection with the application for the Amended Order or the Amended Order.

**C.     Debtor Refused To Comply With The Amended Order And Ignored Trustee's Repeated Attempts To Meet And Confer About Debtor's Documents**

On February 10, 2015, the day before the deadline for Debtor's production of documents, and 42 days after the Amended Order was entered, Debtor's litigation counsel informed Trustee that Debtor would not produce documents as ordered. Debtor's litigation counsel then continued, "However, the documents you seek are in a storage facility in Florida and constitute more than 500 bankers boxes. If you want to provide and pay for transport, they [Debtor's principals] will make them available to you in their entirety." (Declaration of Charles L. Pernicka in support of this

application ("Pernicka Dec."), ¶ 4 and Ex. 1.) Debtor's litigation counsel did not state what amount of the purported 500 boxes contained documents responsive to the categories that Debtor was ordered to produce, or where else responsive documents might be located. (*Id.*) Instead, Debtor simply offered to provide a "document dump" containing unspecified documents, at Trustee's expense. Debtor's litigation counsel also stated that Debtor (specifically, Mr. Judson) would not appear for examination on February 24, despite the Court's order directing him to appear on that date. (*Id.*)

On February 11, 2015, Trustee responded to Debtor's litigation counsel, stating that a "document dump" was not allowed under the Federal Rules of Civil Procedure, and inquiring as to the volume of responsive documents possessed by Debtor and the location(s) of responsive documents. (Pernicka Dec., ¶ 5 and Ex. 2.) Three attorneys purporting to represent Debtor and/or Debtor's principals, including counsel of record in this proceeding and Debtor's litigation counsel, were recipients of this correspondence. (*Id.*) Trustee never received a response from any of them. (Pernicka Dec., ¶ 5.)

On February 18, 2015, Trustee again inquired of Debtor as to the volume of responsive documents possessed by Debtor, and the contents of the purported 500 boxes of documents. (Pernicka Dec., ¶ 6 and Ex. 3.) Again, the correspondence was sent to all three attorneys purporting to represent Debtor and/or Debtor's principals. (*Id.*) Again, there was no response. (Pernicka Dec., ¶ 6.)

Yet again, on February 20, 2015, Trustee inquired of Debtor as to the volume of responsive documents possessed by Debtor. (Pernicka Dec., ¶ 7 and Ex. 4.) As before, the correspondence was sent to all three attorneys purporting to represent Debtor and/or Debtor's principals. (*Id.*) As before, there was no response. (Pernicka Dec., ¶ 7.)

On February 25, 2015, a fourth email was sent to all three attorneys, once again asking about Debtor's documents. (Pernicka Dec., ¶ 8 and Ex. 5.) Just as with Trustee's previous three attempts, there was no response to this fourth attempt to communicate. (Pernicka Dec., ¶ 8.)

Finally, on March 3, 2015, attorney Jeffrey Cawdrey left a voicemail for Trustee's counsel, and sent a follow-up email, acknowledging that no response was ever provided, and indicating that

a response would be provided.  As of the filing of this motion, however, Debtor still has not provided any substantive response to Trustee's repeated inquiries.  (Pernicka Dec., ¶ 9 and Ex. 6.)

III.    **A SECOND ORDER SHOULD BE ENTERED REQUIRING DEBTOR (BY AND THROUGH ROBERT D. JUDSON, JR.) TO TESTIFY REGARDING ITS DOCUMENTS, PRODUCE DOCUMENTS, AND APPEAR FOR EXAMINATION**

A.    <u>**Rule 2004 Authorizes Debtor's Examination and Production Of Documents**</u>

A Chapter 7 Trustee has a duty to "investigate the financial affairs of the debtor."  11 U.S.C. § 704(a)(4).  As part of its investigation, the Trustee may require the Debtor to appear for examination.  Rule 2004 of the Federal Rules of Bankruptcy Procedure provides, "On motion of any party in interest, the court may order the examination of any entity."  Fed. R. Bankr. P. 2004(a); see also *In re Continental Forge Co., Inc.*, 73 B.R. 1005, 1007 (W.D. Pa. 1987) (debtors and non-debtor third parties are equally subject to examination under Rule 2004).

Rule 2004 states, in part:

> (b) Scope of Examination.  The examination of an entity under this rule or of the debtor . . . may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.  . . .

