1   VINCENT M. COSCINO (BAR NO. 122086)
    JEFFREY R. PATTERSON (BAR NO. 126148)
2   CHARLES L. PERNICKA (BAR NO. 224134)
    ALLEN MATKINS LECK GAMBLE
3     MALLORY & NATSIS LLP
    501 West Broadway, 15th Floor
4   San Diego, California 92101-3541
    Phone: (619) 233-1155
5   Fax: (619) 233-1158
    E-Mail: vcoscino@allenmatkins.com
6            jpatterson@allenmatkins.com
             cpernicka@allenmatkins.com
7
    Special Counsel for Chapter 7 Trustee
8   James L. Kennedy

9              UNITED STATES BANKRUPTCY COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11

12  In re                          Case No. 14-02607-CL7

13  BURLINGAME CAPITAL PARTNERS II,  Chapter 7
    L.P., a Delaware Limited Partnership,
14                                  **REQUEST FOR JUDICIAL NOTICE IN**
         Debtor.                    **SUPPORT OF TRUSTEE'S OPPOSITION**
15                                  **TO ROBERT D. JUDSON, JR'S MOTION**
                                    **TO DISQUALIFY ALLEN MATKINS LECK**
16                                  **GAMBLE MALLORY & NATSIS LLP**

17
                                    Date:   June 22, 2015
18                                  Time:   11:00 a.m.
                                    Dept:   5
19                                  Judge:  Hon. Christopher B. Latham

20

21

22

23

24       Chapter 7 Trustee James L. Kennedy hereby requests that the Court take judicial notice of

25  the following documents, pursuant to Federal Rule of Evidence 201.

26       Judicial notice may be taken of each of the documents listed below, each of which is a

27  matter of public record not reasonably subject to dispute. The documents listed below are

28  pleadings, orders, or other judicial proceeding filings. See, e.g., *Mullis v. U.S. Bankruptcy Court,*

1   828 F.2d 1385, 1388 n.9 (9th Cir. 1987) (pleadings, orders and other papers on file in bankruptcy

2   action were subject to judicial notice); *Stimac v. Wieking*, 785 F. Supp. 2d 847, 849-850 (N.D.

3   Cal. 2011) (court records of other Districts and the Ninth Circuit, and California State Bar

4   membership and status records, were subject to judicial notice).

5       1.     Complaint filed on or about November 8, 2010, in San Francisco County Superior

6   Court Case No. CGC-10-505145;

7       2.     Cross-Complaint filed on or about November 18, 2010, in San Francisco County

8   Superior Court Case No. CGC-10-505145;

9       3.     First Amended Cross-Complaint filed on or about April 22, 2011, in San Francisco

10   County Superior Court Case No. CGC-10-505145;

11       4.     Stipulation and Order Dismissing Certain Claims and Parties, and For Amendment

12   to Complaint entered on or about October 13, 2011, in San Francisco County Superior Court Case

13   No. CGC-10-505145;

14       5.     Order re: Plaintiff's Motion for Issuance of a Protective Order, Monetary Sanctions,

15   Evidentiary Sanctions, and Such Other Relief as the Court Deems Proper entered on or about

16   July 31, 2012, in San Francisco County Superior Court Case No. CGC-10-505145; and

17       6.     Final Statement of Decision Following Trial on the Bifurcated Issue of Judicial

18   Estoppel entered on or about October 21, 2013, in San Francisco County Superior Court Case No.

19   CGC-10-505145.

20

21   Dated: May 8, 2015                        ALLEN MATKINS LECK GAMBLE

22                               MALLORY & NATSIS LLP

23                        By: _____

24                            CHARLES L. PERNICKA

25                            Special Counsel for Chapter 7 Trustee

                                 James L. Kennedy

26

27

28

# EXHIBIT INDEX

| | | |
|---|---|---|
| Exhibit 1 | Complaint for Breach of Contract; Account Stated; False Promise; Fraudulent Inducement; Negligent Misrepresentation; Quantum Meruit | 4 |
| Exhibit 2 | Cross-Complaint for: 1. Professional Negligence, 2. Breach of Fiduciary Duty, 3. Professional Negligence and 4. Fraud | 26 |
| Exhibit 3 | First Amended Cross-Complaint for: 1. Professional Negligence, 2. Breach of Fiduciary Duty, 3. Professional Negligence 4. Fraud and 5. False Promise | 43 |
| Exhibit 4 | Stipulation and Order Dismissing Certain Claims and Parties, and For Amendment to Complaint | 92 |
| Exhibit 5 | Order re: Plaintiff's Motion for Issuance of a Protective Order, Monetary Sanctions, Evidentiary Sanctions, and Such Other Relief as the Court Deems Proper | 97 |
| Exhibit 6 | Final Statement of Decision Following Trial on the Bifurcated Issue of Judicial Estoppel | 130 |

EXHIBIT 1   004 of 156

# EXHIBIT 1

# EXHIBIT 1

EXHIBIT 1   004 of 156

1  James C. Krieg (SBN 77069)
2  Allison Lane Cooper (SBN 152384)
   KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
3  555 Montgomery Street, 17ᵗʰ Floor
   San Francisco, CA  94111
4  Telephone:  (415) 249-8330
   Facsimile:  (415) 249-8333
5

6  Attorneys for Plaintiff
   ALLEN MATKINS LECK GAMBLE MALLORY & NATSIS LLP

7

8
            SUPERIOR COURT FOR THE STATE OF CALIFORNIA
9                  FOR THE COUNTY OF SAN FRANCISCO

10

11  ALLEN MATKINS LECK GAMBLE            COMPLAINT FOR BREACH OF
12  MALLORY & NATSIS LLP,                CONTRACT; ACCOUNT STATED;
                                         FALSE PROMISE; FRAUDULENT
13                  Plaintiff,           INDUCEMENT; NEGLIGENT
                                         MISREPRESENTATION; QUANTUM
14      v.                               MERUIT

15
                                         CASE MANAGEMENT CONFERENCE SET
16  BURLINGAME CAPITAL PARTNERS II,
    LP; BURLINGAME CAPITAL, LLC; ;          APR – 8 2011  9:00AM
17  ROBERT JUDSON; JANICE JUDSON,
                                            DEPARTMENT 212
18

19                  Defendants.

20

21      Plaintiff Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") alleges and

22  prays as follows:

23                          I.    THE PARTIES

24      1.    Plaintiff Allen Matkins is a limited liability partnership and law firm with offices

25  throughout California.  The attorneys handling the matters from which this dispute arose worked

26  primarily out of the firm's San Francisco, California office.

27      2.    Plaintiff is informed and believes and thereon alleges that defendant Burlingame

28  Capital Partners II, LP ("Burlingame Capital Partners") is a limited partnership formed under the

                                        1

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT
INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

Case No. CGC-10-505145

ENDORSED FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2010 NOV -8  AM 1: 05

CLERK OF THE COURT
BY: _____
        DEPUTY CLERK

1    laws of the State of Delaware, authorized to conduct business in California with its principal place of

2    business in San Mateo, California.

3         3.    Plaintiff is informed and believes and thereon alleges that Defendant Burlingame

4    Capital, LLC ("Burlingame Capital") is a limited liability corporation formed under the laws of the

5    State of Delaware, authorized to conduct business in California with its principal place of business in

6    San Mateo, California. Plaintiff is informed and believes and thereon alleges that Burlingame

7    Capital is the general partner of Burlingame Capital Partners.

8         4.    Plaintiff is informed and believes and thereon alleges that Defendant Robert Judson is

9    an individual and resident of San Mateo, California. Plaintiff is informed and believes and thereon

10   alleges that Robert Judson is a member of Burlingame Capital.

11        5.    Plaintiff is informed and believes and thereon alleges that Defendant Janice Judson is

12   an individual and resident of San Mateo, California. Plaintiff is informed and believes and thereon

13   alleges that Janice Judson is a member of Burlingame Capital.

14        6.    Plaintiff is informed and believes and thereon alleges that all of the defendants were

15   acting as the agents of the others in connection with the matters alleged such that the acts of one

16   should be imputed to the others, and such that each defendant should be held responsible for all of

17   the matters alleged. Plaintiff is informed and believes and thereon alleges that Robert and Janice

18   Judson and the remaining defendants are alter egos of each other, because the Judsons so control and

19   direct the activities of Burlingame Capital and Burlingame Capital Partners that they are the agents

20   and/or instrumentalities of the Judsons.

21        7.    Burlingame Capital Partners, Burlingame Capital, Robert Judson and Janice Judson

22   are referenced collectively as the "Burlingame Defendants."

23        8.    Venue is proper in this Court pursuant to California Code of Civil Procedure Section

24   395 as this is an action to enforce obligations and liabilities which, in substantial part, arose in this

25   county and which were, in substantial part, performed in this county, and as the legal services

26   contract(s) at issue were entered into in this county.

27              **II.    ACTIONABLE EVENTS**

28        9.    Burlingame Capital Partners is an investment fund established in 2001 to make

2

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT
INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

1  subordinated debt investments with high-yield targets. Burlingame Capital is the general partner of

2  Burlingame Capital Partners, and directs the fund. The Judsons are the principals of Burlingame

3  Capital.

4       10.    The Burlingame Defendants, as lenders, loaned substantial sums to an electroplating

5  business named QMECT, Inc. QMECT defaulted on loan(s) from Burlingame Capital and/or

6  Burlingame Capital Partners and eventually went into bankruptcy. Electrochem Solutions was a

7  corporation formed by the Judsons to hold and assume the business assets of QMECT after they

8  were acquired by the Burlingame Defendants in connection with claims asserted in the QMECT

9  bankruptcy.

10       11.    The Burlingame Defendants first retained Allen Matkins in or about December 2002

11  to provide transactional advice and related legal services. The Burlingame Defendants expanded the

12  scope of Allen Matkins' representation in June 2004 to include the documentation of various loans

13  made by Burlingame Capital and Burlingame Capital Partners. The parties entered into written

14  engagement agreements, attached hereto as Exhibit 1. Those agreements provided, inter alia, that

15  the Burlingame Defendants would promptly review bills and pay for legal services rendered.

16       12.    From time to time after their initial engagement, the Burlingame Defendants

17  expanded the scope of the representation and requested that Allen Matkins provide them additional

18  legal assistance. The Burlingame Defendants requested, in part, that Allen Matkins represent them

19  when they were sued by QMECT for fraud in connection with their efforts to collect on the loan.

20  The Burlingame Defendants agreed to timely pay for those legal services.

21       13.    The Burlingame Defendants were fully advised of Allen Matkins' billing policies and

22  rates, and accepted and agreed to them, and performed pursuant to those agreements through 2007.

23  The Burlingame Defendants were at all times aware of the scope and nature of the work being done

24  by Allen Matkins on their behalf, and the cost of the legal services provided, as they were given

25  detailed, itemized monthly billings which included narrative explanations of the work performed and

26  expenses incurred. Moreover, much of the work provided, including its scope, was done at the

27  express direction of the Judsons themselves.

28       14.    Allen Matkins provided extensive legal services requested by the Burlingame

3

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT
INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

1  Defendants over a six and a half year period, from 2002 to 2009. The Burlingame Defendants,

2  however, have failed and refused to fulfill their obligations to pay Allen Matkins for the legal

3  services rendered. The Burlingame Defendants now owe Allen Matkins $1,944,328.10 for legal

4  services provided but not paid for.

5      15.    To induce Allen Matkins to continue working for and delivering legal services, the

6  Burlingame Defendants, by and through the Judsons, repeatedly promised to pay Allen Matkins for

7  its work through various methods, though they did not intend to honor those promises at the time

8  they were made. They promised to pay Allen Matkins through asset sales or refinancing, and/or

9  through the execution of notes and liens. Allen Matkins relied upon those promises and

10  representations and continued to represent the Burlingame Defendants, performing the legal work

11  directed to them until July 2009. The promised payments never materialized.

12      16.    The Judsons misrepresented to Allen Matkins that the Burlingame Defendants had

13  sufficient liquid assets to pay for the legal services they were asking Allen Matkins to provide. The

14  Judsons knew those representations were false when they made them, or alternatively, they made the

15  representations without a reasonable basis for believing them to be true. The Judsons intended that

16  Allen Matkins rely upon their representations that the Burlingame Defendants could and would pay

17  their legal bills, and Allen Matkins relied upon those representations, to its detriment, in continuing

18  to provide legal services for the Burlingame Defendants.

19      17.    The Burlingame Defendants' acts of intentional misrepresentation constituted

20  oppression, fraud or malice.

21      18.    Allen Matkins should be compensated for the value of the legal services it provided

22  defendants, at defendants' request and for defendants' benefit, as a matter of contract law and equity.

23

24

25

26

27

28

4

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT
INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

# V.    CLAIMS

## A.    Breach of Contract

### (Against All Defendants)

19.    Allen Matkins re-alleges and incorporates the allegations in paragraphs 1 to 18, above.

20.    The Burlingame Defendants entered written and oral contracts with Allen Matkins for the provision of legal services. The agreement(s) between the parties provided for the payment of fees by defendants for the professional services of Allen Matkins at hourly rates, and for the payment of costs incurred. The agreement(s) provided that the Burlingame Defendants would pay all Allen Matkins' fees and costs incurred during its work for them.

21.    Allen Matkins has, at all times, performed all of its obligations under the terms of the agreement(s). Allen Matkins provided legal services to defendants in keeping with the terms of the agreement(s), and regularly provided detailed billing statements for all work done.

22.    Once Allen Matkins provided the legal services and billed for them, all conditions required to trigger the Burlingame Defendants' obligations to timely pay for those services were satisfied.

23.    The Burlingame Defendants never tendered performance and have failed and refused, and continue to refuse, to pay all of the legal fees for the professional services performed by Allen Matkins, or costs incurred by Allen Matkins on their behalf.

24.    The Burlingame Defendants' failure and refusal to perform their obligations under the agreements has harmed Allen Matkins and caused Allen Matkins significant monetary damages, in an amount according to proof, but not less than $1,944,328.10.

## B.    Account Stated

### (Against All Defendants)

25.    Allen Matkins re-alleges and incorporates the allegations in paragraphs 1 to 18, above.

26.    The Burlingame Defendants owed Allen Matkins money for the legal services provided. The Burlingame Defendants were provided regular bills and statements reflecting the

5

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

1  work done and the amount owed.

2  27.  The amount stated on the account was reflected in the billings regularly sent by Allen
3  Matkins to the Burlingame Defendants.

4  28.  The Burlingame Defendants, by their words or conduct, agreed to pay the amount
5  stated to Allen Matkins.

6  29.  The Burlingame Defendants have not paid Allen Matkins all of the amounts owed.

7  30.  The Burlingame Defendants owe Allen Matkins the amounts stated in the accounts.

8  ### C.  False Promise

9  ### (Against All Defendants)

10  31.  Allen Matkins re-alleges and incorporates the allegations in paragraphs 1 to 18,
11  above.

12  32.  The Burlingame Defendants, by and through the Judsons, promised Allen Matkins to
13  pay for legal services rendered. Each and every time the Burlingame Defendants sent work to Allen
14  Matkins and requested Allen Matkins to act as their counsel, they invoked and reiterated their
15  promise to pay Allen Matkins for performing that work.

16  33.  To induce Allen Matkins to continue working for and delivering legal services once
17  they fell behind on their bills, the Burlingame Defendants, by and through the Judsons, repeatedly
18  promised that they intended to and would pay Allen Matkins for its work, and bring their accounts
19  current. They reiterated their promise to pay Allen Matkins for its work, explicitly discussing the
20  various methods by which they purportedly intended to pay. They promised to pay Allen Matkins
21  through asset sales or refinancing, and/or through the execution of notes and liens. The Burlingame
22  Defendants did not intend to perform upon their promises when they made them.

23  34.  These promises to pay were material to Allen Matkins' agreement to continue to
24  provide legal services for the Burlingame Defendants.

25  35.  The Burlingame Defendants continued to send work to Allen Matkins and have the
26  firm act as their counsel, while intending not to honor the promises to pay Allen Matkins for its
27  work.

28  36.  The Burlingame Defendants intended that Allen Matkins rely on their promises to pay

6

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT
INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

and continue to act as counsel. The very reason the Burlingame Defendants repeatedly discussed their intention to pay, through various methods, was so that Allen Matkins would rely upon their promises that it would get paid, and continue to act as counsel.

37. Allen Matkins, did, in fact, reasonably rely on the Burlingame Defendants' promises to pay in fulfilling its obligations as counsel. Allen Matkins relied upon their promises and representations and continued to represent the Burlingame Defendants, performing the legal work directed to it into 2009.

38. The Burlingame Defendants have failed and refused to perform their obligations and failed to honor their promises to pay Allen Matkins.

39. The Burlingame Defendants' conduct has harmed Allen Matkins and caused Allen Matkins significant monetary damages, in an amount according to proof, but not less than $1,944,328.10.

### D. Fraudulent Inducement

### (Against Defendants Robert and Janice Judson)

40. Allen Matkins re-alleges and incorporates the allegations in paragraphs 1 to 18, above.

41. Defendants Robert and Janice Judson represented to Allen Matkins that the Burlingame Defendants (1) would pay for the legal services and (2) that Burlingame had sufficient liquid assets to pay for the legal services they asked Allen Matkins to provide.

42. These representations were false, and the Judsons knew these representations were false when they made them, or they made these representations recklessly, without regard for their truth.

43. The Judsons intended that Allen Matkins rely upon their representations and reassurances that the Burlingame Defendants (1) would pay for the legal services and (2) that Burlingame had sufficient liquid assets to pay their legal bills, and made them intending to induce Allen Matkins to agree to continue to provide legal services to the Burlingame Defendants.

44. The Judsons' representations were material to Allen Matkins' agreement to continue to provide legal services for the Burlingame Defendants, and Allen Matkins reasonably relied upon

7

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

1 these representations in continuing to provide legal services for the Burlingame Defendants into

2 2009.

3      45.     Contrary to the Judsons' representations and reassurances, the Burlingame

4 Defendants did not have sufficient liquid assets to pay, and in fact failed to pay, Allen Matkins for

5 the legal services provided.

6      46.     The Judsons' conduct has harmed Allen Matkins and caused Allen Matkins damages

7 in an amount according to proof but not less than $1,944,328.10.

**E.**     **Negligent Misrepresentation**

**(Against Defendants Robert and Janice Judson)**

10      47.     Allen Matkins re-alleges and incorporates the allegations in paragraphs 1 to 18,

11 above.

12      48.     Defendants Robert and Janice Judson represented to Allen Matkins that the

13 Burlingame Defendants (1) would pay for the legal services and (2) that Burlingame had sufficient

14 liquid assets to pay for the legal services they asked Allen Matkins to provide.

15      49.     These representations were not true, and the Judsons had no reasonable basis for

16 believing them to be true when they made them.

17      50.     The Judsons intended that Allen Matkins rely upon their representations and

18 assurances that the Burlingame Defendants had sufficient liquid assets to pay their legal bills, and

19 Allen Matkins reasonably relied upon these representations in continuing to provide legal services to

20 the Burlingame Defendants until July 2009.

21      51.     The Judsons' representations were material to Allen Matkins' agreement to continue

22 to provide legal services for the Burlingame Defendants.

23      52.     Contrary to the Judsons' representations and reassurances, the Burlingame

24 Defendants did not have sufficient liquid assets to pay, and in fact failed to pay, Allen Matkins for

25 the legal services provided.

26      53.     The Judsons' conduct has harmed Allen Matkins and caused Allen Matkins damages

27 in an amount according to proof but not less than $1,944,328.10.

28

8

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT
INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

### F. Quantum Meruit

### (Against All Defendants)

54. Allen Matkins re-alleges and incorporates the allegations in paragraphs 1 to 18, above.

55. The Burlingame Defendants requested, by words or conduct, that Allen Matkins perform legal services for their benefit.

56. The Burlingame Defendants have not paid Allen Matkins for all of the legal services provided them.

57. The reasonable value of the legal services that were provided by Allen Matkins and not paid for by the Burlingame Defendants will be proven at trial, but is not less than $1,944,328.10.