> (c) Compelling Attendance and Production of Documents.  The attendance of an entity for examination and for the production of documents, whether the examination is to be conducted within or without the district in which the case is pending, may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial. . . .

Fed. R. Bankr. P. 2004(b) and (c).

It is well settled that the scope of examination under Rule 2004 is "broad and far reaching." *In re Sunridge Associates*, 202 B.R. 761, 762 (Bankr. E.D. Cal. 1996).  "There need be no pending dispute with defined issues to narrow the scope of the inquiry it permits." *Id.*

> In general, a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor.  The intent of the bankrupt law is that only the debtor dealing honestly with his property shall be discharged; and that any proper assets of the estate, however concealed, shall be made available to creditors.  The examination for this purpose is of necessity to a considerable extent a fishing examination.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

827906.02/SD

-8-

*In re Foerst*, 93 F. 190, 191 (S.D.N.Y. 1899).

"The clear intent of Rule 2004 (and its predecessor rules) is to give parties in interest an opportunity to examine individuals having knowledge of the financial affairs of the debtor in order to preserve the rights of creditors." *In re The GHR Companies, Inc.*, 41 B.R. 655, 660 (Bankr. D. Mass. 1984) (likening an examination under Rule 2004 "to a necessary 'fishing expedition.' "). Such examinations also serve the purpose of providing the court with a "clear picture of the condition and whereabouts of the bankrupt's estate." *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984). "[T]he inquiry may 'cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him.' " *Id.*

Rule 2004 examinations also extend to documents. See Fed. R. Bankr. P. 2004(c); see also *In re Fin. Corp. of America*, 119 B.R. 728, 733 (C.D. Cal. 1990) (Rule 2004 authorizes the Court to order an examination of any entity and the production of documents relating to the Debtor's estate and financial transactions).

## B.   Debtor May Be Compelled To Appear And Produce Documents Without A Subpoena

A debtor may be required to produce documents and appear for examination pursuant to Rule 2004 upon court order, without the need for a subpoena. Rule 2004(d) states:

> (d) Time and place of examination of debtor. The court may for cause shown and on terms as it may impose order the debtor to be examined under this rule at any time or place it designates, whether within or without the district wherein the case is pending.

Fed. R. Bankr. P. 2004(d). The Notes of the Advisory Committee in connection with the Rule further explain that a subpoena need not be issued to the debtor:

> Note to Subdivision (d). Subdivision (d) is derived from former Bankruptcy Rule 205(f) and is not a limitation on subdivision (c). Any person, including the debtor, served with a subpoena within the range of a subpoena must attend for examination pursuant to subdivision (c). Subdivision (d) applies only to the debtor and a subpoena need not be issued. There are no territorial limits on the service of an order on the debtor. See, e.g., In re Totem Lodge & Country Club, Inc., 134 F. Supp. 158 (S.D.N.Y. 1955).

Fed. R. Bankr. P. 2004 advisory comm. nn., Note to Subdivision (d).

There is no need for the issuance of a subpoena to compel Debtor's production of documents and appearance for examination. Service of the entered Amended Order upon Debtor's counsel of record and Debtor was sufficient to require Debtor's compliance. (See Docket Nos. 43-1 and 44.)

**C.    The Court Should Order Debtor's Appearance For Examination About Documents, Production Of Documents, and Appearance For Examination**

Debtor should be ordered to appear for examination about its documents, then produce all documents responsive to the categories in Exhibit A hereto, then appear for examination regarding its finances, assets, debts, liabilities, and transactions. For at least two reasons, Debtor's "offer" for Trustee to pay to transport from Florida and store 500 boxes of unspecified documents is not compliant.

First, Federal rules prohibit "simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought." *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 410 (S.D.N.Y. 2009). Rule 34(b) was amended in 1980 "to eliminate the practice of 'deliberately [mixing] critical documents with others in the hope of obscuring significance.' " *Id.* at p. 409; see also Fed. R. Civ. P. 34 1980 Advisory Committee Note. Debtor is not permitted to simply produce (at Trustee's expense) 500 boxes of documents, some of which might be responsive to the categories sought, and many of which likely are not responsive.