## VI. PRAYER FOR RELIEF

WHEREFORE, Allen Matkins prays for some or all of the following relief, as appropriate:

58. That Allen Matkins be awarded the fees for professional services, and costs, which are due and owing from the Burlingame Defendants under the agreements between the parties;

59. That Allen Matkins be awarded the reasonable value of professional services, and costs, provided the Burlingame Defendants for which the Burlingame Defendants have not paid, to prevent the Burlingame Defendants from being unjustly enriched;

60. That Allen Matkins be awarded pre-judgment interest at the statutory rate, because the sums owed to it by the Burlingame Defendants are liquidated;

61. That Allen Matkins be awarded punitive and exemplary damages; and

62. That Allen Matkins be awarded such other and further relief as the court may deem just and proper.

Dated: November 8, 2010

KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

By: _____

James C. Krieg
Attorneys for Plaintiff
ALLEN MATKINS LECK GAMBLE MALLORY &
NATSIS LLP

9

COMPLAINT FOR BREACH OF CONTRACT; ACCOUNT STATED; FALSE PROMISE; FRAUDULENT INDUCEMENT; NEGLIGENT MISREPRESENTATION; QUANTUM MERUIT

**Allen Matkins Leck Gamble & Mallory** LLP
*attorneys at law*

# Allen Matkins

333 Bush Street 17th Floor   San Francisco California   94104-2806
telephone. 415 837 1515   facsimile. 415 837 1516   www.allenmatkins.com

writer. Lindbergh Porter, Jr.   t. 415 273 7440
file number. B1306-001/SF601553.01   e. lporter@allenmatkins.com

November 12, 2003

Mr. Robert Sick
CEO
SBMC Solutions, LLC
2960 Copper Road
Santa Clara, CA

Mr. Robert D. Judson, Jr.
Burlingame Capital, LLC
3182 Campus Drive, Suite 306
San Mateo, CA 94403

Mr. Mark Gilles
Tangent Fund Management II, L.P.
180 Geary Street
Suite 500
San Francisco, CA 94108

Re:    *In Re: SBMC Solutions, LLC*

Dear Messrs. Sick, Gilles and Judson:

Thank you for retaining us to represent SBMC Solutions, LLC, Tangent Fund Management II, L.P., and Burlingame Capital Partners in connection with potential claims related to the employment and potential employment termination of Ken Treece and Dick Brown and any action regarding the personal guarantees given by Ken Treece and/or Dick Brown to Tangent Fund Management II, L.P., as successor to Treece's and Brown's personal guarantees to Comerica Bank. Our firm's policy, as well as provisions of the California Business & Professions Code in certain circumstances, require that we have a written agreement with our clients setting forth the arrangements upon which we perform legal services. This letter will confirm the terms under which you have retained us for this matter and any additional matters we handle on your behalf or at your direction.

1.    Attorneys' Fees and Costs.

We will bill SBMC Solution, LLC for our services monthly, as SBMC is the employer entity. Our fees will be based on our hourly time charges. The time charges will be for all time actually expended. The hourly rates assigned to attorneys and paralegals vary according to the expertise and level of experience of the person involved. These rates currently range from $95 to $535 per hour. My present billing rate is $395.00 per hour. Robert Moore is also expected to assist with any litigation. His present rate if $415 per hour. We generally review our hourly rates annually and, if appropriate, adjust them effective July 1, to reflect increases in seniority,

San Francisco   Century City   Los Angeles   Orange County   San Diego

**Allen Matkins Leck Gamble & Mallory LLP**
*attorneys at law*

Mr. Robert Sick
Mr. Mark Gilles
Mr. Robert D. Judson, Jr.
November 12, 2003
Page 2

experience and other relevant factors. We generally do not send any notices of such changes in hourly rates.

You understand that it is impossible to determine in advance the amount of fees and costs needed to complete this matter. In addition to charges for legal services, you will also be responsible to reimburse us for costs and expenses incurred, such as filing fees, charges for transcripts, depositions, long distance telephone, computerized legal research, messenger fees, copying costs, word processing expenses and the like. These items are charged at our standard rates in effect at the time the expense is incurred. In certain cases, we will ask you to pay these expenses directly.

Whenever appropriate and consistent with the proper representation of our clients, we use paralegals, investigators, junior attorneys and staff members in order to minimize the impact of the hourly rates of more senior attorneys. We believe the utilization of junior attorneys, paralegals or staff members, in consultation with and under supervision of more experienced attorneys in the firm as appropriate, enables us to maintain economically and efficiently the high quality of our legal representation, while permitting us both to avoid sacrificing the quality of our work for lower fees and to avoid assigning senior attorneys to tasks which can be performed proficiently by junior attorneys, paralegals or staff members.

In certain circumstances, a court may order payment of costs or attorneys' fees by one party to the other. If any such fees or costs are paid to us, they will be credited against the amount you owe us, but you will remain liable for any unpaid portion of our bills. If the court awards fees or costs against you in favor of the opposing party, you will be responsible for payment of that amount separately from and in addition to any amounts due us. In matters resulting in a judgment, settlement or other payments in your favor, we shall have a lien thereon to the extent of any unpaid fees or costs.

Our firm has always operated on the basis that we will deliver the best possible legal services in a timely fashion and at a reasonable price; in return, we request that upon receipt of our statements, you review the statements at that time to determine if you have any questions or comments regarding them. If so, please call us. If not, we expect that you will make payment to us promptly. Furthermore, we reserve and you agree that we have the right to withdraw as your counsel if you fail to pay our statements and other bills in a timely manner.

**Allen Matkins Leck Gamble & Mallory LLP**
*attorneys at law*

Mr. Robert Sick
Mr. Mark Gilles
Mr. Robert D. Judson, Jr.
November 12, 2003
Page 3

The California Business & Professions Code requires us to inform you whether we maintain errors and omissions insurance coverage applicable to the services to be rendered to you. We hereby confirm that the firm does maintain such insurance coverage.

2.      Conflicts of Interest.

We cannot, without appropriate consents, represent any party if there is a conflict of interest with any of our other clients. To avoid conflicts of interest among our clients, we maintain an index of relevant names. In connection with this matter, we have searched our index for the following names:   SBMC Solutions, LLC; Tangent Fund Management II, L.P.; Burlingame Capital Partners; Mark Gilles; Robert Sick; Robert and Janice Judson; Ken Treece; Dick Brown and Bay Bridge Partners, LLC. Please advise us, at or before the time you return the signed copy of this letter, if you know of any other individuals or entities which may be involved in this matter. In addition, please inform us at once if you learn in the future of other persons or entities who may be involved so we can make a conflict of interest search with respect to them.

3.      Joint Representation.

You have requested us to represent you jointly in connection with the above-referenced matter. You each agree to be jointly responsible for our bills.

As you know, we currently represent Burlingame Capital Partners in other matters. For us to represent you jointly, each of you must agree to such joint representation. This is necessary because there is a possibility that a conflict could occur regarding, for example, the most desirable course of action to pursue in the matter, or that circumstances could arise under which the course of action most advantageous to one of you will not be the course of action most advantageous to another.

We agree to represent you with the understanding that should any potential or actual conflict of interest arise, or should a dispute develop among you, immediately or in the future, you will resolve the particular conflict or dispute among yourselves and we shall proceed based upon your joint advice to us as to the resolution thereof. If Burlingame Capital Partners on the one hand and on the other hand any or all the others of you disagree and it is Burlingame Capital Partners' desire that Allen Matkins continue to represent only Burlingame Capital Partners, then we will do so to the extent permitted by rules of professional conduct and the others among you would have to retain other counsel. If such a dispute arises and should we not receive such joint

**Allen Matkins Leck Gamble & Mallory LLP**
*attorneys at law*

Mr. Robert Sick
Mr. Mark Gilles
Mr. Robert D. Judson, Jr.
November 12, 2003
Page 4

advice when we request, or should any such conflict or dispute not be resolved by you, or should we decide that our representation of any of you or your entity should not continue, we shall have the right, nonetheless, to resign from our representation of all of you.

If, in our sole discretion, we determine in the future that a conflict precludes further representation of any of you and that we would not be able to continue our representation of any of you, then each of you would be required to retain your own independent counsel.

You of course have the right to obtain separate counsel to avoid any possible conflict, or to retain independent counsel to monitor and advise you separately with respect to the matter, or any aspect of it.

Under the California Evidence Code, any communications among us in connection with our joint representation of you would not be deemed privileged or confidential in any dispute among you. Moreover, you may not ask us to withhold from your co-clients any information provided to us in connection with our joint representation. This is required by California Evidence Code, section 962, which provides:

"Where two or more clients have retained or consulted a lawyer upon a matter of common interest, none of them, nor the successor in interest of any of them, may claim a privilege under this article as to a communication made in the course of that relationship when such communication is offered in a civil proceeding between one of such clients (or his successor in interest) and another of such clients (or his successor in interest)."

Although confidential communications between you and us will be privileged and protected from disclosure to the opposing parties in this matter and any third parties, Evidence Code, section 962 means that, as among you, no attorney-client privilege exists with respect to any communication between us and any of you relating to the joint representation.

4.    Arbitration.

We appreciate the opportunity to serve as your attorneys and look forward to a harmonious relationship unmarred by disputes between us. In the event you become dissatisfied for any reason with the fees charged or the services we have performed, we would sincerely appreciate your bringing this to our attention immediately; we will do the same if we perceive a problem with the representation. It is our belief that such problems can usually be resolved by good faith discussions between us. Nevertheless, it is always possible that some dispute may

**Allen Matkins Leck Gamble & Mallory LLP**
*attorneys at law*

Mr. Robert Sick
Mr. Mark Gilles
Mr. Robert D. Judson, Jr.
November 12, 2003
Page 5

arise which cannot be resolved by discussion alone. We believe that such disputes can be resolved more expeditiously and with less expense to all concerned by binding arbitration than by court action.

Arbitration is a process by which both parties to a dispute agree to submit the matter to an arbitrator who has expertise in the area and to abide by the arbitrator's decision. In arbitration, there is no right to a trial by jury, and the arbitrator's legal and factual determinations are generally not subject to appeal. Rules of evidence and procedure are generally less formal and rigid than in a court trial. Arbitration usually results in a decision more quickly than proceedings in court, and the attorneys' fees and other costs incurred by both sides are usually less.

By signing this letter, you agree that, in the event of any dispute arising out of or relating to this agreement, our relationship, or the services performed (including but not limited to disputes regarding attorneys' fees or costs and those alleging negligence, breach of fiduciary duty, fraud or any claim based upon a statute), such dispute shall be resolved by submission to binding arbitration in San Francisco County, California, before a retired judge or justice. If we are unable to agree on a retired judge or justice, each party will name one retired judge or justice, and the two named persons will select a neutral judge or justice who will act as the sole arbitrator.

The parties shall be entitled to take discovery in accordance with the provisions of the California Code of Civil Procedure, but either party may request that the arbitrator limit the amount or scope of such discovery, and in determining whether to do so, the arbitrator shall balance the need for the discovery against the parties' mutual desire to resolve disputes expeditiously and inexpensively.

5.     No Guaranties.

During the course of our representation, we will endeavor to keep you fully advised as to the status and progress of this matter, including our view of your rights and potential liabilities or exposure, and our recommendations as to an appropriate course of action in view of the facts, circumstances and issues involved. We will also endeavor to provide you with our best estimate of the future costs and fees you should anticipate incurring through the various stages of this matter.

We will send copies of all substantive pleadings, correspondence and other documents generated in the case, and I ask that you call me at any time should you wish to discuss the case,

**Allen Matkins Leck Gamble & Mallory** LLP
*attorneys at law*

Mr. Robert Sick
Mr. Mark Gilles
Mr. Robert D. Judson, Jr.
November 12, 2003
Page 6

our invoices or bills, or any other aspect of this matter. If for some reason I am unavailable, another attorney in this office will generally be available and familiar with the matter sufficiently to consult with you as desired.

We must emphasize that our firm has not made and cannot make any representations or guarantees regarding the successful outcome of any matter, involving litigation or otherwise, or the actual amount of any fees or costs you will incur. For example, litigation results, costs and expenses are often controlled by external factors beyond our control, including the opposition's approach, changes in the law, witnesses' credibility or behavior, etc.

6.     Termination of Services.

You may terminate our services at any time upon written notice to us. We reserve the right to withdraw our representation in circumstances where a conflict of interest is either not waived, or is not waivable, and in a situation where you become delinquent in payment of Allen Matkins' legal fees and costs as they come due. In any case, where Allen Matkins' billing for legal fees and costs is outstanding for greater than 30 days, Allen Matkins reserves the right, upon ten (10) days written notice, to withdraw from representing you or file a motion with the court of appropriate jurisdiction seeking to be relieved as counsel of record and terminating all legal services to you.

7.     Confirmation of Agreement.

Please confirm your agreement to the terms of this engagement letter by signing the enclosed copy of the letter and returning it to us.

We will endeavor to represent you promptly and efficiently and we hope for a long and mutually satisfactory relationship. We very much appreciate the opportunity of working with you.

Very truly yours,

Lindbergh Porter, Jr.

**Allen Matkins Leck Gamble & Mallory** LLP
*attorneys at law*

Mr. Robert Sick
Mr. Mark Gilles
Mr. Robert D. Judson, Jr.
November 12, 2003
Page 7

Robert R. Moore

LP:jm

Enclosure

APPROVED, ACCEPTED AND AGREED
TO
this _18th_ day of _November_____, 2003.

_Robert A. Sick_

Robert Sick, CEO
SBMC Solutions, LLC


APPROVED, ACCEPTED AND AGREED
TO
this _14th_ day of _November_____, 2003.

_Mark P. Gilles_

Mark Gilles
Tangent Fund Management II, L.P.


APPROVED, ACCEPTED AND AGREED
TO
this ___ day of _____, 2003.

Robert D. Judson, Jr.
Burlingame Capital Partners

# Allen Matkins

Allen Matkins Leck Gamble & Mallory LLP
*attorneys at law*

Three Embarcadero Center 12th Floor   San Francisco California   94111-4074
telephone. 415 837 1515   facsimile. 415 837 1516   www.allenmatkins.com

writer. Robert R. Moore   t. 415 273 7465
file number. B1306-001/SF615290.03   e. rmoore@allenmatkins.com

June 29, 2004

**VIA FACSIMILE AND
FIRST CLASS MAIL**

Mr. Robert D. Judson, Jr.
Burlingame Capital, LLC
3182 Campus Drive, Suite 306
San Mateo, CA 94403

Mr. Mack Clapp
Principal
Burlingame Capital, LLC
3182 Campus Drive, Suite 306
San Mateo, CA 94403

Janice H. Judson
Burlingame Capital, LLC
3182 Campus Drive, Suite 306
San Mateo, CA 94403

      Re:    Further Engagement

Dear Bob, Jan and Mack:

      Thank you so much for your time when you met with Roger Mertz, Stan Rowland and Roberta Romberg at the end of May. They join me in thanking you for expanding the firm's representation of Burlingame Capital Partners II, L.P. and its affiliates ( the "Company" or "you") specifically to include documentation of your loan transactions and related matters (the "Matter"). Our firm's policy, as well as provisions of the California Business & Professions Code in certain circumstances, require that we have a written agreement with our clients setting forth the arrangements upon which we perform legal services. This letter will confirm the terms under which you have retained us for this Matter. The other matters we are handling for you will continue to be handled under the terms of those engagements.

      1.    Attorneys' Fees and Costs.

      We will bill the Company for our services on a loan-by-loan basis on your funding or termination of each loan. As discussed, instead of our normal hourly charges, we will bill you on a flat fee basis of $8,800 per loan. The flat fee is intended to cover the following services and customary administrative expenses in connection with each loan:

      (i) document each loan, including as appropriate an intent letter, loan agreement, promissory note, security agreement, intercreditor agreement, and the like.

Allen Matkins Leck Gamble & Mallory LLP

*attorneys at law*

Mr. Robert D. Judson, Jr.
Janice H. Judson
Mr. Mack Clapp
June 29, 2004
Page 2


(i) document each loan, including as appropriate an intent letter, loan agreement, promissory note, security agreement, intercreditor agreement, and the like.

(ii) up to three (3) hours of negotiating time with applicable borrower's counsel. You will clarify with borrower that any required negotiating time in excess of three hours of time will be for the account of such borrower, and we will inform borrower's counsel when the initial three hours has been expended.

(iii) conduct UCC and other lien searches as appropriate in connection with the loan. As you know, ordering and paying for the UCC searches expresses no opinion on the perfection or priority of any liens reflected in such searches.

We mutually agree that the flat fee will not cover time and charges incurred in securing real estate that may serve as collateral for any loan, nor extraordinary charges such as investigators, but will include other filing fees and customary administrative charges such as long distance telephone charges, messenger fees, copying costs, word processing expenses and the like. As agreed, expenses associated with Burlingame's due diligence, whether performed by Burlingame itself or by the firm on behalf of Burlingame, will be borne by Burlingame. Time and other charges not included in the flat fee will be charged at our regular rates, with time charged for all time actually expended. The hourly rates assigned to attorneys and paralegals vary according to the expertise and level of experience of the person involved. These rates currently range from $95 to $535 per hour. Effective Julty 1, 2004 Roger's billing rate is $ 450 per hour, Stan's is $420 and Roberta's is $355. We generally review our hourly rates annually and, if appropriate, adjust them effective July 1 to reflect increases in seniority, experience and other relevant factors. We will send you a notice of such changes in hourly rates in advance of their effective date.


We will review this arrangement periodically to assure it remains mutually beneficial. Please do not hesitate to let us know if you want to revisit the arrangement, and we will do the same. To help us evaluate the arrangement, we will continue to maintain time records internally, even though we will be charging a flat fee per loan.


Whenever appropriate and consistent with the proper representation of our clients, we use paralegals, junior attorneys and staff members in order to minimize the impact of the hourly rates

**Allen Matkins Leck Gamble & Mallory LLP**
*attorneys at law*

Mr. Robert D. Judson, Jr.
Janice H. Judson
Mr. Mack Clapp
June 29, 2004
Page 3

of more senior attorneys. We believe the utilization of junior attorneys, paralegals or staff members, in consultation with and under supervision of more experienced attorneys in the firm as appropriate, enables us to maintain economically and efficiently the high quality of our legal representation, while permitting us both to avoid sacrificing the quality of our work for lower fees and to avoid assigning senior attorneys to tasks which can be performed proficiently by junior attorneys, paralegals or staff members.

Our firm has always operated on the basis that we will deliver the best possible legal services in a timely fashion and at a reasonable price; in return, we request that upon receipt of our statements, you review the statements at that time to determine if you have any questions or comments regarding them. If so, please call us. If not, we expect that you will make payment to us promptly. Furthermore, we reserve and you agree that we have the right to withdraw as your counsel if you fail to pay our statements and other bills in a timely manner.

The California Business & Professions Code requires us to inform you whether we maintain errors and omissions insurance coverage applicable to the services to be rendered to you. We hereby confirm that the firm does maintain such insurance coverage.

2. Conflicts of Interest.

We cannot, without appropriate consents, represent any party if there is a conflict of interest with any of our other clients. In order to avoid conflicts of interest among our clients, we maintain an index of relevant names. In connection with this matter, we have searched our index for the following names: Burlingame Capital, Inc., Burlingame Capital Partners II, L.P., and the three of you. Please advise us, at or before the time you return the signed copy of this letter, if you know of any other individuals or entities which may be involved in this matter. In addition, please inform us at once if you learn in the future of other persons or entities who may be involved so we can make a conflict of interest search with respect to them.

3. Arbitration.

We appreciate the opportunity to serve as your attorneys and look forward to a harmonious relationship unmarred by disputes between us. In the event you become dissatisfied for any reason with the fees charged or the services we have performed, we would sincerely appreciate your bringing this to our attention immediately; we will do the same if we perceive a problem with the representation. It is our belief that such problems can usually be resolved by good faith discussions between us. Nevertheless, it is always possible that some dispute may

Allen Matkins Leck Gamble & Mallory LLP
*attorneys at law*

Mr. Robert D. Judson, Jr.
Janice H. Judson
Mr. Mack Clapp
June 29, 2004
Page 4

arise which cannot be resolved by discussion alone. We believe that such disputes can be resolved more expeditiously and with less expense to all concerned by binding arbitration than by court action.

Arbitration is a process by which both parties to a dispute agree to submit the matter to an arbitrator who has expertise in the area and to abide by the arbitrator's decision. In arbitration, there is no right to a trial by jury, and the arbitrator's legal and factual determinations are generally not subject to appeal. Rules of evidence and procedure are generally less formal and rigid than in a court trial. Arbitration usually results in a decision more quickly than proceedings in court, and the attorneys' fees and other costs incurred by both sides are usually less.

By signing this letter, you agree that, in the event of any dispute arising out of or relating to this agreement, our relationship, or the services performed (including but not limited to disputes regarding attorneys' fees or costs and those alleging negligence, breach of fiduciary duty, fraud or any claim based upon a statute), such dispute shall be resolved by submission to binding arbitration in San Francisco County, California, before a retired judge or justice. If we are unable to agree on a retired judge or justice, each party will name one retired judge or justice, and the two named persons will select a neutral judge or justice who will act as the sole arbitrator.

The parties shall be entitled to take discovery in accordance with the provisions of the California Code of Civil Procedure, but either party may request that the arbitrator limit the amount or scope of such discovery, and in determining whether to do so, the arbitrator shall balance the need for the discovery against the parties' mutual desire to resolve disputes expeditiously and inexpensively.