Second, Debtor's representation fails to account for the many responsive documents that may be within Debtor's "possession, custody or control" that are not contained among the boxes in the Florida storage unit. For example, documents which must be produced include responsive documents in the possession of Debtor's attorneys (past or current), and any affiliated entities or individuals. See, e.g., *Johnson v. Akin Capital Management, L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001) ("Pursuant to 'Fed. R. Civ. P. 34, which governs the production of documents during discovery, the clear rule is that documents in the possession of a party's *current or former* counsel are deemed to be within that party's 'possession, custody and control.' ' " [Emphasis in original]); *United States v. Faltico*, 586 F.2d 1267, 1270 (8th Cir. 1978) (affirming order requiring

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

827906.02/SD                                                    -10-

production of documents under responding party's "effective control" even though they were "in the hands of corporations which are not parties to this action.").

Four times, Trustee asked Debtor's attorneys about the quantity and locations of responsive documents. (Pernicka Dec., Exs. 2, 3, 4, and 5.) Debtor's attorneys provided no substantive response. Pernicka Dec., ¶¶ 5, 6, 7, and 8.) Debtor should be required to appear to provide sworn testimony concerning its documents.

### D.   Robert D. Judson, Jr. Should Be Ordered To Appear As Representative Of Debtor

Debtor is a partnership. (Docket No. 1.) Rule 9001 provides, "when it is necessary to compel attendance of a debtor for examination and the debtor is not a natural person . . . if the debtor is a partnership, 'debtor' includes any or all of its general partners or, if designated by the court, any other person in control." Fed. R. Bankr. P. 9001(5). A person in control of a debtor entity may be designated by the court order to appear for the examination of the debtor. See, e.g., *In re Little's Motor Co.*, 53 B.R. 635, 637-638 (order designating specified individual to appear for examination in place of the debtor corporation).

Here, Robert D. Judson, Jr. is the individual in control of Debtor. For example, he is the person who signed Debtor's petition. (Docket No. 1, p. 3 of 43.) He is the person who appeared for the Section 341 meeting. (Docket No. 39.) Debtor's counsel confirmed that Mr. Judson is the individual subject to appearance. (Pernicka Dec., Ex. 1.)

Robert D. Judson, Jr., should be ordered to appear for examination on behalf of Debtor.

### E.   Debtor Should Be Ordered To Appear Within Two Weeks

Local Bankruptcy Rule 2004-1 in effect at the time the Amended Order was entered required "a minimum of twenty-eight (28) days' notice from the date of service of the court's order, unless otherwise agreed by the parties or ordered by the court," until the examination. The Amended Order was entered on December 30, 2014. (Docket No. 43.) It was served by ECF on the same day, including service on Debtor's counsel of record, James Beshears. (Docket No. 43-1.) The Amended Order was then also served on Debtor by mail on January 1, 2015. (Docket No. 44.) The deadlines for production of documents (February 11) and appearance (February 24) were

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

827906.02/SD                                                                -11-

well in excess of 28 days after service, providing Debtor ample opportunity to prepare. (And Debtor agreed to an examination months earlier, on August 12, 2014, at the continued Section 341 meeting. (See Docket No. 39.))

Local Bankruptcy Rule 2004-1, in effect as of March 1, 2015, provides for 21 days' notice, "unless otherwise agreed to by the parties or ordered by the Court." [Emphasis added.]

. In this case, because Debtor was already provided more than ample time to produce documents and appear, Trustee requests that Debtor be ordered to appear within two weeks after the filing of this application for examination about its documents. Debtor should then be required to produce all responsive documents within two weeks from that date, and be required to appear for examination three weeks later. Debtor should not be permitted to further delay its examination.

## IV.   CONCLUSION

For the foregoing reasons, Trustee respectfully requests the Court enter a second order requiring that Debtor produce documents and appear for examination, as set forth in this application and in the proposed order submitted herewith.

Dated: March 3, 2015

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: _____
CHARLES L. PERNICKA
Special Counsel for Chapter 7 Trustee
James L. Kennedy

## EXHIBIT A

### In re BURLINGAME CAPITAL PARTNERS II, L.P. ("Debtor")

### USBC SOUTHERN DISTRICT OF CALIFORNIA CASE NO. 14-02607-CL7

### TRUSTEE'S REQUEST FOR DOCUMENTS

I.      DEFINITIONS

"CORPORATE GOVERNANCE RECORDS" includes all DOCUMENTS referring, RELATING and/or pertaining to or evidencing corporate filings with any Secretary of State for each entity, including any articles of incorporation, LLC Agreements, Statements of Information, and any other corporate filings, including bylaws or operating agreements, minutes of board meetings, board resolutions, and owner information, and any amendments to any of the foregoing DOCUMENTS.