4. Confirmation of Agreement.

Please confirm your agreement to the terms of this engagement letter by signing the enclosed copy of the letter and returning it to me in the enclosed self-addressed envelope. An additional copy is enclosed for your records.

Mr. Robert D. Judson, Jr.
Janice H. Judson
Mr. Mack Clapp
June 29, 2004
Page 5


We will endeavor to represent you promptly and efficiently and we hope for a long and mutually satisfactory relationship. We very much appreciate the opportunity of expanding our relationship with you. Thank you so much. It has been and will continue to be a pleasure working with you.


Very truly yours,


Robert R. Moore



APPROVED, ACCEPTED AND AGREED
this _25th_ day of _August_, 2004


Burlingame Capital, LLC

By: _____
        Robert D. Judson, Jr., Principal

RVR

cc:    Roger S. Mertz
        Roberta V. Romberg
        D. Stanley Rowland

EXHIBIT 2   026 of 156

# *EXHIBIT 2*

# *EXHIBIT 2*

EXHIBIT 2   026 of 156

John W. Howard, Esq. SBN 80200
Michelle D. Volk, Esq. SBN 217151
JW HOWARD/ATTORNEYS, LTD.
1508 West Lewis Street
San Diego, California 92103
Telephone: (619) 234-2842
Facsimile: (619) 234-1716

**F I L E D**
Superior Court of California
County of San Francisco

NOV 1 8 2010

CLERK OF THE COURT
BY: _____
Deputy Clerk

Attorneys for Cross Complainants Burlingame Capital Partners II, L.P., and Burlingame Capital, LLC.

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP,

  Plaintiff,

v.

BURLINGAME CAPITAL PARTNERS II, L.P.,
BURLINGAME CAPITAL, LLC, ROBERT
JUDSON, JANICE JUDSON,

  Defendants.

_____

BURLINGAME CAPITAL PARTNERS II, L.P.,
a Delaware Limited Partnership, and
BURLINGAME CAPITAL, LLC, a Delaware
Limited Liability Company,

  Cross Complainants,

v.

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP, a California
Limited Liability Partnership, ROBERT R.
MOORE, an individual, and WILLIAM
HUCKINS, an individual, BRYAN L.
HAWKINS, an individual, MICHAEL J. BETZ,
an individual, MICHAEL S. GREGER, an

Case No. CGC-10-505145

**CROSS-COMPLAINT FOR:**

1. **PROFESSIONAL NEGLIGENCE,**
2. **BREACH OF FIDUCIARY DUTY,**
3. **PROFESSIONAL NEGLIGENCE and**
4. **FRAUD**

1    individual, VINCENT M. COSCINO, an
     individual, ERIN L. MURPHY, an individual,
2    ROBERT R. BARNES, an individual,
     MATTHEW J. ERTMAN, an individual,
3    NICHOLAS A. SUBIAS, an individual,
     MARLENE M. MOFFITT, an individual and
4    ROES 1 through 25, inclusive,

5         Cross Defendants.

6

7         Cross Complainants allege as follows:

8                        **GENERAL ALLEGATIONS**

9

10   1.      Plaintiff Burlingame Capital Partners II, L.P. ("BCP") is a Delaware Limited

11   Partnership, with its principal place of business in San Mateo, California.

12
     2.      Plaintiff Burlingame Capital, LLC, is a Delaware limited liability company with
13

14   its principal place of business in San Mateo, California.

15   3.      Defendant Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins")

16   is, and at all times mentioned herein was, a California Limited Liability Partnership. Allen

17
     Matkins is a law firm with various offices in California.
18

19   4.      Cross Defendants Robert R. Moore, William Huckins, Bryan L. Hawkins,

20   Michael J. Betz, Michael S. Greger, Vincent M. Coscino, Erin L. Murphy, Robert R. Barnes,

21   Matthew J. Ertman, Nicholas A. Subias and Marlene M. Moffitt, are or were attorneys and

22   employees of Defendant Allen Matkins at all times relevant to this action. These individual
23
     Cross Defendants worked in the Los Angeles, San Diego or San Francisco offices of Defendant
24

25   Allen Matkins and provided legal services to Cross Complainants herein.

26   5.      Cross Complainants do not know the true names and capacities, whether

27   corporate, partnership, associate, individual, or otherwise, of Cross Defendants sued herein as

28

                                    2
                           CROSS-COMPLAINT

1    Roes 1 through 25, inclusive, and Cross Complainants therefore sue these Cross Defendants by
2    such fictitious names. Cross Complainants will amend this Complaint to allege their true names
3    and capacities when ascertained. Cross Complainants are informed and believe, and thereon
4    allege, that each of the fictitiously-named Cross Defendants are responsible in some manner for
5
6    the acts herein complained of and that Cross Complainants' damages as herein alleged were
7    proximately caused by such Cross Defendants.

8        6.    Cross Complainants are informed and believes, and thereon alleges, that each
9    defendant, whether actually or fictitiously named herein, was the principal, agent (actual or
10   ostensible), co-conspirator, member, partner, joint venturer, or employee of each other defendant
11
12   and in doing the things alleged in this Complaint was acting within the course and scope of such
13   conspiracy, partnership, employment, or agency.

14
15       7.    On or about December 2002, Cross Complainants retained the firm of Allen
16   Matkins, Defendant herein, to represent them in a business dispute. Over the ensuing years,
17   Allen Matkins, and its various lawyers, employees and agents, provided a variety of legal
     services to Cross Complainants.

18       8.    Over the course of the representation, lasting over seven years, Cross Defendants
19   failed to perform legal services competently, costing Cross Complainants millions of dollars in
20   worthless and unnecessary legal fees and resulting in the Cross Complainants' inability to
21   recover assets owed to them. In addition, Cross Defendants continually performed unnecessary
22   legal services solely for the purpose of generating legal fees. Over the course of Allen Matkins'
23   representation of the Cross Complainants, it and its various officers, partners and associates,
24   grievously over-charged Cross Complainants, charging fees that were unconscionable, as that
25   term is defined in California law and in the California Rules of Professional Conduct, in
26   violation of its ethical duties under said Rules of Professional Conduct and the California
27   Business and Professions Code. It charged in excess of $8,000,000.00 on what began as a
28

                                        3
                                 CROSS-COMPLAINT

1  $2,000,000.00 collection matter. It charged two and three times for the same work. It charged

2  for work never performed. It charged for work that was necessitated only because of the need to

3  correct mistakes Allen Matkins made in its representation of the Cross Complainants. It charged

4  two and three times the amounts charged by other lawyers representing other clients in the

5  various cases Allen Matkins handled for Cross Complainants when the other lawyers'

6  responsibilities, tasks and work levels were far greater than those of Allen Matkins in those

7  cases.

8         9.     Cross Defendant Allen Matkins represented Cross Complainants in a series of

9  cases arising from an attempt to collect on a $2 million loan Cross Complainants made to Qmect,

10  Inc., which was not repaid. During the pendency of the cases related to this matter, it became

11  clear that Qmect, Inc., its officers, shareholders, directors and principals, Fred and Linda

12  Koelling, were committing a variety of dishonest acts: diverting corporate assets;

13  misappropriating corporate assets, hiding corporate assets and converting corporate assets to their

14  personal use and for their personal expenses and lifestyle support. Allen Matkins was fully

15  aware of the many unethical, dishonest and illegal acts committed by the Koellings themselves

16  and through their various corporate entities and in cooperation with other people and entities.

17  Allen Matkins repeatedly brought these unethical and illegal acts to the attention of various

18  courts and, in fact, those unethical and illegal acts were the basis of various claims against the

19  Koellings filed by Allen Matkins on behalf of the Cross Complainants herein in several related

20  proceedings.

21        10.    Qmect, Inc. filed a state court action against the Cross Complainants herein

22  ("Qmect Case") and the individual defendants in the instant case, Robert and Janice Judson. The

23  Cross Complainants herein filed a cross complaint in the Qmect Case alleging breach of fiduciary

24  duty, interference with contractual relations, wrongful inducing of breach of contract, breach of

25  contract and, as a partial basis for same, the fraudulent secretion, transfer and diversion of assets.

26  Among the allegations included in the cross complaint prepared by Allen Matkins, was an

27  allegation that independent cross defendants in the Qmect Case assisted the Koellings and their

28  business entities in watering stock and the diversion and hiding of assets.

1     11.    Representing the Cross Complainants herein, Allen Matkins obtained a default
2  under the second amended cross complaint in favor of BCP against Basem Zakariya, a cross-
3  defendant in the Qmect Case. However, Cross Defendants herein failed to reduce this default to
4  an enforceable judgment against Mr. Zakariya. Ultimately, the case went to trial on the *third*
5  amended complaint and the *third* amended cross complaint. Several cross defendants in the
6  Qmect case who were similarly situation to Mr. Zakariya, settled the matter with Cross
7  Complainants herein by the payment to Cross Complainants of substantial moneys. However,
8  although the court, after trial, entered judgment against Kids Connection, Inc., it denied relief as
9  against Mr. Zakariya on the basis that Allen Matkins had failed to serve Mr. Zakariya with the
10  third amended complaint and he was not properly before the court. Consequently, the case was
11  dismissed as to Mr. Zakariya.

12     12.    BCP never authorized the omission of Zakariya from the action, as he is a man of
13  deep wealth and resources who would have been answerable on the judgment (and capable of
14  paying it), had he been included in the action. In the pleadings Cross Defendants prepared and
15  filed in that case, the Cross Defendants alleged that Mr. Zakariya was liable for the very causes
16  of action that had resulted in substantial settlements and payments in favor of Cross Complainant
17  BCP from two co-cross defendants in said case and in a judgment in excess of $4.8 million in
18  favor of BCP as against Cross Defendant Kids Connection, Inc. in said case.

19     13.    Kids Connection, Inc., however, filed for protection under the bankruptcy laws
20  and never paid the judgment as it was insolvent. As a result of Cross Defendants' negligence
21  with regard to Mr. Zakariya, Cross Complainants were damaged in an amount in excess of $4.8
22  million by reason of the fact that the judgment it would have obtained against Zakariya and did
23  obtain against Kids Connection, Inc. was never collected. The Cross Complainants were further
24  damaged by Cross Defendants' negligence in the Qmect Case because it was forced to expend $2
25  million in legal fees generated by Allen Matkins in its fruitless and unsuccessful efforts to collect
26  its judgment against Kids Connection, Inc. The Cross Complainants were further damaged for
27  an amount in excess of $2 million in lost profits and opportunities because it was deprived of
28  important working capital that would have been available to it had it obtained and collected the

5
CROSS-COMPLAINT

1 judgment. The result, ultimately, was the collapse of Cross Complainants' business, to its further

2 damage.

3     14.    As the result of BCP's judgment against it in the Qmect Case, Kids Connection,

4 Inc. filed for protection in the bankruptcy court. In the bankruptcy case ("KC Bankruptcy Case"),

5 in which Cross Complainants were creditors, Cross Defendants, in spite of Cross Complainants'

6 repeated requests that it do so, failed to obtain the appointment of a receiver or court appointed

7 trustee and, without the Cross Complainants' permission or consent, abandoned the effort to do

8 so. The appointment of a reciver or trustee was necessary to protect the debtor's assets which

9 were owed to Cross Complainants by reasons of its judgment and necessary to protect the

10 creditors in the KC Bankruptcy Case.

11     15.    No reasonable and competent attorney, knowing the history of dishonesty, asset

12 diversion, misappropriation, self-dealing and illegal and unethical practices transacted by the

13 principals of Kids Connection, Inc., would have failed to seek and obtain a receiver or trustee in

14 the KC Bankruptcy Case. This is especially true given the allegations the Cross Defendants

15 moved on in Cross Complainants' behalf, pursued and ultimately proved against Kids

16 Connection, Inc. and its principals in the Qmect case.

17     16.    As a result of the Cross Defendants' failure to obtain a receiver or trustee in the

18 KC Bankruptcy Case, Kids Connection, Inc. and its president successfully suppressed

19 presentation of a bona fide offer from a credible, capable purchaser to purchase the debtor's

20 assets out of the bankruptcy proceeding for a price that would have paid all of Kids Connection's

21 creditors, including the Cross Complainants' $4.8 million judgment against Kids Connection.

22 Had Cross Defendants obtained a receiver or trustee, the bona fide offer would have been

23 presented and the assets purchased and Cross Complainants would have recovered payment of its

24 judgment of $4.8 million dollars. In addition, Cross Complainants would have been spared the

25 expenditure of $1.5 million dollars in excessive legal fees charged by Cross Defendants and an

26 additional $200,000.00 in legal fees generated as a result of the Cross Complaints' other

27 negligent acts in the handling of the KC Bankruptcy Case. As a consequence of these losses,

28 coupled with the excessive legal fees charged by the Cross Defendants, Cross Complainants'

1   businesses suffered enormous economic losses causing their businesses to fail. Cross

2   Complainants suffered other damages, according to proof, as a result of Cross Defendants'

3   failure to secure a receiver or trustee and for the failure to carefully manage Cross Complainants'

4   legal matters.

5        17.     Cross Complainants specifically requested that a trustee or receiver be sought by

6   the Cross Defendants. In fact, the judge presiding over the bankruptcy repeatedly indicated this

7   should be done as it was the proper procedure. Cross Defendants refused to obtain the

8   appointment of a trustee in the KC Bankruptcy Case and through use of its superior knowledge

9   and the trust and confidence Cross Complainants reposed in them, convinced the Cross

10   Complainants that they should not pursue the appointment of a trustee, all to Cross

11   Complainants' detriment and damage, as herein alleged.

12       18.     In an attempt to salvage some benefit from the KC Bankruptcy Case, Cross

13   Complainants agreed to purchase Kids Connection's assets out of the bankruptcy in hopes that

14   sometime in the future those assets might increase in value and yield some profit. To accomplish

15   this purpose, the Cross Complainants were forced to generate additional equity capital in an

16   amount in excess of $6 million. The Cross Defendants negotiated an asset purchase agreement

17   ("APA") through which this transaction was to be accomplished and were charged with the task

18   of protecting the interests of the Cross Complainants in same and correctly advising them with

19   respect to same. However, Cross Defendants failed to include an attorney's fees clause in APA.

20   The absence of an attorney's fees clause incentivized the debtor to extenuate performance under

21   the APA, refuse to perform under the agreement and forced Cross Complainants to expend

22   considerable money enforcing the APA. The APA was enforced through a series of motions and

23   appeals but the cost of doing so was in excess of $150,000.00; money that could have been

24   recovered by Cross Complainants had the Cross Defendants included an attorney's fees clause in

25   the APA.

26       19.     No reasonable or competent attorney would have failed to include an attorney's

27   fees clause in a contract of this nature, especially for parties whose duties were as narrowly

28   circumscribed as those of Cross Complainants herein.

1     20.    Cross Defendants' representation of Cross Complainants ended on or about July

2  13, 2009. Over the course of the representation lasting over seven years, Cross Defendants

3  charged Cross Complainants excessive legal fees which were unfair, unreasonable and/or

4  unconscionable. Cross Defendants failed to keep contemporaneous and accurate time records

5  listing each task performed and the time spent on each. Instead, Cross Defendants lumped

6  numerous unrelated activities together under one entry for which large amounts of time were

7  billed. The time entries are mere approximations rather than true and accurate time entries and

8  charges for same incorrect.

9     21.    Cross Defendants' billing practices were intended to confuse and deceive Cross

10  Complainants so that analysis of the invoices would be difficult, if not impossible. These

11  methods were also employed to wrongfully inflate or "pad" the bills to overcharge Cross

12  Complainants. Cross Complainants allege that they have been overcharged in excess of 2.5

13  million dollars.

14     22.    Cross Defendants' overcharging for their services primarily took five forms. The

15  first is that there were duplicative billings for the same task. For example, numerous lawyers

16  unnecessarily reviewed the same emails and other correspondence which generated large and

17  unjustified billing. The second form of overcharging included overstaffing of Plaintiff's legal

18  matters, meaning that multiple attorneys were unnecessarily assigned to attend meetings and

19  hearings. The third type of overcharging by Cross Defendants included completing tasks that

20  were not necessary or justified. For example, research and "file reviews" were allegedly

21  routinely conducted when none was needed or justified. Fourth, Cross Complainants charged

22  impossible and improbable amounts of time for tasks done, clearly in excess of the actual time

23  necessary to complete the tasks. Lastly, Cross Complainants were charged for work done to

24  make up for mistakes made by Cross Defendants. The fees charged by Cross Defendants were

25  unconscionable because they were out of proportion to the value of the services provided; the

26  legal work provided did not require a superior level of sophistication sufficient to justify

27  excessive fees; the legal work provided was not novel or difficult; the representation did not

28  preclude work for other clients and the results obtained were grievously unsuccessful.

23. In addition, Cross Defendants committed numerous ethical violations which had a negative impact on Cross Complainants' matters which caused them damage. Cross Defendants failed to disclose a conflict of interest by reason of its ongoing relationship with the bankruptcy examiner Cross Defendants had appointed in the KC Bankruptcy Case and took his side in disputes with BCP during the bankruptcy process, recommending that BCP pay fees that were not earned and that BCP had no legal obligation to pay. In addition, Cross Defendants attempted to set Robert Judson up criminal sanction by refusing to speak with the appointed examiner and forcing Judson to do so after the examiner accused Judson of criminal conduct. These activities substantially increased costs to the Cross Complainants and cost them thousands of dollars in further excessive legal fees.

24. Cross Defendants threatened to refrain from attending an important hearing if BCP did not waive its right to contest Cross Defendants' improper and unconscionable fees and/or refused to sign a contractual waiver and promissory note. In presenting the promissory note in Allen Matkins' favor to Cross Complainants, Cross Defendants failed to inform Cross Complainants that they had a right to confer with alternate counsel with respect to same and failed to recommend that Cross Complainants do so, in violation of their fiduciary duties and their ethical obligations under the California Rules of Professional Conduct. Thereafter, Cross Defendants charged Cross Complainants over $8,000 for drafting said four page promissory note; a promissory note solely benefiting Allen Matkins and exquisite in its simplicity. Only after being reminded of its ethical duties did Cross Defendants' lawyers show up at that hearing. In addition to its unethical conduct in the presentation of the promissory note, its charge for same was unconscionable as that term is defined under the California Rules of Professional Conduct.

25. Cross Complainants have paid Defendant Allen Matkins over 6.5 dollars in fees over the course of the representation. In addition, Allen Matkins has billed Cross Complainants approximately $2 million for additional fees allegedly owed; all for work that resulted in no ultimate pecuniary benefit to the Cross Complainants and which utterly failed in its original object.

1

## FIRST CAUSE OF ACTION
(Professional Negligence)

2

3

(Against All Cross Defendants and ROES 1 Through 25)

4

26.    Cross Complainants refer to all matters contained in paragraphs 1 through 24

5

inclusive, of the General Allegations hereinabove and reallege and incorporate by reference each

6

and every allegation set forth therein as though fully set forth at this place.

7

8

27.    Cross Complainants allege that Cross Defendants and each of them, including the

9

ROE Cross Defendants, negligently performed legal services that Cross Complainants hired them

10

to do as alleged hereinabove. As a result of the Cross Defendants' wrongful acts and omissions

11

alleged herein, Cross Defendants breached their ethical duties owed to Cross Complainants,

12

13

including but not limited to the duty to perform legal services competently and charging

14

unconscionable fees.

15

28.    Cross Defendants' acts, omissions and breaches of the ethical duties owed to

16

Cross Complainants, as hereinabove alleged, constitute professional negligence. As a proximate

17

18

and direct result of Cross Defendants' negligence as herein alleged, Cross Complainants were

19

harmed in the manner and to the extent set forth hereinabove.

20

29.    But for the negligence committed by Cross Defendants, and all of them, Cross

21

Complainants would not have suffered the harm and damage alleged herein.

22

30.    As such, Defendant is liable to Cross Complainants in an amount to be proven at

23

24

trial. In addition, Cross Complainants are entitled to reimbursement of the attorney's fees paid to

25

Cross Defendants in the underlying legal matters which precipitated this cross complaint.

26

27

28

///

## SECOND CAUSE OF ACTION

### (Breach of Fiduciary Duty)

#### (Against All Cross Defendants and ROES 1 Through 25)

31.    Cross Complainants refer to all matters contained in paragraphs 1 through 24 inclusive, of the General Allegations hereinabove and reallege and incorporate by reference each and every allegation set forth therein as though fully set forth at this place.

32.    As the attorneys for Cross Complainants, Cross Defendants owed Cross Complainants a number of fiduciary duties, including but not limited to, the duty to perform legal services competently, the duty of loyalty, the duty to avoid conflicts of interest, the duty to act in the client's best interests and the duty to charge fair, reasonable and conscionable fees.