"DOCUMENT" or "DOCUMENTS" has the same meaning as in Rule 34 of the Federal Rules of Civil Procedure, including electronically stored information, and Rule 1001 of the Federal Rules of Evidence, and includes any kind of written, typewritten, or printed material whatsoever, any kind of graphic material, and any computer readable media including, but without limitation, papers, agreements, contracts, notes, memoranda, correspondence, e-mails, studies, working papers, letters, telegrams, invoices, personal diaries, journal entries, reports, records, books, forms, indexes, transcriptions and recordings, magnetic tapes, disks and printed cards, data sheets, data processing cards, personal calendars, interoffice memoranda, minutes and records of any meetings, financial statements, financial calculations, estimates, reports of telephone or other oral conversations, appointment books, maps, drawings, charts, graphs, photographs, and all other writings and recordings of every kind, however produced or reproduced, whether signed or unsigned, and whether in computerized databases or other electronic format or whether hard copies thereof. The term "DOCUMENT" further includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any documents, whether used or not. If the original of any document is not in your possession, custody or control, a copy of that document

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

827906.02/SD                                    -13-

should be produced. The term "DOCUMENT" also includes audio files, video files, and web pages, both current and historical.

"FINANCIAL RECORDS" refers to all financial information, including financial statements, balance sheets, income statements, bank statements, brokerage statements and statements of line of credit available, statements of cash flow, tax returns, and all documents evidencing, referring, or RELATING TO financial resources and liquidity, capital contributions and financial support.

"RELATING TO" or "RELATED TO" means pertaining to, mentioning, commenting on, connected with, discussing, describing, analyzing, explaining, showing, reflecting, referring to, dealing with, comprising, consisting of, containing, resulting from, or recording a particular subject in whole or in part either directly or indirectly or being in any way logically or factually connected with the matter discussed or identified.

## II.    DOCUMENTS AND RECORDS TO BE PRODUCED

1.    Any and all agreements between Debtor and any other individual or entity RELATING TO that certain promissory note dated June 25, 2008 in favor of Lawrence Foley, including without limitation any Pledge Agreement or guarantee.

2.    That certain promissory note from Alturdyne Power Systems with a value of $300,000 as listed on Attachment to Schedule B(16) of the Amendment filed on April 9, 2014, any and all amendments to or modifications of that promissory note, and any and all DOCUMENTS RELATED TO payments made under that promissory note.

3.    Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor and any other individual or entity, including without limitation the borrower under the subject promissory note, concerning that certain promissory note from Alturdyne Power Systems with a value of $300,000 as listed on Attachment to Schedule B(16) of the Amendment filed on April 9, 2014.

4.    Any and all DOCUMENTS RELATED TO the basis for and calculation of the "gross up" of $346,588 paid to Robert and Janice Judson by Debtor in connection with that certain

promissory note dated March 11, 2010 from Debtor in favor of Robert D. Judson, Jr. and Janice H. Judson.

5.      Any and all DOCUMENTS demonstrating the basis of the payment of $247,705.27 made by Debtor to Burlingame Capital, LLC in or about March 2013.

6.      Any and all DOCUMENTS RELATED TO any and all loans made by Debtor to Python Injection and any and all payments received by Debtor from Python Injection.

7.      Any and all DOCUMENTS RELATED TO any and every acquisition by Debtor of an interest in Python Injection.

8.      Any and all DOCUMENTS RELATED TO any request, call, or need for additional capital or an additional monetary investment in Python Injection, at any time from January 1, 2009 through the present.

9.      Any and all DOCUMENTS RELATED TO  the dissolution of Python Injection, and/or the disbursement of Python Injection's assets upon its dissolution.

10.      Any and all DOCUMENTS RELATED TO the current status of Debtor's investment in Python Injection and any loan made by Debtor to Python Injection.

11.      Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE RECORDS of Python Injection from January 1, 2007 through the present.