33.    Cross Defendants repeatedly breached their fiduciary duties to Cross Complainants by failing to perform legal services competently, by engaging in conflicts of interest, in failing to advise Cross Complainants of their right to alternate counsel in dealings with the Cross Defendants, by taking positions contrary to Cross Complainants' best interests and by charging unfair, unreasonable and unconscionable fees as hereinabove alleged. In addition, the Cross Defendants breached their fiduciary duties by the various unethical acts they performed in their relationship with the Cross Complainants, as hereinabove alleged, in violation of the California Rules of Professional Conduct and the Business and Professions Code.

34.    As a result of Cross Defendants' breach of their fiduciary duties and unethical conduct, Cross Complainants have been damaged in an amount to be proven at the time of trial. In addition to the damages suffered by Cross Complainants as herein alleged, Cross Complainants are entitled to a disgorgement of all fees paid to Cross Defendants heretofore which is an amount in excess of $6.5 million, as well as credit for any and all fees found to be unconscionable and/or improperly charged. Defendant is liable to Cross Complainants in an amount to be proven at trial. In addition, Cross Complainants are entitled to reimbursement of the attorney's fees paid to Cross Defendants in the underlying legal matters which precipitated this cross complaint.

1    35.    In doing the acts herein complained of, said Cross Defendants acted with fraud,

2    oppression and malice and with a willful and malignant intention to do harm and injury to the

3    Cross Complainants by reason of which Cross Complainants are entitled to punitive and

4    exemplary damages according to proof.

5                            **THIRD CAUSE OF ACTION**
                              (Professional Negligence)
6

7                      (Against All Cross Defendants and ROES 1 Through 25)

8    36.    Cross Complainants refer to all matters contained in paragraphs 1 through 24

9    inclusive, of the General Allegations hereinabove and reallege and incorporate by reference each

10   and every allegation set forth therein as though fully set forth at this place.

11

12   37.    Among the tasks performed by the Cross Defendants on behalf of the Cross

13   Complainants herein were various corporate and business regulatory compliance duties. Cross

14   Complainants depended upon Cross Defendants to perform all tasks necessary to protect Cross

15   Complainants from claims of alter ego liability and Cross Defendants represented that they

16   performed said tasks competently to the extent that individual officers, shareholders and directors

17

18   were protected by the inviolate protection of the various business forms through which Cross

19   Complainants conducted business.

20   38.    Cross Defendants have alleged herein that the corporate and business form

21   through which Cross Complainants transacted their business activities should be set aside and

22

23   ignored because the formalities attendant thereto have not been performed. If Cross Defendants'

24   allegations are true, Cross Defendants have so negligently performed the duties for which they

25   were paid, and paid handsomely, by the Cross Complainants herein, that they have exposed

26   Cross Complainants and their investors, officers, directors and members to liability on the basis

27

28   of alter ego liability.

1    39.    But for the negligent and wrongful acts of Cross Defendants, Cross Complainants
2    would not be subject to any such liability or threat of liability.

3    40.    As a proximate and direct result of Cross Defendants' negligence as herein
4    alleged, Cross Complainants were harmed in the manner and to the extent set forth hereinabove
5    and in that the money they expended in legal fees paid to the Cross Defendants herein to avoid
6    any alter ego liability and by reason of any liability found in any individual through alter ego
7    liability.
8

9    41.    As such, Defendant is liable to Cross Complainants in an amount to be proven at
10   trial. In addition, Cross Complainants are entitled to reimbursement of the attorney's fees paid to
11   Cross Defendants in the underlying legal matters which precipitated this cross complaint.
12

13                          **FOURTH CAUSE OF ACTION**

14                                   (Fraud)

15       (Against Cross Defendants Allen Matkins, Robert Moore and ROES 15 Through 25)

16   42.    Cross Complainants refer to all matters contained in paragraphs 1 through 22
17   inclusive, of the General Allegations hereinabove and reallege and incorporate by reference each
18   and every allegation set forth therein as though fully set forth at this place.

19   43.    Beginning in 2007, Cross Complainants began to express concerns to Cross
20   Defendants Allen Matkins and Robert Moore and Roes 15 through 25 over the extent of Cross
21   Defendants' bills and to complain about the billing practices of the Cross Defendants herein. On
22   or about July 1, 2007 and repeatedly thereafter through April, 2009, Cross Defendants Robert
23   Moore and Allen Matkins and Roes 15 through 25 acknowledged that the billings were "out of
24   line", inappropriate and unconscionable and falsely and fraudulently represented that if the Cross
25   Complainants would continue employing Moore's services and those of Allen Matkins and its
26   partners and associates, Moore and Allen Matkins and Roes 15 through 25 had the power to and
27   would ensure that the final bill would be adjusted downward to reflect the true value of the
28

1 | services rendered. Said Cross Defendants repeatedly represented that the billing practices of the

2 | "Brobeck lawyers", by which, they said, they meant those partners and associates employed by

3 | Allen Matkins who had previously worked for the law firm of Brobeck Phleger and Harrison,

4 | were out of character with the billing practices of Allen Matkins and inappropriate.

5 |     44.    The representations made by Moore and Allen Matkins and Roes 15 through 25

6 | were false and were known by Moore and Allen Matkins and Roes 15 through 25 to be false at

7 | the time they made them. The true facts were that Moore and Allen Matkins and Roes 15

8 | through 25 had neither the power nor the intention of adjusting the billings downward at the

9 | conclusion of the representation and the representations were made solely for the purpose of

10 | inducing the Cross Complainants to refrain from ending the Cross Defendants' representation of

11 | them and moving on to other legal counsel for their legal matters.

12 |     45.    The Cross Complainants were ignorant of the falsity of the representations made

13 | by Moore and Allen Matkins and Roes 15 through 25 as hereinabove alleged and believed them

14 | to be true. The Cross Complainants relied on the false representations made by Moore and Allen

15 | Matkins and Roes 15 through 25 because the principal individuals who managed Cross

16 | Complainants' businesses regarded Moore as a friend and believed he had their best interests and

17 | those of the entities for which they worked at heart and would protect them from harm.

18 |     46.    As a result of Cross Complainants' reliance on the false and fraudulent

19 | representations made by Cross Defendants Moore, Allen Matkins and Roes 15 through 25,

20 | inclusive, Cross Complainants allowed the Cross Defendants to continue providing legal

21 | services; took no steps to find alternate counsel; continued paying unconscionable and

22 | outrageous bills and allowed the matters of representation to continue, at great expense and

23 | without success.

24 |     47.    As a direct and proximate result of the Cross Complainants' reliance on the false

25 | representations made by Cross Defendants Moore, Allen Matkins and Roes 15 through 25,

26 | inclusive, Cross Complainants were harmed and injured to an extent that has not, as yet, been

27 | fully ascertained. Cross Complainants will seek leave of court to amend this Cross Complaint to

1   allege the extent of said damages when same have been fully ascertained. Notwithstanding the

2   foregoing, however, Cross Complainants allege that among the damages they have suffered has

3   been exposure to claims by the Cross Defendants herein for legal fees and for legal fees actually

4   paid in excess of $3.5 million for unnecessary and incompetently and negligently performed legal

5   work.

6       48.    In doing the acts herein complained of the Cross Defendants acted with fraud,

7   oppression and malice and a willful and malignant intention to do harm and injury to the Cross

8   Complainants by reason of which Cross Complainants are entitled to an award of punitive and

9   exemplary damages in accordance with proof offered at trial.

10   WHEREFORE, Cross Complainants pray judgment as follows:

11

12   <u>ON THE FIRST CAUSE OF ACTION</u>

13       1.    For general damages according to proof;

14       2.    For compensatory damages according to proof;

15       3.    For attorney's fees incurred in the underlying legal matters;

16

17   <u>ON THE SECOND CAUSE OF ACTION</u>

18       1.    For general damages according to proof;

19       2.    For compensatory damages according to proof;

20       3.    For punitive damages according to proof;

21   <u>ON THE THIRD CAUSE OF ACTION</u>

22

23       1.    For general damages according to proof;

24       2.    For compensatory damages according to proof;

25   <u>ON THE FOURTH CAUSE OF ACTION</u>

26       1.    For general damages according to proof;

27

28       2.    For compensatory damages according to proof;

3.    For punitive damages according to proof;

ON ALL CAUSES OF ACTION

1.    For the costs of suit herein incurred; and

2.    For such other and further relief as the court may deem just and proper.

Dated: Nov. 3, 2010                          JW HOWARD/ATTORNEYS, LTD.

By: _____
                                             John W. Howard
                                             Attorney for Cross Complainants

16
CROSS-COMPLAINT

EXHIBIT 3   043 of 156

# EXHIBIT 3

# EXHIBIT 3

EXHIBIT 3   043 of 156

1  John W. Howard, Esq. SBN 80200
   Michelle D. Volk, Esq. SBN 217151
2  JW HOWARD/ATTORNEYS, LTD.
   1508 West Lewis Street
3  San Diego, California 92103
   Telephone: (619) 234-2842
4  Facsimile: (619) 234-1716

5  Attorneys for Cross Complainant Burlingame Capital Partners II, L.P.

6

**F I L E D**
San Francisco County Superior Court

APR 22 2011

CLERK OF THE COURT
BY: _____
Deputy Clerk

7              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

8                      COUNTY OF SAN FRANCISCO

9

| | |
|---|---|
| 10  ALLEN MATKINS LECK GAMBLE | Case No. CGC-10-505145 |
| 11  MALLORY & NATSIS LLP, | |
| 12      Plaintiff, | **FIRST AMENDED**<br>**CROSS-COMPLAINT FOR:** |
| 13  v. | |
| 14  BURLINGAME CAPITAL PARTNERS II, L.P., | 1. **PROFESSIONAL NEGLIGENCE,**<br>2. **BREACH OF FIDUCIARY DUTY,** |
| 15  BURLINGAME CAPITAL, LLC, ROBERT<br>JUDSON, JANICE JUDSON, | 3. **PROFESSIONAL NEGLIGENCE**<br>4. **FRAUD and** |
| 16      Defendants. | 5. **FALSE PROMISE** |
| 17 | |
| 18  BURLINGAME CAPITAL PARTNERS II, L.P.,<br>a Delaware Limited Partnership, | |
| 19 | |
| 20      Cross Complainant,<br>v. | |
| 21 | |
| 22  ALLEN MATKINS LECK GAMBLE<br>MALLORY & NATSIS LLP, a California | |
| 23  Limited Liability Partnership, ROBERT R.<br>MOORE, an individual, and WILLIAM | |
| 24  HUCKINS, an individual, MICHAEL J. BETZ,<br>an individual, MICHAEL S. GREGER, an | |
| 25  individual, VINCENT M. COSCINO, an<br>individual, ROBERT R. BARNES, an individual, | |
| 26  MATTHEW J. ERTMAN, an individual, an<br>individual and ROES 1 through 25, inclusive, | |
| 27 | |
| 28      Cross Defendants. | |

1

FIRST AMENDED CROSS-COMPLAINT

Cross Complainant alleges as follows:

## **GENERAL ALLEGATIONS**

1.  Plaintiff Burlingame Capital Partners II, L.P. ("BCP") is a Delaware Limited Partnership, with its principal place of business in San Mateo, California.

2.  Burlingame Capital, LLC, a Delaware limited liability company with its principal place of business in San Mateo, California, is the general partner of BCP.

3.  Defendant Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") is, and at all times mentioned herein was, a California Limited Liability Partnership. Allen Matkins is a law firm with various offices in California.

4.  Cross Defendants Robert R. Moore, William Huckins, Michael J. Betz, Michael S. Greger, Vincent M. Coscino, Robert R. Barnes, and Matthew J. Ertman are or were attorneys and employees of Defendant Allen Matkins at all times relevant to this action. These individual Cross Defendants worked in the Los Angeles, San Diego or San Francisco offices of Defendant Allen Matkins and provided legal services to Cross Complainant herein.

5.  Cross Complainant does not know the true names and capacities, whether corporate, partnership, associate, individual, or otherwise, of Cross Defendants sued herein as Roes 1 through 25, inclusive, and Cross Complainant therefore sues these Cross Defendants by such fictitious names. Cross Complainant will amend this Complaint to allege their true names and capacities when ascertained. Cross Complainant is informed and believe, and thereon allege, that each of the fictitiously-named Cross Defendants are responsible in some manner for the acts herein complained of and that Cross Complainant's damages as herein alleged were proximately caused by such Cross Defendants.

6. Cross Complainant is informed and believes, and thereon alleges, that each defendant, whether actually or fictitiously named herein, was the principal, agent (actual or ostensible), co-conspirator, member, partner, joint venturer, or employee of each other defendant and in doing the things alleged in this Complaint was acting within the course and scope of such conspiracy, partnership, employment, or agency.

7. On or about December 2002, Cross Complainant retained the firm of Allen Matkins, Defendant herein, to represent them in a business dispute. Over the ensuing years, Allen Matkins, and its various lawyers, employees and agents, provided a variety of legal services to Cross Complainant.

8. Over the course of the representation, lasting over seven years, Cross Defendants failed to perform legal services competently, costing Cross Complainant millions of dollars in worthless and unnecessary legal fees and resulting in the Cross Complainant's inability to recover assets owed to them. In addition, Cross Defendants continually performed unnecessary legal services solely for the purpose of generating legal fees. Over the course of Allen Matkins' representation of the Cross Complainant, it and its various officers, partners and associates, grievously over-charged Cross Complainant, charging fees that were unconscionable, as that term is defined in California law and in the California Rules of Professional Conduct, in violation of its ethical duties under said Rules of Professional Conduct and the California Business and Professions Code. It charged in excess of $8,000,000.00 on what began as a $2,000,000.00 collection matter. It charged two and three times for the same work. It charged for work never performed. It charged for work that was necessitated only because of the need to correct mistakes Allen Matkins made in its representation of the Cross Complainant. A particularly egregious example of this is charges of over $100,000.00 for work related to Basem Zakariya that

was necessitated by Allen Matkins' having failed to properly serve Mr. Zakariya with a third amended complaint, including extensive, unsuccessful motion practice and charges for travel and appearances for discovery activities related to him. It charged two and three times the amounts charged by other lawyers representing other clients in the various cases Allen Matkins handled for Cross Complainant when the other lawyers' responsibilities, tasks and work levels were far greater than those of Allen Matkins in those cases.

9.     Cross Defendant Allen Matkins represented Cross Complainant in a series of cases arising from an attempt to collect on a $2 million loan Cross Complainant made to Qmect, Inc., which was not repaid. During the pendency of the cases related to this matter, it became clear that Qmect, Inc., its officers, shareholders, directors and principals, Fred and Linda Koelling, were committing a variety of dishonest acts: diverting corporate assets; misappropriating corporate assets, hiding corporate assets and converting corporate assets to their personal use and for their personal expenses and lifestyle support. Allen Matkins was fully aware of the many unethical, dishonest and illegal acts committed by the Koellings themselves and through their various corporate entities and in cooperation with other people and entities. Allen Matkins repeatedly brought these unethical and illegal acts to the attention of various courts and, in fact, those unethical and illegal acts were the basis of various claims against the Koellings filed by Allen Matkins on behalf of the Cross Complainant herein in several related proceedings.

10.     Qmect, Inc. filed a state court action against the Cross Complainant herein ("Qmect Case") and the individual defendants in the instant case, Robert and Janice Judson. The Cross Complainant herein filed a cross complaint in the Qmect Case alleging breach of fiduciary duty, interference with contractual relations, wrongful inducing of breach of contract, breach of contract and, as a partial basis for same, the fraudulent secretion, transfer and diversion of assets.

4
FIRST AMENDED CROSS-COMPLAINT

1   Among the allegations included in the cross complaint prepared by Allen Matkins, was an
2   allegation that independent cross defendants in the Qmect Case assisted the Koellings and their
3   business entities in watering stock and the diversion and hiding of assets.

4        11.    Representing the Cross Complainant herein, Allen Matkins obtained a default
5   under the second amended cross complaint in favor of BCP against Basem Zakariya, a cross-
6   defendant in the Qmect Case. However, Cross Defendants herein failed to reduce this default to
7   an enforceable judgment against Mr. Zakariya. Ultimately, the case went to trial on the *third*
8   amended complaint and the *third* amended cross complaint. Several cross defendants in the
9   Qmect case who were similarly situation to Mr. Zakariya, settled the matter with Cross
10  Complainant herein by the payment to Cross Complainant of substantial moneys. However,
11  although the court, after trial, entered judgment against Kids Connection, Inc., it denied relief as
12  against Mr. Zakariya on the basis that Allen Matkins had failed to serve Mr. Zakariya with the
13  third amended complaint and he was not properly before the court. Consequently, the case was
14  dismissed as to Mr. Zakariya and no judgment was entered as against him.

15       12.    BCP never authorized the omission of Zakariya from the action, as he is a man of
16  deep wealth and resources who would have been answerable on the judgment (and capable of
17  paying it), had he been included in the action. In the pleadings Cross Defendants prepared and
18  filed in that case, the Cross Defendants alleged that Mr. Zakariya was liable for the very causes
19  of action that had resulted in substantial settlements and payments in favor of Cross Complainant
20  BCP from two co-cross defendants in said case and in a judgment in excess of $5.6 million in
21  favor of BCP as against Cross Defendant Kids Connection, Inc. in said case.

22       13.    Kids Connection, Inc., however, filed for protection under the bankruptcy laws
23  and never paid the judgment as it was insolvent. As a result of Cross Defendants' negligence
24  with regard to Mr. Zakariya, Cross Complainant was damaged in an amount in excess of $5.7
25  million by reason of the fact that the judgment it would have obtained against Zakariya and did
26  obtain against Kids Connection, Inc. was never collected. The Cross Complainant was further
27  damaged by Cross Defendants' negligence in the Qmect Case because it was forced to expend $2
28  million in legal fees generated by Allen Matkins in its fruitless and unsuccessful efforts to collect

its judgment against Kids Connection, Inc. The Cross Complainant was further damaged for an amount in excess of $2 million in lost profits and opportunities because it was deprived of important working capital that would have been available to it had it obtained and collected the judgment. The result, ultimately, was the collapse of Cross Complainant' business, to its further damage.

14.   As the result of BCP's judgment against it in the Qmect Case, Kids Connection, Inc. filed for protection in the bankruptcy court. In the bankruptcy case ("KC Bankruptcy Case"), in which Cross Complainant was a creditor, Cross Defendants, in spite of Cross Complainant's repeated direction that it do so, failed to seek or obtain the appointment of a receiver or court appointed trustee on a timely basis at the commencement of the case, in spite of the bankruptcy court's having invited such a motion. Attached hereto as Exhibit "A" is a true copy of a portion of the transcript of a hearing on January 28, 2008, pages 26 through 31, at which the bankruptcy court invited such a motion. Four months later, after it was too late to be effective to protect BCP's interests, Allen Matkins brought such a motion, only to abandon the effort without the Cross Complainants' permission or consent, and agreed to the appointment of an examiner with significantly lesser powers to protect BCP's interests. Allen Matkins' four month delay in bringing the motion, during which a bona fide offer was made to purchase the assets of the debtor, the acceptance of which would have made Cross Complainant whole and paid its judgment, constituted professional negligence because the debtor in possession was enabled by Allen Matkins' delay in executing BCP's instructions to successfully conceal the bona fide offer until it expired. The appointment of a receiver or trustee was necessary to protect the debtor's assets, provide management and oversight of the activities of the debtor so such offers would have been discovered and disclosed so as to protect Cross Complainant's claims by reasons of its judgment and necessary to protect the creditors in the KC Bankruptcy Case.

15.   No reasonable and competent attorney, knowing the history of dishonesty, asset diversion, misappropriation, self-dealing and illegal and unethical practices transacted by the principals of Kids Connection, Inc., would have failed to timely seek and obtain a receiver or trustee in the KC Bankruptcy Case, especially in the face of his/her client's repeated direction

1  that he/she do so. This is especially true given the allegations the Cross Defendants moved on in
2  Cross Complainant's behalf, pursued and ultimately proved against Kids Connection, Inc. and its
3  principals in the Qmect case.

4       16.    As a result of the Cross Defendants' failure to timely and immediately seek and
5  obtain a receiver or trustee in the KC Bankruptcy Case, as specifically instructed by BCP, and its
6  negligent delay in making a motion to do so, Kids Connection, Inc. and its president successfully
7  suppressed presentation of a bona fide offer from a credible, capable purchaser to purchase the
8  debtor's assets out of the bankruptcy proceeding for a price that would have paid all of Kids
9  Connection's creditors, including the Cross Complainant's $5.7 million judgment against Kids
10 Connection. Had Cross Defendants obtained a receiver or trustee, the bona fide offer would have
11 been presented and the assets purchased and Cross Complainant would have recovered payment
12 of its judgment of $5.7 million dollars. In addition, Cross Complainant would have been spared
13 the expenditure of $1.5 million dollars in excessive legal fees charged by Cross Defendants and
14 an additional $200,000.00 in legal fees generated as a result of the Cross Complaints' other
15 negligent acts in the handling of the KC Bankruptcy Case. Cross Complainant suffered other
16 damages, according to proof, as a result of Cross Defendants' failure to timely seek and secure a
17 receiver or trustee and for the failure to carefully manage Cross Complainant's legal matters.