12.      Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of Python Injection from January 1, 2009 through the present.

13.      Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor RELATED TO the acquisition of the property and assets of Kids Connection, Inc.

14.      Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor RELATED TO investment in KC Funding, LLC and/or the acquisition of an interest in KC Funding, LLC.

15.      Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor

RELATED TO the judgment in favor of Debtor against Kids Connection, Inc., from January 1, 2007 through the present.

16. Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding, LLC RELATED TO the acquisition of the property and assets of Kids Connection, Inc.

17. Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding, LLC RELATED TO investment in KC Funding, LLC and/or the acquisition of an interest in KC Funding, LLC.

18. Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding, LLC RELATED TO the judgment in favor of Debtor against Kids Connection, Inc., from January 1, 2007 through the present.

19. Any and all DOCUMENTS not otherwise requested RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or any partner (limited or general) in Debtor RELATED TO KC Funding, LLC, and/or Kids Connection, Inc.

20. Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE RECORDS of KC Funding, LLC, without limitation as to time.

21. Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of KC Funding, LLC, without limitation as to time.

22. Any and all DOCUMENTS RELATED TO the sale of the assets and/or property owned by KC Funding, LLC to Robert and/or Janice Judson, Turtle Grove Properties, LLC, and/or any other individual or entity, including without limitation RELATED TO the sources and amounts of the payments made for the purchase and the amounts and recipients of all distributions of sale proceeds.

23. Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, Robert and/or Janice Judson, and/or the holder(s) of any interest in KC Funding,

LLC RELATED TO the sale of the assets and/or property owned by KC Funding, LLC to Robert and/or Janice Judson, Turtle Grove Properties, LLC, and/or any other individual or entity.

24.     Any and all DOCUMENTS RELATED TO the monetary value of any and all assets and/or property sold by KC Funding, LLC to Robert and/or Janice Judson, Turtle Grove Properties, LLC, and/or any other individual or entity, without limitation as to time, including without limitation any and all appraisals.

25.     Any and all agreements between Debtor and any other individual or entity RELATED TO investment in and/or the capitalization of KC Funding, LLC, without limitation as to time, including any amendment or modification of any such agreement.

26.     Any and all DOCUMENTS RELATED TO the disbursement of the $2,510,000 paid by Alturdyne to Debtor in or about March 2013, and any and all DOCUMENTS demonstrating Debtor's payment to others of the proceeds of that $2,510,000.

27.     Any and all DOCUMENTS RELATED TO the amounts and recipients of any and all payments made by Debtor to any other individual or entity from January 1, 2009 to the present.

28.     Any and all DOCUMENTS RELATED TO the amounts and recipients of any and all payments made by Burlingame Capital, LLC to any other individual or entity from January 1, 2009 to the present.

29.     Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of Debtor, from January 1, 2009 through the present.

30.     Any and all DOCUMENTS RELATED TO the FINANCIAL RECORDS of Burlingame Capital, LLC, from January 1, 2009 through the present.

31.     Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE RECORDS of Debtor, from January 1, 2009 through the present.

32.     Any and all DOCUMENTS RELATED TO the CORPORATE GOVERNANCE RECORDS of Burlingame Capital, LLC, from January 1, 2009 through the present.

33.     Any and all fee agreements, engagement agreements, or other agreements between Debtor and any attorney(s) hired by Debtor to represent it in connection with any matter from January 1, 2007 through the present.

34.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor, RELATED TO Debtor's acquisition of an interest in KC Funding, LLC.

35.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor, RELATED TO the purchase of the assets and/or property of Kids Connection, Inc. by KC Funding, LLC.

36.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor, RELATED TO the sale of the assets and/or property owned by KC Funding, LLC to Robert and/or Janice Judson, Turtle Grove Properties, LLC, and/or any other individual or entity.

37.     Any and all DOCUMENTS RELATED TO correspondence or communications between Debtor, or any individual on behalf of Debtor, and any attorney(s) hired by Debtor, RELATED TO any asset or liability of Debtor, from January 1, 2007 through the present.

38.     Any and all DOCUMENTS RELATED TO any and all payments made by or on behalf of Debtor from April 1, 2013 through the present to any and all attorneys retained to represent Debtor in any matter, including without limitation attorney John Howard and/or JW Howard Attorneys, Ltd.