18      17.    Cross Complainant specifically requested that a trustee or receiver be sought by
19 the Cross Defendants. In fact, the judge presiding over the bankruptcy repeatedly indicated this
20 should be done as it was the proper procedure. Cross Defendants refused to immediately and
21 timely seek and obtain the appointment of a trustee in the KC Bankruptcy Case when directed to
22 do so by its client, Cross Complainant BCP, all to Cross Complainant's detriment and damage,
23 as herein alleged.

24      18.    In an attempt to salvage some benefit from the KC Bankruptcy Case, Cross
25 Complainant agreed to purchase Kids Connection's assets out of the bankruptcy in hopes that
26 sometime in the future those assets might increase in value and yield some profit. To accomplish
27 this purpose, the Cross Complainant was forced to generate additional equity capital in an
28 amount in excess of $6 million. The bankruptcy court found that the $6 million purchase price

1    was the fair value of the assets purchased. No credit toward the purchase price was given for

2    BCP's $5.7 million claim in the bankruptcy court which, to this date, remains a viable, active and

3    unpaid claim in the Kids Connection bankruptcy case. Attached hereto as Exhibit "B" is a copy

4    the Claims Register as of March 7, 2011 which clearly reflects that BCP's claim exists and

5    remains unpaid. (see pages 19 and 26 thereof.) The Cross Defendants negotiated an asset

6    purchase agreement ("APA") through which this transaction was to be accomplished and were

7    charged with the task of protecting the interests of the Cross Complainant in same and correctly

8    advising them with respect to same. However, Cross Defendants failed to include an attorney's

9    fees clause in APA. The absence of an attorney's fees clause incentivized the debtor to extenuate

10   performance under the APA, refuse to perform under the agreement and forced Cross

11   Complainant to expend considerable money enforcing the APA. The APA was enforced through

12   a series of motions and appeals but the cost of doing so was in excess of $150,000.00; money

13   that could have been recovered by Cross Complainant had the Cross Defendants included an

14   attorney's fees clause in the APA.

15       19.    No reasonable or competent attorney would have failed to include an attorney's

16   fees clause in a contract of this nature, especially for parties whose duties were as narrowly

17   circumscribed as those of Cross Complainant herein.

18       20.    Cross Defendants' representation of Cross Complainant ended on or about July

19   13, 2009. Over the course of the representation lasting over seven years, Cross Defendants

20   charged Cross Complainant excessive legal fees which were unfair, unreasonable and/or

21   unconscionable. Cross Defendants failed to keep contemporaneous and accurate time records

22   listing each task performed and the time spent on each. Instead, Cross Defendants lumped

23   numerous unrelated activities together under one entry for which large amounts of time were

24   billed. A true and correct example of said wrongful billing practices is attached hereto as

25   Exhibit "C". The time entries are mere approximations rather than true and accurate time entries

26   and charges for same incorrect.

27       21.    Cross Defendants' billing practices were intended to confuse and deceive Cross

28   Complainant so that analysis of the invoices would be difficult, if not impossible. These

1   methods were also employed to wrongfully inflate or "pad" the bills to overcharge Cross
2   Complainant. Cross Complainant allege that they have been overcharged in excess of 2.5 million
3   dollars.

4       22.    Cross Defendants' overcharging for their services primarily took five forms. The
5   first is that there were duplicative billings for the same task. For example, numerous lawyers
6   unnecessarily reviewed the same emails and other correspondence which generated large and
7   unjustified billing. Attached hereto as Exhibit "D" is an example of such wrongful charges. The
8   second form of overcharging included overstaffing of Plaintiff's legal matters, meaning that
9   multiple attorneys were unnecessarily assigned to attend meetings and hearings. The third type
10  of overcharging by Cross Defendants included completing tasks that were not necessary or
11  justified. For example, research and "file reviews" were allegedly routinely conducted when
12  none was needed or justified. Fourth, Cross Complainant charged impossible and improbable
13  amounts of time for tasks done, clearly in excess of the actual time necessary to complete the
14  tasks. Lastly, Cross Complainant was charged for work done to make up for mistakes made by
15  Cross Defendants. For example, Allen Matkins charged BCP tens of thousands of dollars for
16  motions in an unsuccessful attempt to overcome its error and malpractice in having failed to
17  serve Basem Zakariya with the Third Amended Cross Complaint that was the operative
18  complaint in a state court case in which he was a party the consequence of which was he was
19  excluded from the judgment entered against joint and several co-cross-defendants. The fees
20  charged by Cross Defendants were unconscionable because they were out of proportion to the
21  value of the services provided; the legal work provided did not require a superior level of
22  sophistication sufficient to justify excessive fees; the legal work provided was not novel or
23  difficult; the representation did not preclude work for other clients and the results obtained were
24  grievously unsuccessful.

25      23.    In addition, Cross Defendants committed numerous ethical violations which had a
26  negative impact on Cross Complainant's matters which caused them damage. Cross Defendants
27  failed to disclose a conflict of interest by reason of its ongoing relationship with the bankruptcy
28  examiner Cross Defendants had appointed in the KC Bankruptcy Case and took his side in

1   disputes with BCP during the bankruptcy process, recommending that BCP pay fees that were
2   not earned and that BCP had no legal obligation to pay. In addition, Cross Defendants attempted
3   to set Robert Judson up for criminal sanction by refusing to speak with the appointed examiner
4   and forcing Judson to do so after the examiner accused Judson of criminal conduct. These
5   activities substantially increased costs to the Cross Complainant and cost them thousands of
6   dollars in further excessive legal fees.

7       24.    Cross Defendants threatened to refrain from attending an important hearing if
8   BCP did not waive its right to contest Cross Defendants' improper and unconscionable fees
9   and/or refused to sign a contractual waiver and promissory note. In presenting the promissory
10   note in Allen Matkins' favor to Cross Complainant, Cross Defendants failed to inform Cross
11   Complainant that it had a right to confer with alternate counsel with respect to same and failed to
12   recommend that Cross Complainant do so, in violation of its fiduciary duties and their ethical
13   obligations under the California Rules of Professional Conduct. Thereafter, Cross Defendants
14   charged Cross Complainant over $8,000 for drafting said four page promissory note; a
15   promissory note solely benefiting Allen Matkins and exquisite in its simplicity. Only after being
16   reminded of its ethical duties did Cross Defendants' lawyers show up at that hearing. In addition
17   to its unethical conduct in the presentation of the promissory note, its charge for same was
18   unconscionable as that term is defined under the California Rules of Professional Conduct.

19       25.    Cross Complainant has paid Cross Defendant Allen Matkins over $6.5 million
20   dollars in fees over the course of the representation. In addition, Allen Matkins has billed Cross
21   Complainant approximately $2 million for additional fees allegedly owed; all for work that
22   resulted in no ultimate pecuniary benefit to the Cross Complainant and which utterly failed in its
23   original object.

24

25   ///

26   ///

27

28

## FIRST CAUSE OF ACTION
(Professional Negligence)

(Against All Cross Defendants and ROES 1 Through 25)

26.    Cross Complainant refers to all matters contained in paragraphs 1 through 24 inclusive, of the General Allegations hereinabove and realleges and incorporates by reference each and every allegation set forth therein as though fully set forth at this place.

27.    Cross Complainant alleges that Cross Defendants and each of them, including the ROE Cross Defendants, negligently performed legal services that Cross Complainant hired them to do as alleged hereinabove. As a result of the Cross Defendants' wrongful acts and omissions alleged herein, Cross Defendants breached their ethical duties owed to Cross Complainant, including but not limited to the duty to perform legal services competently and charging unconscionable fees.

28.    Cross Defendants' acts, omissions and breaches of the ethical duties owed to Cross Complainant, as hereinabove alleged, constitute professional negligence. As a proximate and direct result of Cross Defendants' negligence as herein alleged, Cross Complainant was harmed in the manner and to the extent set forth hereinabove. With respect to the negligent acts related to Allen Matkins' failure to serve Basem Zakariya and BCP's consequent inability to include him in the judgment entered in the case in which he was named as a party, the claim for same did not ripen and become perfected until July 9 2009 as the damage for said acts and omissions was suffered on that date when substantially all of the assets of bankrupt debtor Kids Connection were sold and no longer available to creditors.   At no time during its representation of BCP did Allen Matkins advise BCP that it should consult alternate counsel with respect to its acts and omissions with regard to Zakariya, in violation of their fiduciary duties and their ethical obligations under the California Rules of Professional Conduct. In addition, Allen Matkins

continued representing BCP until July 2009 with respect to the collection of the judgment issued in the case in which Zakariya was named as a party, thereby tolling the statute of limitations in accordance with C.C.P. Section 340.6.

29.     But for the negligence committed by Cross Defendants, and all of them, Cross Complainant would not have suffered the harm and damage alleged herein.

30.     As such, Cross Defendants are liable to Cross Complainant in an amount to be proven at trial. In addition, Cross Complainant is entitled to reimbursement of the attorney's fees paid to Cross Defendants in the underlying legal matters which precipitated this cross complaint.

## SECOND CAUSE OF ACTION

(Breach of Fiduciary Duty)

(Against All Cross Defendants and ROES 1 Through 25)

31.     Cross Complainant refers to all matters contained in paragraphs 1 through 24 inclusive, of the General Allegations hereinabove and realleges and incorporates by reference each and every allegation set forth therein as though fully set forth at this place.

32.     As the attorneys for Cross Complainant, Cross Defendants owed Cross Complainant a number of fiduciary duties, including but not limited to, the duty to perform legal services competently, the duty of loyalty, the duty to avoid conflicts of interest, the duty to act in the client's best interests and the duty to charge fair, reasonable and conscionable fees.

33.     Cross Defendants repeatedly breached their fiduciary duties to Cross Complainant by failing to perform legal services competently, by engaging in conflicts of interest, in failing to advise Cross Complainant of its right to alternate counsel in dealings with the Cross Defendants, by taking positions contrary to Cross Complainant' best interests and by charging unfair, unreasonable and unconscionable fees as hereinabove alleged. In addition, the Cross Defendants breached their fiduciary duties by the various unethical acts they performed in their relationship

1   with the Cross Complainant, as hereinabove alleged, in violation of the California Rules of
2   Professional Conduct and the Business and Professions Code.

3       34.   As a result of Cross Defendants' breach of their fiduciary duties and unethical
4   conduct, Cross Complainant has been damaged in an amount to be proven at the time of trial. In
5   addition to the damages suffered by Cross Complainant as herein alleged, Cross Complainant is
6   entitled to a disgorgement of all fees paid to Cross Defendants heretofore which is an amount in
7   excess of $6.5 million, as well as credit for any and all fees found to be unconscionable and/or
8   improperly charged. Cross Defendant is liable to Cross Complainant in an amount to be proven
9   at trial. In addition, Cross Complainant is entitled to reimbursement of the attorney's fees paid to
10   Cross Defendants in the underlying legal matters which precipitated this cross complaint.

11       35.   In doing the acts herein complained of, said Cross Defendants acted with fraud,
12   oppression and malice and with a willful and malignant intention to do harm and injury to the
13   Cross Complainant by reason of which Cross Complainant are entitled to punitive and exemplary
14   damages according to proof.

15                      **THIRD CAUSE OF ACTION**
16                       (Professional Negligence)

17           (Against All Cross Defendants and ROES 1 Through 25)

18       36.   Cross Complainant refers to all matters contained in paragraphs 1 through 24
19
20   inclusive, of the General Allegations hereinabove and realleges and incorporates by reference
21   each and every allegation set forth therein as though fully set forth at this place.

22       37.   Among the tasks performed by the Cross Defendants on behalf of the Cross
23   Complainant herein were various corporate and business regulatory compliance duties. Cross
24   Complainant hired and employed Cross Defendants to provide legal services that would ensure
25
26   that all acts necessary to comply with all business entity regulatory obligations were
27   accomplished. Cross Complainant depended upon Cross Defendants to perform all tasks
28   necessary to protect Cross Complainant from claims of alter ego liability and Cross Defendants

represented that they performed said tasks competently to the extent that individual officers, shareholders and directors were protected by the inviolate protection of the various business forms through which Cross Complainant conducted business. Cross Defendants represented that they were experts in such matters and Cross Complainant believed said representations. Cross Defendants drafted all documents necessary to operate Cross Complainant's business and knew that the documents drafted by Allen Matkins included obligations on the part of Cross Complainant to defend, indemnify and hold any and all officers, members, shareholders, directors and managers free and harmless from any claims and causes of action growing out of said officers, members, shareholders, directors and managers' work and activities on behalf of the Cross Complainant. Cross Defendants knew, therefore, that if claims of alter ego liability on the part of any of the officers, members, shareholders, directors and managers were made by any person, claimant or entity whatsoever, Cross Defendant would be obligated to pay same and defend said officers, members, shareholders, directors and managers, at great expense and damage to Cross Complainant.

38. Cross Defendants have alleged herein that the corporate and business form through which Cross Complainant transacted its business activities should be set aside and ignored because the formalities attendant thereto have not been performed. If Cross Defendants' allegations are true, and, for purposes of this litigation, they are presumed to be true as against Cross Defendants herein by judicial admission and estoppel, Cross Defendants have so negligently performed the duties for which they were paid, and paid handsomely, by the Cross Complainant herein, that they have exposed Cross Complainant and its investors, officers, directors, managers and members to liability on the basis of alter ego liability. The liability of the officers, members, shareholders, directors and managers by reason of said alter ego liability,

1  as alleged by Cross Defendants in their complaint herein, redounds to the direct detriment, harm

2  and damage of Cross Complainant by reason of the indemnity agreements to which it is subject

3  that were drafted by Cross Defendants herein.

4      39.    But for the negligent and wrongful acts of Cross Defendants, Cross Complainant

5  would not be subject to any such liability or threat of liability.

6

7      40.    As a proximate and direct result of Cross Defendants' negligence as herein

8  alleged, Cross Complainant was harmed in the manner and to the extent set forth hereinabove

9  and in that the money they expended in legal fees paid to the Cross Defendants herein to avoid

10  any alter ego liability and by reason of any liability found in any individual through alter ego

11  liability.

12

13      41.    As such, Defendant is liable to Cross Complainant in an amount to be proven at

14  trial. In addition, Cross Complainant is entitled to reimbursement of the attorney's fees paid to

15  Cross Defendants in the underlying legal matters which precipitated this cross complaint.

16

17  ## FOURTH CAUSE OF ACTION
(Fraud)

18  (Against Cross Defendants Allen Matkins and Robert Moore)

19      42.    Cross Complainant refers to all matters contained in paragraphs 1 through 22

20  inclusive, of the General Allegations hereinabove and realleges and incorporates by reference

21  each and every allegation set forth therein as though fully set forth at this place.

22      43.    Beginning in 2007, Cross Complainant began to express concerns to Cross

23  Defendants Allen Matkins and Robert Moore over the extent of Cross Defendants' bills and to

24  complain about the billing practices of the Cross Defendants herein. On or about July 1, 2007

25  and repeatedly thereafter through April, 2009, including, but not limited to, July 18, 2008,

26  August 8, 2008, September 5 and 23, 2008, October 1 and 8, 2008, November 24, 2008 and

27  January 29, 2009, Cross Defendants Robert Moore and Allen Matkins acknowledged to Robert

28

1  and Janice Judson, principals in BCP's general partner and sole direct managers of BCP through

2  their positions with BCP's general partner, that the billings were "out of line", inappropriate and

3  unconscionable, and falsely and fraudulently represented that if the Cross Complainant would

4  continue employing Moore's services and those of Allen Matkins and its partners and associates,

5  Moore and Allen Matkins had the power to and would ensure that the final bill would be adjusted

6  downward to reflect the true value of the services rendered for a total discount of between 20% to

7  50%. Said Cross Defendants repeatedly represented that the billing practices of the "Brobeck

8  lawyers", by which, they said, they meant those partners and associates employed by Allen

9  Matkins who had previously worked for the law firm of Brobeck Phleger and Harrison, were out

10  of character with the billing practices of Allen Matkins and inappropriate. On the dates set forth

11  hereinabove, Allen Matkins and Robert Moore further falsely and fraudulently represented that

12  the billings would be substantially reduced when the cases were completed and that they wanted

13  to wait to extend the reduction until the cases were over so the matter could be handled all at

14  once rather than piecemeal as each billing was sent.

15       44.     The representations made by Moore and Allen Matkins were false and were

16  known by Moore and Allen Matkins to be false at the time they made them. The true facts were

17  that Moore and Allen Matkins had neither the power nor the intention of adjusting the billings

18  downward in the amounts represented at the conclusion of the representation and the

19  representations were made solely for the purpose of inducing the Cross Complainant to refrain

20  from ending the Cross Defendants' representation of them and moving on to other legal counsel

21  for their legal matters and to refrain from insisting on regular adjustments.

22       45.     The Cross Complainant, through its authorized representatives Robert and Janice

23  Judson, was ignorant of the falsity of the representations made by Moore and Allen Matkins as

24  hereinabove alleged and believed them to be true. The Cross Complainant reasonably and

25  justifiably relied on the false representations made by Moore and Allen Matkins because the

26  principal individuals who managed Cross Complainant's businesses, Robert and Janice Judson,

27  regarded Moore as a friend and believed he had their best interests and those of the entities for

which they worked at heart and would protect them from harm. That is why Robert and Janice Judson believed the false representations that were made to them by Moore and Allen Matkins, as hereinabove alleged.

46.     As a result of Cross Complainant's reasonable reliance on the false and fraudulent representations made by Cross Defendants Moore and Allen Matkins, Cross Complainant allowed the Cross Defendants to continue providing legal services; took no steps to find alternate counsel; continued paying unconscionable and outrageous bills, made no demand for immediate discounts or adjustments and allowed the matters of representation to continue, at great expense and without success.

47.     As a direct and proximate result of the Cross Complainant's reasonable reliance on the false representations made by Cross Defendants Moore and Allen Matkins, Cross Complainant was harmed and injured to an extent that has not, as yet, been fully ascertained. Cross Complainant will seek leave of court to amend this Cross Complaint to allege the extent of said damages when same have been fully ascertained.  Notwithstanding the foregoing, however, Cross Complainant allege that among the damages they have suffered has been exposure to claims by the Cross Defendants herein for legal fees and for legal fees actually paid in excess of $3.5 million for unnecessary and incompetently and negligently performed legal work.

48.     In doing the acts herein complained of the Cross Defendants acted with fraud, oppression and malice and a willful and malignant intention to do harm and injury to the Cross Complainant.  The Cross Defendants' acts, as alleged herein, were malicious, intentional and intended to harm the Cross Complainant by reason of which Cross Complainant is entitled to an award of punitive and exemplary damages in accordance with proof offered at trial.

///

///

## FIFTH CAUSE OF ACTION
(False Promise)

(Against Cross Defendants Allen Matkins and Robert Moore)

49.     Cross Complainant refers to all matters contained in paragraphs 1 through 22 inclusive, of the General Allegations and paragraphs 42 through 46 of the Fourth Cause of Action, hereinabove, and realleges and incorporates by reference each and every allegation set forth therein as though fully set forth at this place.

50.     Cross Defendants Robert Moore and Allen Matkins made a promise to Robert and Janice Judson, principals in BCP's general partner and sole direct managers of BCP, that if BCP would continue employing Moore's services and those of Allen Matkins and its partners and associates, Moore and Allen Matkins had the power to and would ensure that the final bill would be adjusted downward to reflect the true value of the services rendered for a total discount of between 20% to 50%.

51.     This promise was important to the transaction at hand, because BCP would not have continued to have Cross Defendants represent it but for the promise. Moore and Allen Matkins did not intend to perform this promise when they made it and they intended that BCP rely on this promise. Moore and Allen Matkins had neither the power nor the intention of adjusting the billings downward in the amounts represented at the conclusion of the representation and the representations were made solely for the purpose of inducing the Cross Complainant to refrain from ending the Cross Defendants' representation of them and moving on to other legal counsel for their legal matters and to refrain from insisting on regular adjustments.

52.     The Cross Complainant reasonably and justifiably relied on Moore and Allen Matkins' promise and based thereon, BCP allowed the Cross Defendants to continue providing legal services; took no steps to find alternate counsel; continued paying unconscionable and

outrageous bills, made no demand for immediate discounts or adjustments and allowed the

matters of representation to continue, at great expense and without success.

53. Cross Defendants did not perform the promised act, as once the representation ended in July of 2009, Cross Defendants did not adjust the bills downward and did not provide any reduction in the bills. As a result, BCP was harmed and injured to an extent that has not, as yet, been fully ascertained. Cross Complainant will seek leave of court to amend this Cross Complaint to allege the extent of said damages when same have been fully ascertained. Notwithstanding the foregoing, however, Cross Complainant alleges that among the damages it has suffered has been exposure to claims by the Cross Defendants herein for legal fees and for legal fees actually paid in excess of \$3.5 million for unnecessary and incompetently and negligently performed legal work. Further, BCP's reliance on Cross Defendants' promise was a substantial factor in causing its harm.

54. In doing the acts herein complained of, the Cross Defendants acted with fraud, oppression and malice and a willful and malignant intention to do harm and injury to the Cross Complainant. The Cross Defendants' acts, as alleged herein, were malicious, intentional and intended to harm the Cross Complainant by reason of which Cross Complainant is entitled to an award of punitive and exemplary damages in accordance with proof offered at trial.

WHEREFORE, Cross Complainant prays judgment as follows:

ON THE FIRST CAUSE OF ACTION

1. For general damages according to proof;

2. For compensatory damages according to proof;

3. For attorney's fees incurred in the underlying legal matters;

ON THE SECOND CAUSE OF ACTION

    1.     For general damages according to proof;

    2.     For compensatory damages according to proof;

    3.     For punitive damages according to proof;

ON THE THIRD CAUSE OF ACTION

    1.     For general damages according to proof;

    2.     For compensatory damages according to proof;

ON THE FOURTH CAUSE OF ACTION

    1.     For general damages according to proof;

    2.     For compensatory damages according to proof;

    3.     For punitive damages according to proof;

ON THE FIFTH CAUSE OF ACTION

    1.     For general damages according to proof;

    2.     For compensatory damages according to proof;

    3.     For punitive damages according to proof;

ON ALL CAUSES OF ACTION

    1.     For the costs of suit herein incurred; and

    2.     For such other and further relief as the court may deem just and proper.

Dated: April 21, 2011                 JW HOWARD/ATTORNEYS, LTD.

By: _____
                         John W. Howard
                         Attorney for Cross Complainant

20

FIRST AMENDED CROSS-COMPLAINT

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE DENNIS MONTALI, JUDGE

| | |
|---|---|
| In Re: | ) Case No. 08-30026-11 |
| | ) |
| | ) SECURED CREDITOR'S EMERGENCY |
| | ) MOTION to REQUIRE DEBTOR to |
| KIDS CONNECTION, INC., | ) SEGREGATE and ACCOUNT for |
| | ) CASH COLLATERAL; and to |
| | ) CONDITION USE of CASH |
| Debtor. | ) COLLATERAL on ADEQUATE |
| | ) PROTECTION of SECURED |
| | ) CREDITOR'S LIENS |
| | ) |
| | ) Thursday, January 24, 2008 |
| | ) San Francisco, California |

Appearances:

For the Debtor:          Scott Goodsell, Esq.
                         Campeau Goodsell & Smith
                         38 West Santa Clara Street
                         San Jose, California   95113

For Burlingame Capital   Michael Greger, Esq.
Partners, II             Allen Matkins Leck Gamble Mallory &
                           Natsis, LLP
                         Three Embarcadero Center, 12th Floor
                         San Francisco, California   94111-4074

From the U.S. Trustee:   Office of the United States Trustee
                         Patricia A. Cutler, Trial Attorney
                         235 Pine Street, Suite 700
                         San Francisco, California   94104

For Mark Martel:         Mark Martel, Esq., pro se
                         Law Offices of Mark Martel
                         425 Sherman Avenue, Suite 330
                         Palo Alto, California   94306-1851

For Secured Creditor     Richard Rogan, Esq.
City National Bank:      Jeffer Mangels Butler & Marmaro
                         Two Embarcadero Center, Fifth Floor
                         San Francisco, California   94111-3824

1       Suppose Burlingame didn't exist.  Would the bank have

2   an argument that it could make today that the debtor's using

3   cash collateral without its consent —

4       MR. ROGAN:  Yeah, what —

5       THE COURT:  — on these subsequent payments?

6       MR. ROGAN:  — what the bank would like to do is reach

7   an agreement with the debtor in the typical fashion to allow

8   continued operation of the business according to a budget that

9   we'd like to see.

10       THE COURT:  Right.

11       MR. ROGAN:  We'd like to make sure that — you know

12  we're one payment down.  We'd like to address our payments; make

13  certain that we receive appropriate, adequate protection; make

14  sure that the school can operate I would hope for the benefit of

15  the estate and all the creditors, including City National Bank.

16       THE COURT:  Well, I — and, by the way, Mr. Greger,

17  I've assumed that that's also Burlingame's goal.  I mean you

18  need to tell me if it's otherwise.  I realize that there's a

19  history, and you don't take kindly to the debtor's principals

20  using money to fund weddings.  But I take it you're not

21  interested in shutting down this business?

22       MR. GREGER:  No, Your Honor.  In fact, in the letter

23  that we sent the debtor we offered up an opportunity to have a

24  discussion concerning —

25       THE COURT:  Right.

1    MR. GREGER:  — consensual stipulation for use of cash
2  collateral.

3    THE COURT:  Well, isn't that what we really ought to
4  do now, what — we have the debtor's lawyer saying:  We'll comply
5  with the law.  We have two secured creditors.  One may have a
6  more optimistic view of the law than the other.  But for today's
7  purposes the issue ought to be how to keep this school
8  functioning for the benefit not only of the students and their
9  parents but for the creditors or the bankruptcy estate.

10    MR. GREGER:  I don't disagree, Your Honor.

11    I do want to point out there are two issues, though,
12  that were addressed in our motion.  The first deals with the
13  cash collateral.  The second is in the concept of adequate
14  protection for the use of all our other personal property
15  security.

16    We want as whatever — whatever the Court orders in
17  allowing the debtor to utilize cash collateral and, frankly,
18  utilize the other personal-property collateral that we have a
19  security interest in adequate protection in the form of a
20  replacement security interest to protect us against any
21  diminution in value.

22    THE COURT:  I think about going to visit my
23  granddaughter at her nursery school.  And I guess those kids
24  really beat the daylights out of some of those chalkboards and
25  stools, but —

1          MR. GREGER:  We don't know what's there, Your Honor.

2          THE COURT:  I don't know how we're going to replace

3   them.

4          Huh?

5          MR. GREGER:  Well, we don't know what's there.  We're

6   entitled to protection —

7          THE COURT:  I understand.

8          MR. GREGER:  — against any diminution in value.

9          THE COURT:  And I understand that.

10         MR. GREGER:  And obviously —

11         THE COURT:  But what I'm telling you, we're not

12  talking about 747s flying around or sophisticated, you know,

13  biotechnical installation.  We're talking about a nursery

14  school.  What could —

15         MR. GREGER:  We're talking about —

16         THE COURT:  — possibly go wrong at a nursery school —

17         MR. GREGER:  — a piece of real estate —

18         THE COURT:  — with the chalkboards?

19         MR. GREGER:  — that's potentially worth millions.

20  We're talking about unknown amounts of personal property and

21  equipment that are utilized in the operation of the school.

22         And at the end of the day to the extent anything

23  happens to that collateral during the pendency of this

24  bankruptcy case, we are legally entitled to adequate protection.

25         I don't know what that number may be.  The Court may

069 of 156

1  be correct.  It may be a nonissue, but we are clearly and
2  unequivocally entitled to adequate protection of our security
3  interest.

4         THE COURT:  Well, but the statute — the statute starts
5  with the rules for cash collateral.  And, of course, you're
6  correct.  And if you think that there's an abuse of your
7  client's lien, collateral, there's all sorts of ways you can
8  seek relief.

9         And I'm not making light of it.  I'm just saying —
10  well, I'm making light of it a little bit because I don't worry
11  so much about chalkboards as I do about jet airplanes.

12         But I think that we can deal with that in due course.
13  And if the debtor is acting irresponsibly and causing problems
14  to anybody's collateral, there are lots of tools in the toolbox
15  to take care of that party, but not on the first day of the
16  first hearing in the case.  There's no —

17         MR. GREGER:  Your Honor, when the first hearing —
18         THE COURT:  There's no threat.

19         MR. GREGER:  — when the first hearing starts as a
20  result of the debtor's refusal to comply with Section 363 and us
21  having to file an *ex-parte* motion to get compliance, I think
22  absolutely, unequivocally under this record there is substantial
23  evidence that this debtor does not — would not, but for our
24  intervention have taken any efforts to comply with the Code, —
25         THE COURT:  Well, —

1            MR. GREGER:  — and, frankly, Your Honor, —

2            THE COURT:  — I don't know.

3            MR. GREGER:  — that's not only cause for adequate

4    protection under 1112(b) of the Bankruptcy Code under the new

5    provisions under BAPA (phonetic), that's grounds to convert the

6    case.

7            THE COURT:  Make a motion. I mean, again, Mr. Greger,

8    I'm not telling you you can't do various things.  Make a motion,

9    if you want.  And it's the same — I had to work through, in your

10   papers, all your complaints about the debtor's principal and her

11   testimony in another bankruptcy, which is important to you but

12   is legally irrelevant to today's motion.

13           MR. GREGER:  It is absolutely relevant to today's

14   motion.

15           THE COURT:  No, it's not.  It is not.  There's no

16   evidence in this record about anything post-January 9th.

17           MR. GREGER:  Respectfully, Your Honor, if we have a

18   history of the debtor utilizing funds from the corporation —

19           THE COURT:  Then make a motion for some remedy.  Make

20   a motion.

21           MR. GREGER:  I —

22           THE COURT:  But —

23           MR. GREGER:  Your Honor, the remedy that we're seeking

24   is an order from the —

25           THE COURT:  Make a motion that this debtor has a

*Emergency Motion by Secured Creditor*      31

1   history of dissipating assets. Maybe you'll get your trustee or

2   your conversion. Make a motion to do something based upon

3   postpetition events. You have those options. I'm not saying

4   don't do it. I'm saying on an expedited basis, we have a very

5   discrete problem, a very discrete question.

6        And, frankly, if we look at your entire collateral

7   base, a very small percentage is cash collateral.

8        MR. GREGER: Which has historically been used to pay,

9   among other things, personal expenses. And what we're asking

10   for is an order from this Court ordering the debtor not to pay

11   personal expenses any more.

12        THE COURT: Congress gave it to you. It's called

13   Section 363. I don't have to write an order that tells you to

14   do what the law — look, we've got a problem here. You have a

15   history — again, I'm not personalizing this. I'm not angry at

16   you.

17        There's a history of your client taking issue with

18   what the owner of this company has done, and I respect that. I

19   don't — I'm not in her camp. I'm not in anybody's camp. I read

20   the history. But then I focus on today's motion. On an

21   expedited basis the remedy is found in the Code. And the

22   debtor's lawyer said: We'll comply with the Code.

23        MR. GREGER: And in terms of compliance, Your Honor,

24   then is the Court going to order them to provide a complete

25   accounting of every — of all the cash collateral that existed

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| | Janina M. Hoskins | Admin Ch. 7 | | $15,003.93 | $0.00 | $14,500.12 |
| | P.O. Box 158 | 12/04/09 | | $14,500.12 | | |
| | | | reduction by Trustee to $14,500.00- expenses waived | | | |
| | Middletown, CA 95461 | | | | | |
| | <2100-00   Trustee Compensation>,  200 | | | | | |
| | INTERNATIONAL SURETIES, LTD. | Admin Ch. 7 | | $451.11 | $0.00 | $0.00 |
| | 203 CARONDELET ST. | 12/04/09 | | $0.00 | | |
| | | | voided- paid 425.07- corrected amount | | | |
| | New Orleans, LA 70130 | | | | | |
| | <2300-00   Bond Payments>,  200 | | | | | |
| | INTERNATIONAL SURETIES, LTD. | Admin Ch. 7 | | $177.15 | $177.15 | $0.00 |
| | Ste. 420 | 12/04/09 | | $177.15 | | |
| | 701 Poydras Street | | | | | |
| | New Orleans, LA 70139 | | | | | |
| | <2300-00   Bond Payments>,  200 | | | | | |
| | INTERNATIONAL SURETIES, LTD. | Admin Ch. 7 | | $425.07 | $425.07 | $0.00 |
| | 203 CARONDELET ST. | 12/04/09 | | $425.07 | | |
| | | | 2010 Bond payment for Estate | | | |
| | New Orleans, LA 70130 | | | | | |
| | <2300-00   Bond Payments>,  200 | | | | | |
| | Franchise Tax Board | Admin Ch. 7 | FEIN 94-3075164 9/30/10 | $859.00 | $859.00 | $0.00 |
| | Special Procedures - Bankruptcy | 12/04/09 | | $859.00 | | |
| | P.O. BOx 1673 | | | | | |
| | | | 2010 C. 7 Estate tax - Final Return | | | |
| | Sacramento, CA 95812-1673 | | | | | |
| | <2820-00   Other State or Local Taxes (post-petition, incl. post-petition real est. taxes)>,  200 | | | | | |
| | DUANE MORRIS LLP | Admin Ch. 7 | | $77,760.00 | $0.00 | $77,760.00 |
| | One Market Plaza | 12/04/09 | | $77,760.00 | | |
| | Spear Street Tower, Suite 2000 | | | | | |
| | San Francisco, CA 94105-1104 | | | | | |
| | <3210-00   Attorney for Trustee Fees (Other Firm)>,  200 | | | | | |
| | DUANE MORRIS LLP | Admin Ch. 7 | | $1,694.25 | $0.00 | $1,694.25 |
| | One Market Plaza | 12/04/09 | | $1,694.25 | | |
| | Spear Street Tower, Suite 2000 | | | | | |
| | San Francisco, CA 94105-1104 | | | | | |
| | <3220-00   Attorney for Trustee Expenses (Other Firm)>,  200 | | | | | |
| | BACHEKI, CROM & CO., CPA'S | Admin Ch. 7 | | $10,631.50 | $0.00 | $10,631.50 |
| | 180 MONTGOMERY ST., SUITE 2340 | 12/04/09 | | $10,631.50 | | |
| | | | Final Fees for accountant | | | |
| | San Francisco, CA 94104 | | | | | |
| | <3410-00   Accountant for Trustee Fees (Other Firm)>,  200 | | | | | |

# Claims Register

## Case: 08-30026 KIDS CONNECTION, INC.

Claims Bar Date: 04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| | BACHEKI, CROM & CO., CPA'S | Admin Ch. 7 | | $217.25 | $0.00 | $217.25 |
| | 180 MONTGOMERY ST., SUITE 2340 | 12/04/09 | | $217.25 | | |
| | | | Final expenses for accountant | | | |
| | San Francisco, CA 94104 | | | | | |
| | <3420-00  Accountant for Trustee Expenses (Other Firm)>, 200 | | | | | |
| | Employment Development Dept. | Priority | | $0.00 | $0.00 | $7,305.37 |
| | Attn Special Procedures Dept | 12/04/09 | | $7,305.37 | | |
| | P.O .Box 826880, MIC 92-E | | [Employee State W/H Distribution: | | | |
| | Sacramento, CA 94280-0001 | | Claim   9  $  2380.76  Sona Dakessian | | | |
| | | | Claim  12  $  3496.05  Diane H Marcum | | | |
| | | | Claim  23  $   91.99  Leah D. Harper | | | |
| | | | Claim  31  $   37.61  Charlet N Burcin | | | |
| | | | Claim  34  $  917.75  Diane H Marcum | | | |
| | | | Claim  37  $  153.48  Mary L Frye | | | |
| | | | Claim  38  $  105.00  Debbie Curran | | | |
| | | | Claim  36  $  122.73  Kathy Parker | | | |
| | | | ] | | | |
| | <5300-00   Wages>, 510 | | | | | |
| | UNITED STATES TREASURY | Priority | | $0.00 | $0.00 | $1,765.47 |
| | P.O. Box 970030 | 12/04/09 | | $1,765.47 | | |
| | | | [Employee Medicare Distribution: | | | |
| | St. Louis, MO 63197 | | Claim   9  $  575.35  Sona Dakessian | | | |
| | | | Claim  12  $  844.88  Diane H Marcum | | | |
| | | | Claim  23  $   22.23  Leah D. Harper | | | |
| | | | Claim  31  $    9.09  Charlet N Burcin | | | |
| | | | Claim  34  $  221.79  Diane H Marcum | | | |
| | | | Claim  37  $   37.09  Mary L Frye | | | |
| | | | Claim  38  $   25.38  Debbie Curran | | | |
| | | | Claim  36  $   29.66  Kathy Parker | | | |
| | | | ] | | | |
| | <5300-00   Wages>, 510 | | | | | |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | | | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|---|---|
| | UNITED STATES TREASURY | Priority | | | | $0.00 | $0.00 | $7,548.89 |
| | P.O. Box 970030 | 12/04/09 | | | | $7,548.89 | | |
| | | | [Employee FICA Distribution: | | | | | |
| | St. Louis, MO 63197 | | Claim | 9 | $ | 2460.12  Sona Dakessian | | |
| | | | Claim | 12 | $ | 3612.59  Diane H Marcum | | |
| | | | Claim | 23 | $ | 95.06  Leah D. Harper | | |
| | | | Claim | 31 | $ | 38.86  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 948.34  Diane H Marcum | | |
| | | | Claim | 37 | $ | 158.60  Mary L Frye | | |
| | | | Claim | 38 | $ | 108.50  Debbie Curran | | |
| | | | Claim | 36 | $ | 126.82  Kathy Parker | | |
| | | | ] | | | | | |
| | <5300-00  Wages>, 510 | | | | | | | |
| | UNITED STATES TREASURY | Priority | | | | $0.00 | $0.00 | $30,439.02 |
| | P.O. Box 970030 | 12/04/09 | | | | $30,439.02 | | |
| | | | [Employee Federal W/H Distribution: | | | | | |
| | St. Louis, MO 63197 | | Claim | 9 | $ | 9919.82  Sona Dakessian | | |
| | | | Claim | 12 | $ | 14566.88  Diane H Marcum | | |
| | | | Claim | 23 | $ | 383.30  Leah D. Harper | | |
| | | | Claim | 31 | $ | 156.71  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 3823.95  Diane H Marcum | | |
| | | | Claim | 37 | $ | 639.50  Mary L Frye | | |
| | | | Claim | 38 | $ | 437.50  Debbie Curran | | |
| | | | Claim | 36 | $ | 511.36  Kathy Parker | | |
| | | | ] | | | | | |
| | <5300-00  Wages>, 510 | | | | | | | |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | | | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|---|---|
| | Employment Development Dept. | Priority | | | | $0.00 | $0.00 | $985.43 |
| | Attn Special Procedures Dept | 12/04/09 | | | | $985.43 | | |
| | P.O .Box 826880, MIC 92-E | | [Employee SDI Distribution: | | | | | |
| | Sacramento, CA 94280-0001 | | Claim | 9 | $ | 317.43  Sona Dakessian | | |
| | | | Claim | 12 | $ | 466.14  Diane H Marcum | | |
| | | | Claim | 23 | $ | 12.27  Leah D. Harper | | |
| | | | Claim | 31 | $ | 5.01  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 122.37  Diane H Marcum | | |
| | | | Claim | 37 | $ | 20.46  Mary L Frye | | |
| | | | Claim | 38 | $ | 19.25  Debbie Curran | | |
| | | | Claim | 36 | $ | 22.50  Kathy Parker | | |
| | | | ] | | | | | |
| | <5300-00  Wages>, 510 | | | | | | | |
| | Employment Development Dept. | Priority | | | | $0.00 | $0.00 | $7,548.89 |
| | Attn Special Procedures Dept | 12/04/09 | | | | $7,548.89 | | |
| | P.O .Box 826880, MIC 92-E | | [Employer SUTA Distribution: | | | | | |
| | Sacramento, CA 94280-0001 | | Claim | 9 | $ | 2460.12  Sona Dakessian | | |
| | | | Claim | 12 | $ | 3612.59  Diane H Marcum | | |
| | | | Claim | 23 | $ | 95.06  Leah D. Harper | | |
| | | | Claim | 31 | $ | 38.86  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 948.34  Diane H Marcum | | |
| | | | Claim | 37 | $ | 158.60  Mary L Frye | | |
| | | | Claim | 38 | $ | 108.50  Debbie Curran | | |
| | | | Claim | 36 | $ | 126.82  Kathy Parker | | |
| | | | ] | | | | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | | | |
| | Employment Development Dept. | Priority | | | | $0.00 | $0.00 | $121.77 |
| | Attn Special Procedures Dept | 12/04/09 | | | | $121.77 | | |
| | P.O .Box 826880, MIC 92-E | | [Employer ETT Distribution: | | | | | |
| | Sacramento, CA 94280-0001 | | Claim | 9 | $ | 39.68  Sona Dakessian | | |
| | | | Claim | 12 | $ | 58.27  Diane H Marcum | | |

# Claims Register

## Case: 08-30026    KIDS CONNECTION, INC.

Claims Bar Date:    04/06/10

| Claim lumber | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | | | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|---|---|
| | | | Claim | 23 | $ | 1.53  Leah D. Harper | | |
| | | | Claim | 31 | $ | 0.63  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 15.30  Diane H Marcum | | |
| | | | Claim | 37 | $ | 2.56  Mary L Frye | | |
| | | | Claim | 38 | $ | 1.75  Debbie Curran | | |
| | | | Claim | 36 | $ | 2.05  Kathy Parker | | |
| | | | ] | | | | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | | | |
| | UNITED STATES TREASURY | Priority | | | | $0.00 | $0.00 | $7,548.89 |
| | P.O. Box 970030 | 12/04/09 | | | | $7,548.89 | | |
| | | | [Employer FICA Distribution: | | | | | |
| | St. Louis, MO 63197 | | Claim | 9 | $ | 2460.12  Sona Dakessian | | |
| | | | Claim | 12 | $ | 3612.59  Diane H Marcum | | |
| | | | Claim | 23 | $ | 95.06  Leah D. Harper | | |
| | | | Claim | 31 | $ | 38.86  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 948.34  Diane H Marcum | | |
| | | | Claim | 37 | $ | 158.60  Mary L Frye | | |
| | | | Claim | 38 | $ | 108.50  Debbie Curran | | |
| | | | Claim | 36 | $ | 126.82  Kathy Parker | | |
| | | | ] | | | | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | | | |
| | UNITED STATES TREASURY | Priority | | | | $0.00 | $0.00 | $974.04 |
| | P.O. Box 970030 | 12/04/09 | | | | $974.04 | | |
| | | | [Employer FUTA Distribution: | | | | | |
| | St. Louis, MO 63197 | | Claim | 9 | $ | 317.43  Sona Dakessian | | |
| | | | Claim | 12 | $ | 466.14  Diane H Marcum | | |
| | | | Claim | 23 | $ | 12.27  Leah D. Harper | | |
| | | | Claim | 31 | $ | 5.01  Charlet N Burcin | | |
| | | | Claim | 34 | $ | 122.37  Diane H Marcum | | |
| | | | Claim | 37 | $ | 20.46  Mary L Frye | | |
| | | | Claim | 38 | $ | 14.00  Debbie Curran | | |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / \<Category\>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| | | | Claim 36 $ ] | 16.36  Kathy Parker | | |
| | \<5800-00   Claims of Governmental Units\>,  570 | | | | | |
| | UNITED STATES TREASURY | Priority | | $0.00 | $0.00 | $1,765.47 |
| | P.O. Box 970030 | 12/04/09 | | $1,765.47 | | |
| | | | [Employer Medicare Distribution:] | | | |
| | St. Louis, MO 63197 | | Claim 9 $ | 575.35  Sona Dakessian | | |
| | | | Claim 12 $ | 844.88  Diane H Marcum | | |
| | | | Claim 23 $ | 22.23  Leah D. Harper | | |
| | | | Claim 31 $ | 9.09  Charlet N Burcin | | |
| | | | Claim 34 $ | 221.79  Diane H Marcum | | |
| | | | Claim 37 $ | 37.09  Mary L Frye | | |
| | | | Claim 38 $ | 25.38  Debbie Curran | | |
| | | | Claim 36 $ ] | 29.66  Kathy Parker | | |
| | \<5800-00   Claims of Governmental Units\>,  570 | | | | | |
| | Franchise Tax Board | Admin Ch. 11 | | $5,009.00 | $0.00 | $5,009.00 |
| | Special Procedures - Bankruptcy | 12/04/09 | | $5,009.00 | | |
| | P.O. BOx 1673 | | 2009 C. 11 Estate taxes to California- per return | | | |
| | Sacramento, CA 95812-1673 | | | | | |
| | \<6820-00   Other State or Local Taxes (non-payroll and non-sales taxes) (Prior Chapter)\>,  300 | | | | | |
| | Linda Koelling | Admin Ch. 11 | | $325,000.00 | $50,000.00 | $0.00 |
| | c/o Dennis Davis, Esq. | 12/04/09 | | $50,000.00 | | |
| | 44 Montgomery Street, Ste. 2900 | | C. 11 admin claim filed by principal of Debtor:  Objection | | | |
| | San Francisco, CA 94104 | | Compromise approved as to $50K | | | |
| | \<6910-00   Trade Debt (Chapter 11)\>,  300 | | | | | |
| | Campeau Goodsell Smith | Admin Ch. 11 | | $584,095.64 | $0.00 | $584,095.64 |
| | 440 N. First Street, Ste. 100 | 12/04/09 | | $584,095.64 | | |
| | San Jose, CA 95112 | | | | | |
| | \<6210-16   Attorney for D-I-P Fees (Chapter 11)\>,  300 | | | | | |
| | Campeau Goodsell Smith | Admin Ch. 11 | | $2,814.20 | $0.00 | $2,814.20 |
| | 440 N. First Street, Ste. 100 | 12/04/09 | | $2,814.20 | | |
| | San Jose, CA 95112 | | | | | |
| | \<6220-17   Attorney for D-I-P Expenses (Chapter 11)\>,  300 | | | | | |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| | David A. Bradlow, Examiner<br>3947 - 23rd Street<br><br>San Francisco, CA 94114-3302<br><6700-38   Examiner Fees (Chapter 11)>,  300 | Admin Ch. 11<br>12/04/09 | remaining, unpaid Examiner fees- Docket no. 413 | $68,258.69<br>$68,258.69 | $0.00 | $68,258.69 |
| 1 | Office Depot<br>2200 Old Germantown Rd.<br>Delray Beach, FL 33445<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>01/18/08 | | $2,814.26<br>$2,814.26 | $0.00 | $2,814.26 |
| 2 | Office Depot<br>2200 Old Germantown Rd.<br>Delray Beach, FL 33445<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>01/18/08 | | $1,530.47<br>$1,530.47 | $0.00 | $1,530.47 |
| 3 | Rentschler/Tursi, LLP<br>411 Borel Avenue, Suite 510<br>San Mateo, CA 94402-3520<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>01/28/08 | | $17,123.80<br>$17,123.80 | $0.00 | $17,123.80 |
| 4 | Wells Fargo Bank<br>BDD Loss Control<br>PO Box 53476<br>Phoenix, AZ 85072-9955<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>02/07/08 | | $23,001.07<br>$23,001.07 | $0.00 | $23,001.07 |
| 5 | Wells Fargo Bank<br>BDD Loss Control<br>PO Box 53476<br>Phoenix, AZ 85072-9955<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>02/07/08 | | $26,747.94<br>$26,747.94 | $0.00 | $26,747.94 |
| 6 | Wells Fargo Bank<br>BDD Loss Control<br>PO Box 53476<br>Phoenix, AZ 85072-9955<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>02/07/08 | | $9,605.58<br>$9,605.58 | $0.00 | $9,605.58 |
| 7 | Kirk Freeman<br>214 Grant Ave #301<br>San Francisco, CA 94108<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>02/29/08 | | $177,975.19<br>$177,975.19 | $0.00 | $177,975.19 |
| 8 | US Bancorp Business Equipment<br>Finance Group<br>Attn: Corporate Attorney<br>1310 Madrid St. #100<br>Marshall, MN 56258<br><7100-00   General Unsecured § 726(a)(2)>,  610 | Unsecured<br>03/26/08 | secured claim - retain collateral<br>Amended re unsecured balance (6/29/10) | $23,439.22<br>$15,800.90 | $0.00 | $15,800.90 |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| 9 | Sona Dakessian<br>464 Bloomfield Rd<br><br>Burlingame, CA 94010-2754<br><br><br><5300-00  Wages>, 510 | Priority<br>05/01/08 | [Gross Wage $39679.28 Less Taxes = Net $24025.80 Federal W/H $9919.82 FICA $2460.12 Medicare $575.35 State W/H $2380.76 SDI $317.43] | $39,679.28<br>$24,025.80 | $0.00 | $24,025.80 |
| 10 | City National Bank<br>Richard A. Rogan, Esq.,Jeffer, Mangels,<br>Butler & Marmaro LLP,Two Embarcadero Cen<br>San Francisco, CA 94111<br><4110-00   Real Estate--Consensual Liens (mortgages, deeds of trust, PMSI)>,  100 | Secured<br>05/02/08 | secured claim - retain collateral | $5,280,816.84<br>$0.00 | $0.00 | $0.00 |
| 11 | Burlingame Capital Partners II, L.P<br>3182 Campus Drive, Suite 306<br>San Mateo, CA 94403<br><7100-00  General Unsecured § 726(a)(2)>, 610 | Unsecured<br>05/06/08 | | $5,659,655.10<br>$5,659,655.10 | $0.00 | $5,659,655.10 |
| 12 | Diane H Marcum<br>1049 Shell Blvd #4<br><br>Foster City, CA 94404-2961<br><br><br><5300-00  Wages>, 510 | Priority<br>05/06/08 | [Gross Wage $58267.52 Less Taxes = Net $35280.98 Federal W/H $14566.88 FICA $3612.59 Medicare $844.88 State W/H $3496.05 SDI $466.14] | $58,267.52<br>$35,280.98 | $0.00 | $35,280.98 |
| 14 | Brian Fitzpatrick<br>c/o Law Offices of William C. Lewis<br>510 Waverley St.<br>Palo Alto, CA 94301<br><4210-00  Pers. Prop. & Intangibles--Consensual Liens (UCC, chattel, PMSI)>,  100 | Secured<br>05/09/08 | secured claim  - retain collateral | $233,708.60<br>$0.00 | $0.00 | $0.00 |
| 15 -2 | Lois Brady, Trustee, Case No. 04-46443<br>Mark S. Bostick,Wendel, Rosen, Black &<br>Dean DLLP,1111 Broadway, 24th Fl.<br>Oakland, CA 94607<br><7100-00  General Unsecured § 726(a)(2)>, 610 | Unsecured<br>05/09/08 | | $301,000.00<br>$301,000.00 | $0.00 | $301,000.00 |
| 16 | Mark Martel, Esq.<br>425 Sherman Ave., #330<br>Palo Alto, CA 94306-1851<br><7100-00  General Unsecured § 726(a)(2)>, 610 | Unsecured<br>05/12/08 | | $117,841.51<br>$117,841.51 | $0.00 | $117,841.51 |
| 17 | Debbi Curran<br>143 Somerset street<br>Redwood City, CA 94062-1823<br><7100-00  General Unsecured § 726(a)(2)>, 610 | Unsecured<br>05/09/08 | | $31,041.28<br>$31,041.28 | $0.00 | $31,041.28 |

# Claims Register

## Case: 08-30026 KIDS CONNECTION, INC.

Claims Bar Date: 04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| 18 -2 | Lois Brady, Trustee, Case No. 04-46443 Mark S. Bostick, Wendel, Rosen, Black & Dean LLP, 1111 Broadway, 24th Fl. Oakland, CA 94607 <4220-00   Pers. Prop. & Intangibles--Nonconsensual Liens (judgements, storage liens)>, 100 | Secured 05/12/08 | secured claim  - retain collateral | $1,275,000.00 $0.00 | $0.00 | $0.00 |
| 19 | Nancy Barbi 2060 Kings Lane San Mateo, CA 94402 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/12/08 | | $34,525.28 $34,525.28 | $0.00 | $34,525.28 |
| 20 | Corrine F Ortega 13 King Court San Mateo, CA 94403 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/12/08 | | $38,522.08 $38,522.08 | $0.00 | $38,522.08 |
| 21 | Kathleen H Parker 1749 Wolfe Drive San Mateo, CA 94402 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/12/08 | | $37,868.80 $37,868.80 | $0.00 | $37,868.80 |
| 22 | Mary L. Kassenbaum 1970 Beach Park Foster City, CA 94404 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/12/08 | | $57,033.23 $57,033.23 | $0.00 | $57,033.23 |
| 23 | Leah D. Harper 1562 Waller Street San Francisco, CA 94117 <5300-00   Wages>, 510 | Priority 05/13/08 | [Gross Wage $1533.20 Less Taxes = Net $928.35 Federal W/H $383.30 FICA $95.06 Medicare $22.23 State W/H $91.99 SDI $12.27] | $1,533.20 $928.35 | $0.00 | $928.35 |
| 24 | Katherine N Strem 232 Arundel Road Burlingame, CA 94010 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/14/08 | | $31,071.68 $31,071.68 | $0.00 | $31,071.68 |
| 25 | Dennis G Plesea 1576 Waller San Francisco, CA 94117 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/14/08 | | $35,333.28 $35,333.28 | $0.00 | $35,333.28 |
| 26 | Lea N. Rochelle-Tran 520 S. El Dorado Street San Mateo, CA 94402 <7100-00   General Unsecured § 726(a)(2)>, 610 | Unsecured 05/14/08 | | $28,666.67 $28,666.67 | $0.00 | $28,666.67 |

# Claims Register

## Case: 08-30026  KIDS CONNECTION, INC.

Claims Bar Date:  04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| 27 | Mary L Frye<br>59 Washington Street #142<br>Santa Clara, CA 95050<br><7100-00  General Unsecured § 726(a)(2)>,  610 | Unsecured<br>05/16/08 | | $18,910.64<br>$18,910.64 | $0.00 | $18,910.64 |
| 29 -2 | Franchise Tax Board<br>Special Procedures<br>PO Box 2952<br>Sacramento, CA 95812-2952<br><7100-00  General Unsecured § 726(a)(2)>,  610 | Unsecured<br>06/27/08 | | $250.00<br>$250.00 | $0.00 | $250.00 |
| 30 | Linda Koelling<br>c/o Goldberg, Stinnett, Davis & Linchey,<br>San Francisco, CA 94104<br><4120-00  Real Estate--Non-consensual Liens (judgments, mechanics liens)>,  100 | Secured<br>06/30/09 | | $577,417.00<br>$0.00<br>secured - retain collateral - compromise | $0.00 | $0.00 |
| 31 | Charlet N Burcin<br>3883 Farm Hill Blvd<br>Redwood City., CA 94061-1811<br><5300-00  Wages>,  510 | Priority<br>01/05/10 | | $626.85<br>$379.57<br>[Gross Wage $626.85 Less Taxes = Net $379.57 Federal W/H $156.71 FICA $38.86 Medicare $9.09 State W/H $37.61 SDI $5.01] | $0.00 | $379.57 |
| 32 | Rentschler/Tursi, LLP<br>411 Borel Avenue, Suite 510<br>San Mateo, CA 94402-3520<br><7100-00  General Unsecured § 726(a)(2)>,  610 | Unsecured<br>03/17/10 | | $17,123.80<br>$17,123.80 | $0.00 | $17,123.80 |
| 33 | Burlingame Capital Partners II, L.P.<br>c/o John W. Howard<br>JW Howard Attorneys,1508 West Lewis St.<br>San Diego, CA 92103<br><6910-00  Trade Debt (Chapter 11)>,  300 | Admin Ch. 11<br>04/06/10 | | $131,000.00<br>$50,000.00<br>paid in full per compromise- Order entered approving | $50,000.00 | $0.00 |
| 34 | Diane H Marcum<br>1049 Shell Blvd #4<br>Foster City, CA 94404-2961<br><5300-00  Wages>,  510 | Priority<br>03/30/10 | | $15,295.80<br>$9,261.60<br>[Gross Wage $15295.80 Less Taxes = Net $9261.60 Federal W/H $3823.95 FICA $948.34 Medicare $221.79 State W/H $917.75 SDI $122.37] | $0.00 | $9,261.60 |
| 35 | Mary Lynn Kassebaum<br>377 Sunfish Ct.<br>Foster City, CA 94404<br><7100-00  General Unsecured § 726(a)(2)>,  610 | Unsecured<br>04/02/10 | | $14,982.92<br>$14,982.92 | $0.00 | $14,982.92 |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim lumber | Claimant Name / \<Category\>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| 36 | Kathy Parker 1749 Wolfe Dr. | Priority 04/02/10 | | $2,045.45 $1,232.38 | $1,232.38 | $0.00 |
| | San Mateo, CA 94402 | | | [Gross Wage $2045.45 Less Taxes = Net $1232.38 Federal W/H $511.36 FICA $126.82 Medicare $29.66 State W/H $122.73 SDI $22.50] | | |
| | \<5300-00  Wages\>, 510 | | | | | |
| 37 | Mary L Frye 59 Washington Street #142 | Priority 04/07/10 | | $2,558.00 $1,548.87 | $0.00 | $1,548.87 |
| | Santa Clara, CA 95050 | | | [Gross Wage $2558.00 Less Taxes = Net $1548.87 Federal W/H $639.50 FICA $158.60 Medicare $37.09 State W/H $153.48 SDI $20.46] | | |
| | \<5300-00  Wages\>, 510 | | | | | |
| 38 | Debbie Curran c/o JW Howard/Attorneys, Ltd 1508 West Lewis St. San Diego, CA 92103 | Priority 04/27/10 | | $1,750.00 $1,054.37 | $1,054.37 | $0.00 |
| | | | | [Gross Wage $1750.00 Less Taxes = Net $1054.37 Federal W/H $437.50 FICA $108.50 Medicare $25.38 State W/H $105.00 SDI $19.25] | | |
| | \<5300-00  Wages\>, 510 | | | | | |
| 39 | Nancy Barbi 2060 Kings Lane San Mateo, CA 94402 | Unsecured 04/27/10 | | $1,750.00 $1,750.00 | $0.00 | $1,750.00 |
| | \<7100-00  General Unsecured § 726(a)(2)\>, 610 | | | | | |
| 40 | Kathleen O'Rourke c/o JW Howard/Attorneys, Ltd 1508 West Lewis St. San Diego, CA 92103 | Unsecured 04/27/10 | | $1,431.82 $1,431.82 | $0.00 | $1,431.82 |
| | \<7100-00  General Unsecured § 726(a)(2)\>, 610 | | | | | |
| 41 | Sona Dakessian 464 Bloomfield Rd Burlingame, CA 94010-2754 | Unsecured 04/27/10 | | $4,568.97 $4,568.97 | $0.00 | $4,568.97 |
| | \<7100-00  General Unsecured § 726(a)(2)\>, 610 | | | | | |
| 42P | State Board of Equalization Special Operations Branch, MIC:55 P.O. Box 942879 Sacramento, CA 94279-0055 | Priority 12/04/09 | | $572.00 $572.00 | $0.00 | $572.00 |
| | \<5800-00  Claims of Governmental Units\>, 570 | | | | | |
| 42U | State Board of Equalization Special Operations Branch, MIC:55 P.O. Box 942879 Sacramento, CA 94279-0055 | Unsecured 12/04/09 | | $133.40 $133.40 | $0.00 | $133.40 |
| | \<7300-00  Fines, Penalties § 726(a)(4)\>, 630 | | | | | |

# Claims Register

## Case: 08-30026   KIDS CONNECTION, INC.

Claims Bar Date:   04/06/10

| Claim Number | Claimant Name / <Category>, Priority | Claim Type/ Date Filed | Claim Ref./ Notes | Amount Filed/ Allowed | Paid to Date | Claim Balance |
|---|---|---|---|---|---|---|
| 100 | Office of the United States Trustee | Admin Ch. 7 | | $14,625.00 | $0.00 | $14,625.00 |
| | 235 Pine Street, Ste. 700 | 12/04/09 | | $14,625.00 | | |
| | | | | UST unpaid quarterly fees re C. 11 2nd - 4th quarter 2009 | | |
| | San Francisco, CA 94104 | | | | | |
| | <2950-00  U.S. Trustee Quarterly Fees>, 200 | | | | | |
| 001 | U. S. Treasury | Priority | | $1,239.22 | $1,239.22 | $0.00 |
| | | 12/04/09 | | $1,239.22 | | |
| | | | | Form 941 taxes paid for claims of Curran and Parker | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | |
| 002 | Employment Development Dept. | Priority | | $269.48 | $269.48 | $0.00 |
| | Attn Special Procedures Dept | 12/04/09 | | $269.48 | | |
| | P.O .Box 826880, MIC 92-E | | | Form DE88  taxes paid for claims of Curran and Parker | | |
| | Sacramento, CA 94280-0001 | | | | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | |
| 003 | U.S. Treasury | Priority | | $30.36 | $30.36 | $0.00 |
| | | 12/04/09 | | $30.36 | | |
| | | | | Form 940axes paid for claims of Curran and Parker | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | |
| 004 | Employment Development Dept. | Priority | | $117.66 | $117.66 | $0.00 |
| | Attn Special Procedures Dept | 12/04/09 | | $117.66 | | |
| | P.O .Box 826880, MIC 92-E | | | Form DE-7- Curran and Parker tax payments EDD | | |
| | Sacramento, CA 94280-0001 | | | | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | |
| 005 | U.S. Treasury | Priority | | $290.35 | $290.35 | $0.00 |
| | | 12/04/09 | | $290.35 | | |
| | | | | Form 941 taxes paid for Curran and Parker | | |
| | <5800-00  Claims of Governmental Units>, 570 | | | | | |

|  |  | Case Total: | $105,695.04 | $7,623,915.73 |
|---|---|---|---|---|

### TRUSTEE'S PROPOSED DISTRIBUTION

Case No.: 08-30026
Case Name: KIDS CONNECTION, INC.
Trustee Name: Janina M. Hoskins

**Balance on hand:**     $     129,390.90

Claims of secured creditors will be paid as follows:

| Claim No. | Claimant | Claim Asserted | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|-----------|----------|----------------|-------------------------|--------------------------|------------------|
| None      |          |                |                         |                          |                  |

Total to be paid to secured creditors:     $     0.00
Remaining balance:     $     129,390.90

Applications for chapter 7 fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|------------------|-----------------|--------------------------|------------------|
| Trustee, Fees - Janina M. Hoskins | 14,500.12 | 0.00 | 14,500.12 |
| Attorney for Trustee, Fees - DUANE MORRIS LLP | 77,760.00 | 0.00 | 77,760.00 |
| Attorney for Trustee, Expenses - DUANE MORRIS LLP | 1,694.25 | 0.00 | 1,694.25 |
| Accountant for Trustee, Fees - BACHEKI, CROM & CO., CPA'S | 10,631.50 | 0.00 | 10,631.50 |
| Accountant for Trustee, Expenses - BACHEKI, CROM & CO., CPA'S | 217.25 | 0.00 | 217.25 |
| Fees, United States Trustee | 14,625.00 | 0.00 | 14,625.00 |

Total to be paid for chapter 7 administration expenses:     $     119,428.12
Remaining balance:     $     9,962.78

Applications for prior chapter fees and administrative expenses have been filed as follows:

| Reason/Applicant | Total Requested | Interim Payments to Date | Proposed Payment |
|------------------|-----------------|--------------------------|------------------|
| Attorney for D-I-P Fees - Campeau Goodsell Smith | 584,095.64 | 0.00 | 8,814.62 |
| Attorney for D-I-P Expenses - Campeau Goodsell Smith | 2,814.20 | 0.00 | 42.47 |
| Other Fees: David A. Bradlow, Examiner | 68,258.69 | 0.00 | 1,030.10 |
| Other Expenses: Franchise Tax Board | 5,009.00 | 0.00 | 75.59 |

Total to be paid for prior chapter administrative expenses:     $     9,962.78
Remaining balance:     $     0.00

In addition to the expenses of administration listed above as may be allowed by the Court, priority claims totaling 42,234.23 must be paid in advance of any idend to general (unsecured) creditors.

Allowed priority claims are:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| | Employment Development Dept. | 7,548.89 | 0.00 | 0.00 |
| | Employment Development Dept. | 121.77 | 0.00 | 0.00 |
| | UNITED STATES TREASURY | 7,548.89 | 0.00 | 0.00 |
| | UNITED STATES TREASURY | 974.04 | 0.00 | 0.00 |
| | UNITED STATES TREASURY | 1,765.47 | 0.00 | 0.00 |
| 9 | Sona Dakessian | 39,679.28 | 0.00 | 0.00 |
| 12 | Diane H Marcum | 58,267.52 | 0.00 | 0.00 |
| 23 | Leah D. Harper | 1,533.20 | 0.00 | 0.00 |
| 31 | Charlet N Burcin | 626.85 | 0.00 | 0.00 |
| 34 | Diane H Marcum | 15,295.80 | 0.00 | 0.00 |
| 36 | Kathy Parker | 2,045.45 | 1,232.38 | 0.00 |
| 37 | Mary L Frye | 2,558.00 | 0.00 | 0.00 |
| 38 | Debbie Curran | 1,750.00 | 1,054.37 | 0.00 |
| 42P | State Board of Equalization | 572.00 | 0.00 | 0.00 |
| 1001 | U. S. Treasury | 1,239.22 | 1,239.22 | 0.00 |
| 1002 | Employment Development Dept. | 269.48 | 269.48 | 0.00 |
| 1003 | U.S. Treasury | 30.36 | 30.36 | 0.00 |
| 1004 | Employment Development Dept. | 117.66 | 117.66 | 0.00 |
| 1005 | U.S. Treasury | 290.35 | 290.35 | 0.00 |

Total to be paid for priority claims: $ 0.00

Remaining balance: $ 0.00

The actual distribution to wage claimants included above, if any, will be the proposed payment less applicable withholding taxes (which will be remitted to the appropriate taxing authorities).

Timely claims of general (unsecured) creditors totaling $ 6,706,176.27 have been allowed and
will be paid *pro rata* only aft 'l allowed administrative and priority clai 'have been paid in f
The timely allowed general (unsecured) dividend is anticipated to be 0.0 percent,
plus interest (if applicable).

Timely allowed general (unsecured) claims are as follows:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|---|---|---|---|---|
| 1 | Office Depot | 2,814.26 | 0.00 | 0.00 |
| 2 | Office Depot | 1,530.47 | 0.00 | 0.00 |
| 3 | Rentschler/Tursi, LLP | 17,123.80 | 0.00 | 0.00 |
| 4 | Wells Fargo Bank | 23,001.07 | 0.00 | 0.00 |
| 5 | Wells Fargo Bank | 26,747.94 | 0.00 | 0.00 |
| 6 | Wells Fargo Bank | 9,605.58 | 0.00 | 0.00 |
| 7 | Kirk Freeman | 177,975.19 | 0.00 | 0.00 |
| 8 | US Bancorp Business Equipment Finance Group | 15,800.90 | 0.00 | 0.00 |
| 11 | Burlingame Capital Partners II, L.P | 5,659,655.10 | 0.00 | 0.00 |
| 15 -2 | Lois Brady, Trustee, Case No. 04-46443 | 301,000.00 | 0.00 | 0.00 |
| 16 | Mark Martel, Esq. | 117,841.51 | 0.00 | 0.00 |
| 17 | Debbi Curran | 31,041.28 | 0.00 | 0.00 |
| 19 | Nancy Barbi | 34,525.28 | 0.00 | 0.00 |
| 20 | Corrine F Ortega | 38,522.08 | 0.00 | 0.00 |
| 21 | Kathleen H Parker | 37,868.80 | 0.00 | 0.00 |
| 22 | Mary L. Kassenbaum | 57,033.23 | 0.00 | 0.00 |
| 24 | Katherine N Strem | 31,071.68 | 0.00 | 0.00 |
| 25 | Dennis G Plesea | 35,333.28 | 0.00 | 0.00 |
| 26 | Lea N. Rochelle-Tran | 28,666.67 | 0.00 | 0.00 |
| 27 | Mary L Frye | 18,910.64 | 0.00 | 0.00 |
| 29 -2 | Franchise Tax Board | 250.00 | 0.00 | 0.00 |
| 32 | Rentschler/Tursi, LLP | 17,123.80 | 0.00 | 0.00 |
| 35 | Mary Lynn Kassebaum | 14,982.92 | 0.00 | 0.00 |
| 39 | Nancy Barbi | 1,750.00 | 0.00 | 0.00 |
| 40 | Kathleen O'Rourke | 1,431.82 | 0.00 | 0.00 |
| 41 | Sona Dakessian | 4,568.97 | 0.00 | 0.00 |

Total to be paid for timely general unsecured claims: $ 0.00

Remaining balance: $ 0.00

Tardily filed claims of general (unsecured) creditors totaling $ 0.00 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and timely filed general (unsecured) claims have been paid in full. The tardily filed claim dividend is anticipated to be 0.0 percent, plus interest (if applicable).

Tardily filed general (unsecured) claims are as follows:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|----------|----------|-------------------------|--------------------------|------------------|
| None | | | | |

| | | | |
|---|---|---|---|
| Total to be paid for tardy general unsecured claims: | | $ | 0.00 |
| Remaining balance: | | $ | 0.00 |

Subordinated unsecured claims for fines, penalties, forfeitures, or damages and claims ordered subordinated by the Court totaling $ 133.40 have been allowed and will be paid *pro rata* only after all allowed administrative, priority and general (unsecured) claims have been paid in full. The dividend for subordinated unsecured claims is anticipated to be 0.0 percent, plus interest (if applicable).

Subordinated unsecured claims for fines, penalties, forfeitures or damages and claims ordered subordinated by the Court are as follows:

| Claim No | Claimant | Allowed Amount of Claim | Interim Payments to Date | Proposed Payment |
|----------|----------|-------------------------|--------------------------|------------------|
| 42U | State Board of Equalization | 133.40 | 0.00 | 0.00 |

| | | | |
|---|---|---|---|
| Total to be paid for subordinated claims: | | $ | 0.00 |
| Remaining balance: | | $ | 0.00 |

| Date | Description | Attorney | Hours | Amount |
|------|-------------|----------|-------|--------|
| 04/28/09 | ATTENTION TO PRE-HEARING ISSUES. | MERTZ | .5 | 287.50 |
| 04/28/09 | CONFERENCE RE: HANDLING; REVIEW EMAIL CORRESPONDENCE. | MOORE | 1.5 | 855.00 |
| 04/28/09 | CONFERENCE WITH R. MOORE; REVIEW EMAIL FROM CLIENT; REVIEW AND FORWARD EXECUTED COPY OF BANK OF MARIN COMMITMENT LETTER TO DEBTOR'S COUNSEL AND EXAMINER BRADLOW; RESEARCH AND PREPARE CHRONOLOGY IN PREPARATION FOR HEARING ON 4/29; RESEARCH RE BANKRUPTCY RULE 9024 AND ABILITY TO ALTER OR AMEND JUDGMENT; CONFERENCE WITH M. GREGER; CONFERENCE WITH M. ERTMAN; PREPARE REQUIRED SCHEDULE FOR HEARING ON 4/29; CONFERENCE WITH W. LEWIS RE BRIAN FITZPATRICK PAYOFF; TELEPHONE CALL WITH R. ROGAN RE CITY NATIONAL BANK PAYOFF; REVIEW DEBTOR'S NOTICE OF DEFAULT; REVIEW EX PARTE APPLICATION RE DISCOVERY; REVIEW FILING BY TEACHER; REVISE SCHEDULE REQUIRED AT HEARING; RECIRCULATE FOR COMMENT; TELEPHONE CALL WITH CLIENT (2X); CONTINUE DRAFTING OPPOSITION TO ATTORNEYS' FEES APPLICATION; REVIEW EMAIL FROM R. JUDSON RE PRESS RELEASE. | HUCKINS | 9.5 | 4,655.00 |
| 04/28/09 | CONFER WITH B. HUCKINS RE HEARING; REVIEW EX PARTE APPLICATIONS; STRATEGIZE RE SAME; REVIEW FILE RE EXAMINER'S INVESTIGATION. | GREGER | 2.5 | 1,400.00 |
| 04/28/09 | FURTHER ANALYZE ISSUES RELATED TO JUDGE'S POSSIBLE RECONSIDERATION OF SALE APPEAL. | COSCINO | .7 | 437.50 |
| 04/28/09 | IN-OFFICE CONFERENCE WITH MATT ERTMAN AND TELEPHONE CONFERENCE WITH ESCROW OFFICER RE PROPERTY TAXES; RESEARCH THE SAME; IN-OFFICE CONFERENCE WITH MATT ERTMAN RE CLOSING CHECKLIST; REVIEW AND RESPOND TO SEVERAL EMAILS RE TITLE COVERAGE AND SURVEY AND ESCROW COSTS; REVIEW PURCHASE AGREEMENT RE BUYER RESPONSIBILITY FOR FEES. | RITTER | 2.7 | 796.50 |
| 04/28/09 | ANALYZE CASE LAW REGARDING KID'S CONNECTIONS' INTERROGATORY RELATING TO ATTORNEYS' FEES; DISCUSS SAME WITH W. HUCKINS. | TIMKO | 1.0 | 395.00 |
| 04/28/09 | ATTENTION TO ASSET PURCHASE AGREEMENT PRORATIONS AND EXPENSES; | ERTMAN | 3.6 | 1,656.00 |

# PROOF OF SERVICE

STATE OF CALIFORNIA      )

                                  )   ss.

COUNTY OF SAN DIEGO    )

*Allen Matkins Leck Gamble Mallory & Natsis*
*v Burlingame Capital Partners II, L.P.*
*Case No. CGC-10-505145*

      I am over the age of 18 years, employed in the county of San Diego; my business address is 1508 West Lewis St., San Diego, CA 92103.

      On April 22, 2011, I served the following documents:

**FIRST AMENDED CROSS COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF FIDUCIARY DUTY, PROFESSIONAL NEGLIGENCE, FRAUD AND FALSE PROMISE**

James C. Krieg                               *Attorneys for Plaintiff*
Allison Lane Cooper
Krieg, Keller, Sloan, Reilley & Roman
555 Montgomery Street, 17th Floor
San Francisco, CA 94111

      I declare under penalty of perjury that the foregoing is true and correct. Executed this 22nd day of April 2011 at San Diego, California.

Elisa Marino

EXHIBIT 4   092 of 156

# *EXHIBIT 4*

# *EXHIBIT 4*

EXHIBIT 4   092 of 156

1    James C. Krieg (SBN 77069)
2    Allison Lane Cooper (SBN 152384)
     Jennifer R. McGlone (SBN 209228)
3    KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP
     555 Montgomery Street, 17th Floor
4    San Francisco, CA 94111
     Telephone: (415) 249-8330
5    Facsimile: (415) 249-8333

**F I L E D**
Superior Court of California
County of San Francisco

OCT 1 3 2011

CLERK OF THE COURT
BY: _____
Deputy Clerk

6    Attorneys for Plaintiff and Cross-Defendant
7    Allen Matkins Leck Gamble Mallory & Natsis LLP

RECD OCT 12 2011

8

9           **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

10               **FOR THE COUNTY OF SAN FRANCISCO**

11

12    ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP,

13                 Plaintiff,

14      v.

15    BURLINGAME CAPITAL PARTNERS II,
     LP; BURLINGAME CAPITAL, LLC;
16    ELECTROCHEM SOLUTIONS, LLC;
17    ROBERT JUDSON; JANICE JUDSON,

18                 Respondents.

19    And Related Cross-Complaint.

20

**CASE NO. CGC-10-505145**

AND
**STIPULATION [AND PROPOSED]** JH
**ORDER DISMISSING CERTAIN** AND
**CLAIMS** AND PARTIES, AND
FOR AMENDMENT TO COMPLAINT

**Designated Complex and Assigned for All**
**Purposes to Hon. John Munter**

21       The parties to this action stipulate as follows:

22       1.    Allen Matkins Leck Gamble Mallory & Natsis LLP filed its complaint in this matter on

23    November 8, 2010 (the "Complaint"). Burlingame Capital Partners II, LP ("Burlingame") filed its

24    first amended cross-complaint, the operative pleading, against Allen Matkins and certain individual

25    partners of Allen Matkins on April 22, 2011 (the "Cross-Complaint"). Allen Matkins and

26    Burlingame are collectively referred to as the "Parties."

27    ///

28

---

STIPULATION AND PROPOSED ORDER DISMISSING CERTAIN CLAIMS AND PARTIES, AND
               1    FOR AMENDMENT TO COMPLAINT

1  2.    The Parties desire to streamline the litigation and to eliminate certain claims against

2  certain parties. Therefore:

3  ### I.    ALLEN MATKINS' COMPLAINT

4  3.    Allen Matkins dismisses defendants Robert Judson, Janice Judson, and Burlingame

5  Capital, LLC, with prejudice. The case shall proceed only against defendant Burlingame.

6  Allen Matkins withdraws the allegations in paragraphs 6, 16 and 17 of the Complaint, with

7  prejudice. In addition, Allen Matkins withdraws the allegations in paragraph 15 of the Complaint

8  and substitutes in its place the following allegations: "Burlingame promised to pay Allen Matkins for

9  its work through various methods including asset sales or refinancing and/or through the execution

10  of notes and liens. In reliance on those promises Allen Matkins performed legal work for

11  Burlingame until July 2009."

12  4.    Allen Matkins dismisses its claim for False Promise, at section V(C) of the Complaint,

13  with prejudice, and withdraws the allegations at paragraphs 31 through 39 of the Complaint, with

14  prejudice.

15  5.    Allen Matkins dismisses its claim for Fraudulent Inducement at section V(D) of the

16  Complaint, with prejudice, and withdraws the allegations at paragraphs 40 through 46 of the

17  Complaint, with prejudice.

18  6.    Allen Matkins dismisses its claim for Negligent Misrepresentation, at section V(E) of the

19  Complaint, with prejudice, and withdraws the allegations at paragraphs 47 through 53 of the

20  Complaint, with prejudice.

21  7.    Allen Matkins withdraws its prayer for punitive and exemplary damages, at paragraph 61

22  of the Complaint, with prejudice.

23  ### II.    BURLINGAME'S CROSS-COMPLAINT

24  8.    Burlingame dismisses cross-defendants Robert R. Moore, William Huckins, Michael J.

25  Betz, Michael S. Greger, Vincent M. Coscino, Robert R. Barnes, and Matthew J. Ertman, with

26  prejudice. The case shall proceed only against cross-defendant Allen Matkins.

27  9.    Burlingame agrees that it will not assert "any damage claim for business failures" against

28  Allen Matkins. Burlingame hereby withdraws, and will not introduce evidence at any stage of these

1  proceedings concerning, any claim that any conduct by Allen Matkins caused Burlingame or any

2  related entity or the Judsons to lose opportunities or otherwise caused the business(es) to fail, based

3  on:

4          (a)   The amount of the fees charged by Allen Matkins;

5          (b)   The impact of payment of Allen Matkins' fees on Burlingame's

6                available assets or working capital; or

7          (c)   Any legal work or advice by Allen Matkins.

8  Burlingame withdraws the following allegation of its Cross-Complaint, with prejudice:

9          The allegation at paragraph 13, that "[t]he Cross Complainant was further

10          damaged for an amount in excess of $2 million in lost profits and

11          opportunities because it was deprived of important working capital that would

12          have been available to it had it obtained and collected the judgment. The

13          result, ultimately, was the collapse of Cross Complainant's business, to its

14          further damage."

15      10. Burlingame dismisses its Third Cause of Action for Professional Negligence, with

16  prejudice, and withdraws the allegations at paragraphs 36 through 41 of the Cross Complaint.

17      11. Burlingame dismisses its Fourth Cause of Action for Fraud, with prejudice, and

18  withdraws the allegations at paragraphs 42 through 48 of the Cross-Complaint, with prejudice.

19      12. Burlingame dismisses its Fifth Cause of Action for False Promise, with prejudice, and

20  withdraws the allegations at paragraphs 49 through 54, with prejudice.

21      13. Burlingame withdraws its claims and prayer for punitive and exemplary damages, in their

22  entirety, with prejudice.

23      14. Nothing in this stipulation shall be interpreted to mean that Burlingame is impaired

24  from asserting claims and introducing evidence of general damages based on alleged overcharging

25  and/or unconscionable fees or requesting a refund thereof; general damages for professional

26  negligence alleged by BCP to have resulted in the failure to (1) collect a judgment against Kids

27  Connection, Inc. in its bankruptcy case or (2) to obtain and collect a judgment against Basem

28  Zakariya and/or (3) to lose the ability to obtain reimbursement of legal fees for the enforcement of

---

STIPULATION ᶠAND ~~PROPOSED~~ ORDER DISMISSING CERTAIN CLAIMS AND PARTIES, AND
3   FOR AMENDMENT TO COMPLAINT

1   the Asset Purchase Agreement executed in the Kids Connection bankruptcy case.

2   **SO STIPULATED.**

3   Dated: September 26, 2011                KRIEG, KELLER, SLOAN, REILLEY & ROMAN LLP

5   By: _____

6   JAMES C. KRIEG
    Attorneys for Plaintiff and Cross-Defendants
7   ALLEN MATKINS LECK GAMBLE MALLORY &
    NATSIS LLP

9
10  Dated: September 26, 2011                LAW OFFICES OF JOHN W. HOWARD

12  By: _____

13  JOHN W. HOWARD
    Attorneys for Defendant and Cross-Complainant
14  BURLINGAME CAPITAL PARTNERS II, LP

16  **BASED UPON THE PARTIES' STIPULATION, IT IS SO ORDERED.**

17  Dated: Oct 13, 2011

18  Hon. John E. Munter
    JUDGE OF THE SUPERIOR COURT